UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SHARON HEARD-McKNIGHT          :
                                       :
VS.                                :       NO. 3:01CV1657(RNC)
                                       :
WATERBURY BOARD OF EDUCATION    :       MAY 10, 2004

## JOINT TRIAL MEMORANDUM

**(1)    TRIAL COUNSEL**

    **For the Plaintiff Sharon Heard-McKnight**

    John R. Williams
    Norman A. Pattis
    Christy Doyle
    Kim Coleman Waisonovitz
    Williams and Pattis, LLC
    51 Elm Street
    New Haven, CT 06510
    203.562.9931
    Fax: 203.776.9494
    E-Mail: jrw@johnrwilliams.com

**For the Defendant Matthew Borrelli**

Gary S. Starr
Gabriel J. Jiran
Stephen M. Sedor
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103
860.251.5000 and 860.251.5501
Fax: 860.251.5500
E-Mail: gstarr@goodwin.com

**(2)    JURISDICTION**

The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3), and 1367(a)

of Title 28 and Sections 1981, 1983 and 1988 of Title 42 of the United States Code.

**(3)    JURY-NONJURY**

This is a jury case.

**(4)    NATURE OF CASE**

The plaintiff, who was a middle school principal in Waterbury, alleges that she was

discriminated against on the basis of her race by the defendant, who was the Waterbury

Superintendent of Schools.

**(5)    STIPULATIONS OF FACT**

None at this time.

**(6)    PLAINTIFF'S CONTENTIONS**

The plaintiff, who is an African-American educator, was hired in August of 1999 to be the principal of the Wallace Middle School in Waterbury.  The school had a racially mixed student body but the membership of its PTA was predominantly white.  The plaintiff was given a one-year contract.

The plaintiff's staff and PTA members were helpful to her at first, generally speaking, but she lacked influence with the white-dominated central office.  To get resources, she had to turn to a retired principal, Joseph Cavanaugh, who worked with her as an educational consultant.  In addition, she had to spend to much time on safety issues that she was unable to devote much time to the instructional leadership she wanted to provide.  Nevertheless, she had no real trouble until she reported a popular teacher to the Department of Children and Families for sexually harassing a student.  After that, white teachers and PTA members began efforts to get rid of her.

Defendant Borrelli was hired as Superintendent of Schools in February, 2000.  He immediately targeted the plaintiff for termination.  On March 20, he told her that he would recommend to the Board of Education that she not be reappointed, thereby forcing her to

3

submit her resignation.  He deliberately used an evaluation process for her which differed from that which he used regarding white administrators.  He held secret meetings with white PTA members to discuss his evaluation of her, heard racist views expressed at those meetings, and endorsed those views.

Waterbury has a history of racial discrimination in its school system, and defendant Borrelli elected to conform to that past pattern in taking unfair, unwarranted and unjustified action to terminate the plaintiff's employment.  The nondiscriminatory reasons which he asserts as his excuse for his actions are, in reality, false and concocted in an effort to conceal the true, racist, motivation for his actions.

**(7)    DEFENDANT'S CONTENTIONS**

Mr. Borrelli denies that he discriminated against the Plaintiff.  As interim superintendent he announced his expectations for all administrators.  He evaluated Ms. Heard-McKnight on the same criteria as other similarly situated principals.  Mr. Borrelli had legitimate, non discriminatory reasons for advising Plaintiff that he would be recommending that her employment not be renewed for the 2000-2001 school year.  He found she did not demonstrate excellence or the potential for excellence as a principal.

**(8)    LEGAL ISSUES**

See the parties' respective Requests to Charge.

4

**(9)    VOIR DIRE QUESTIONS**

   **For the Plaintiff**

   1.  This is a lawsuit for employment discrimination brought by a middle school principal against the former Superintendent of Schools of the City of Waterbury.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

   2.  Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

   3.  Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against those they believe to be responsible?  If so, please explain.

   4.  Have you or has anyone close to you ever been the victim of employment discrimination?

   5.  Have you or anyone close to you ever lost a job for reasons you considered to be unfair?

   6.  Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

5

7.  Do you know or have you read anything or heard anything about this case, the plaintiff or any of the lawyers involved in the case?

8.  Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.  Has anyone here or anyone close to you ever been involved in any political campaigns or elections?  If so, please provide details.

10.  Has anyone here or any close to you ever been employed by an attorney?

11.  Would you tend to favor one side or the other in this case without regard to the evidence which may be presented?

12.  Does anyone here believe that allegations of employment discrimination should be treated less seriously than other kinds of illegal activity?

13.  The plaintiff is an African-American.  Would anyone here be prejudiced against her because of that fact?

14.  Philip Giordano, the former Mayor of Waterbury, may testify as a witness in this case.  Is that name familiar to anyone here?  Would anyone be affected in his or her ability to be fair in this case by the fact that Mr. Giordano may be a witness?

15.  Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with discrimination in employment or elsewhere?

6

16.  Does anyone here believe that the laws which prohibit discrimination on the basis of race should be repealed or not enforced?

17.  Is there anyone here who would refuse to return a verdict in favor of the plaintiff even if she proved her case?

18.  Have you, or has anyone close to you, ever been a party to a lawsuit?  If so, please explain.

19.  Where are you employed?

20.  If you are married, where is your spouse employed?

**For the Defendant**

1.    Have you ever been a principal of a school or a teacher in a school?  If so, how long?

2.    Has any member of your family, a friend, or someone you know been a principal or a teacher in a school?

3.    Why leave?  Would that experience impact how you view this case?  If so, how?

4.    Do you know anything about Matthew Borrelli, former Interim Superintendent of the Waterbury Public School System?

5.    Have you ever attended Waterbury Public Schools or have children or relatives who have attended Waterbury Public Schools?

7

6.      Would that experience impact how you view this case?  If so, how?

7.      Do you know anything about the financial condition of the City of Waterbury?

8.      Are you familiar with the organization of the City of Waterbury?

9.      Do you know anything about the politics in the City of Waterbury?

10.     Do you have any strong feelings about Waterbury or the Waterbury Board of Education?

11.     Phillip Giordano is no longer a party to this case, but do you have any feelings about the fact that he was once named as a defendant in this case?  Would the fact that Mr. Giordano's name may be mentioned in this case influence your view of the evidence in this case?

12.     Have you had children in a middle school?

13.     What kind of environment do you expect a school principal to establish in his/her school?

14.     Have you ever been an officer of a parent-teacher organization?

15.     What was your relationship with the school principal?

16.     Will the experience affect your ability to serve as a fair and impartial juror in this case?

17.     Do you have any reason to believe that you could not serve as a fair and impartial juror in this case?

18.    Have you ever been involved in personnel, human resources, or employee relations work?  If so, in what capacity and how long?  Would that experience impact how you view this case?  If so, how?

19.    Have you ever been a supervisor over other employees?  If so, have you experienced difficulties in getting people that you supervised to follow your directions?

20.    Have you ever been a member of a Union or are you a union officer?  If so, in what capacity?

21.    Has any member of your family ever been a member of a Union or is any family member a union officer?  If so, in what capacity?

22.    Do you believe that specific steps must be followed before terminating an employee?

23.    The plaintiff in this case was a principal in a school.  Do you believe that teachers or school administrators should be given special consideration in a legal case like this one because of the work they do?

24.    Because the plaintiff was a principal, would you be more inclined to believe her story?

25.    Have you ever been fired from a job or felt forced to resign?  If so, did you believe that you were treated fairly?  Would that experience impact the way you evaluate

9

the evidence in this case?  Can you be fair to an employer?  Can you be fair to a

supervisor?

26.    Have you ever been a party to a lawsuit?  Were you the plaintiff or

defendant?  What was the issue?  Who prevailed?  Do you believe that you were treated

fairly by the judicial system?

27.    Have you ever served on a jury in a civil or criminal case?  What was the

case about?  Was it a plaintiff's verdict or a defendant's verdict?

28.    Have any of your family members or close friends ever been fired or laid off

from a job?  Would this influence your ability to render a fair and impartial verdict based

solely on the evidence in the courtroom?

29.    Have you ever been disciplined, terminated, or laid off by your employer?  If

so, under what circumstances?  How was the disciplinary action resolved?  Do you believe

that you were treated fairly by your employer?  Because of that experience, will you be

able to be fair to the defendant in this case?

30.    Have you ever filed or considered filing a charge or lawsuit against an

employer because you believed that you have been discriminated or retaliated against?

Under what circumstances?  When?  Because of that experience, will you be able to be

fair to the defendant in this case?

10

31.    Do you have any friends or relatives who have filed discrimination charges or lawsuits against an employer? If so, describe the reasons and under what circumstances. Because of that experience, will you be able to be fair to the defendant in this case?

32.    Have you ever felt that you have been discriminated or retaliated against by your employer?  If so, what action did you take?  Because of that experience, will you be able to be fair to the defendant in this case?

33.    Have you ever held a position as a supervisor or manager?  If so, did you ever have an occasion to discipline or terminate an employee?  Under what circumstances?   What difficulties, if any, did you have with making the decision to terminate an employee?

34.    Have you ever voluntarily stepped down from a position as a supervisor because of the responsibilities related to evaluating and disciplining employees?

35.    Have you ever played any role in the determination of whether an employee should be hired, fired, disciplined, or promoted?  What difficulties, if any, did you have with making the decision to terminate an employee?

36.    Do you have any preconceived ideas concerning discrimination litigation that would cause you not to have a free and open mind in this case?  If so, please describe.

37.    If after hearing the evidence and being instructed by the court as to the law, would you hesitate to deny an employee's claims?

11

38.     Do you have any sight, hearing, or health related problem that might affect your ability to serve as a juror?

39.     Do you feel that just because someone has brought a lawsuit, that they are entitled to money?

40.     Did you ever quit a job because you felt that you were treated unfairly?

41.     Have you ever been involved in an organization where there was a hierarchy that you were expected to follow in order to address problems or concerns?  How did you feel about having to follow that procedure?  Did you ever deviate from the procedure?  If so, what happened to you?

42.     Have you ever worked on a group project where other members did not do their share of the work and you were blamed for the result?

43.     As a juror, it will be your job to apply the facts of the case to the law presented to you by the judge.  Sometimes, jurors do not agree with the law stated by the judge.  If you find yourself in that position, can you disregard your personal conclusions and apply the law as stated by the judge?

44.     The judge will tell you that you must decide this case on the facts and the facts alone.  You cannot allow sympathy for a party to enter into your decision.  Will you be able to set aside any sympathy for one party or the other?

45.    As a juror, you will be called upon to work as a team to render a verdict.  Can you think of any reason why you could not do that?

46.    The plaintiff in this case has the burden of proving her case and that is why she gets to go first.  Will you wait until all the evidence is in before you make a decision as to what happened in this case?

47.    If the plaintiff fails to prove each and every element of her case by a preponderance of the evidence, would you be able to send her away with no money? In other words, simply because she has taken the time to bring the lawsuit, could you send her away with no compensation?

48.    In rendering a verdict in this case, the judge will tell you that you cannot speculate.  While you may make inferences from the evidence, your conclusions can only be based on the evidence in court.  Can you follow that instruction?

## (10)  LIST OF WITNESSES

### For the Plaintiff

1.    The plaintiff, Sharon Heard-McKnight, will testify concerning all of the allegations set forth in her complaint, including damages.

2.    Frances Tilghman, formerly a plaintiff in this action, will testify concerning the disparate treatment to which the African-American principals were subjected in comparison to the white principals.

13

3.    Philip Giordano, former Mayor of Waterbury and ex-officio member of the Board of Education, will testify concerning hiring, promotion, and evaluation practices in the School System during the time he was mayor and during prior administrations.  He also will testify regarding issues of racial discrimination in hiring and promotion within the School System.

4.    Matthew Borrelli, defendant, will testify concerning his actions regarding both the plaintiff and Ms. Tilghman and regarding his evaluations of other school employees and principals.

5.    Herb Greengas, Waterbury School System, will testify concerning the disparate treatment to which the plaintiff was subjected and the conditions confronting her when she began her employment in Waterbury.

6.    Linda Barron, teacher, will testify concerning the disparate treatment to which the plaintiff was subjected.

7.    Karen Boutin, Waterbury parent, will testify concerning the actions of defendant regarding the plaintiff.

8.    Janet Calabro, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

9.    Joseph Calabro, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

10.    Lori Hayden, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

11.    Thomas Hayden, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

12.    Liz Hernandez, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

13.    Charles Manganare, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

14.   Robert McGovern, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

15.   Mary Owens, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

16.   Michael Ptak, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

17.   Nancy Ptak, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

18.   Cindy Santulli, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

19.   Dana Santulli, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

20.   Emma Smith, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

21.   Edward Smith, Waterbury parent, will testify concerning the defendant's actions regarding the plaintiff.

22.   Matt Larkin, school principal, will testify concerning the disparate treatment to which the plaintiff and Ms. Tilghman were subjected.

23.   Martin Scully, school principal, will testify concerning the disparate treatment to which the plaintiff and Ms. Tilghman were subjected.

24.   Lawrence T. Pisapio, Board of Education member, will testify concerning the disparate treatment to which the plaintiff was subjected.

25.   Mary White, Board of Education member, will testify concerning the disparate treatment to which the plaintiff was subjected.

26.    Frank Lombardo, Acting Assistant Superintendent, will testify concerning the disparate treatment to which the plaintiff was subjected.

27.    John F. Alseph, Jr., former Board of Education member, will testify concerning the disparate treatment to which the plaintiff was subjected and the conditions confronting her when she began her Waterbury employment.

28.    Lou Irvin, Sr., South Windsor, CT, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools and the circumstances under which the plaintiff was hired.

29.    Nick Albini, teacher, will testify concerning the plaintiff's injuries.

30.    Lenore Grenier, teacher, will testify concerning the plaintiff's injuries.

31.    Joseph Cavanaugh, Waterbury, will testify concerning the disparate treatment to which the plaintiff was subjected.

32.    Pat Moore, Waterbury, will testify concerning the disparate treatment to which the plaintiff was subjected.

33.    Capucina Ray, Waterbury parent, will testify concerning school conditions and community relations during the plaintiff's tenure and the disparate treatment to which the plaintiff was subjected.

34.    Kay Wyrick, Waterbury, will testify concerning the conditions confronting the plaintiff when she began her employment in Waterbury.

35.    Diane Therriault, teacher, will testify concerning the disparate treatment to which the plaintiff was subjected.

36.    James Griffin, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

16

37.    Howard Rosenstein, Board of Education member, will testify concerning the disparate treatment to which the plaintiff was subjected and the conditions confronting her when she began her employment in Waterbury.

38.    Michael Eagen, Waterbury attorney, will testify concerning actions of the defendant respecting both the plaintiff and Ms. Tilghman.

39.    Lawrence Tilghman, retired Warden, Connecticut Department of Correction, will testify concerning actions of the defendant.

40.    Roger Damerow, former Superintendent of Schools of the City of Waterbury, will testify concerning the plaintiff's qualifications and performance and concerning the unfairness of the manner in which defendant evaluated her.

41.    David Gilmore, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

42.    Cicero Booker, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

43.    Robert McKnight, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

44.    Clay S. Krevolin, Willimantic, CT, will testify concerning the plaintiff's superior qualifications, skills and performance as an educator.

45.    Susan Jamback, Chelmsford, MA, will testify concerning the plaintiff's superior qualifications, skills and performance as an educator.

46.    Patrick Proctor, Willimantic, CT, will testify concerning the plaintiff's superior qualifications, skills and performance as an educator.

17

47.     William H. Johnson, Willimantic, CT, will testify concerning the plaintiff's superior qualifications, skills and performance as an educator.

48.     Debbie Simmons, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

49.     Judith Walters, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

50.     Annie M. Booker, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

51.     Guy Riddick, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

52.     Lionel French, Waterbury, will testify concerning the pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools in general, and in particular concerning the disparate treatment to which the plaintiff was subjected.

**Defendant's Preliminary Objections to Proposed Testimony of Plaintiff's Witnesses**

The Plaintiff has identified numerous witnesses who are offered for the purpose of describing the conditions that allegedly confronted the Plaintiff when she began her employment in Waterbury and the circumstances under which she was employed. Such

18

testimony is not relevant to the claims remaining in this case which concern the alleged disparate treatment by Defendant during the time that he was the Interim Superintendent from February, 2000 through June, 2000. Further, testimony concerning the alleged pattern of racism in the hiring, promotion and evaluation process in the Waterbury Public Schools, in general, is not relevant. Such claims would be highly prejudicial and the prejudicial effect far outweighs any probative value.

The Plaintiff has identified witnesses who appear to be called to testify concerning their own claims of disparate treatment. Ms. Tilghman and her husband are identified as witnesses. Ms. Tilghman's claim has been dismissed and she is precluded from describing how she was treated. Ms. Tilghman has no relevant testimony with respect to the manner in which Ms. Heard-McKnight was treated.

The Plaintiff has identified several witnesses who did not work with the Plaintiff in Waterbury but are identified as testifying concerning her qualifications, skills, performances and educator in Willimantic and in Massachusetts. Such testimony is not relevant to this case.

### For the Defendant

1. Matthew Borrelli
   15 Indianola Road
   Niantic, CT 06357

19

Mr. Borrelli is a named Defendant in this case and will testify about and respond to the allegations made against him in the Complaint, and about his role as Interim Superintendent of Schools in Waterbury.  His testimony is expected to take approximately one day.


2.  Paul Ciochetti
    Waterbury Board of Education
    236 Grand Street
    Waterbury, CT 06702-1972

Mr. Ciochetti was a principal and a member of the Interim Superintendent's staff during the 1999-2000 school year.  He will testify about these discussions, his interactions with both the Plaintiff and Matthew Borrelli during that school year, and his knowledge of the allegations contained in the Complaint.  He will testify as to his experiences with the evaluation and reform plan procedure used by Mr. Borrelli.  Mr. Ciochetti's testimony is expected to last approximately three to four hours.

3.  Matthew Larkin
    Waterbury Board of Education
    236 Grand Street
    Waterbury, CT 06702-1972

Mr. Larkin was the president of the administrator's union during the 1999-2000 school year.  He also served as a principal and a member of the Interim Superintendent's staff during that school year.  He will testify about his experiences in each of these positions as they pertain to the allegations in the Complaint.  He will testify as to his experiences with the evaluation and reform plan procedure used by Mr. Borrelli.  Mr. Larkin will also testify to discussions he had with the Plaintiff and her staff during the school year.  Mr. Larkin's testimony is expected to last approximately two to three hours.


4.  Frank Lombardo
    Waterbury Board of Education
    236 Grand Street
    Waterbury, CT 06702-1972

Mr. Lombardo was a member of the Interim Superintendent's staff during the 1999-2000 school year. He was in charge of addressing issues with the school buildings and will testify to his experiences in that capacity during the 1999-2000 school year with the Plaintiff and other school administrators. He will testify to his interactions with the Plaintiff with regard to her performance and the problems encountered in the Wallace Middle School. Mr. Lombardo's testimony is expected to last approximately two to four hours.

5. Martin Scully
   Waterbury Board of Education
   236 Grand Street
   Waterbury, CT  06702-1972

Mr. Scully was a middle school principal during the 1999-2000 school year. He will testify about his experiences in that position, his interactions with the Plaintiff and the Defendant. He will testify as to his experiences with the evaluation and reform plan procedure used by Mr. Borrelli. Mr. Scully's testimony is expected to last approximately one hour.

6. Michael Andolini
   82 Bradley Avenue
   Waterbury, CT 06706

Mr. Andolini was the president of the Board of Education during the 1999-2000 school year. He will testify to discussions that occurred at Board of Education meetings with regard to the operation of Wallace Middle School. He will testify to his interactions with the Plaintiff, the Defendant and other school employees about issues related to Wallace Middle School. Mr. Andolini's testimony is expected to last approximately one hour.

21

7. Carrie Swain
   Waterbury Board of Education
   236 Grand Street
   Waterbury, CT 06702-1972

Ms. Swain is the Clerk for the Waterbury Board of Education and will identify business records that are relevant to the Plaintiff's claims and the Defendant's defense.


8. Joseph Cavanaugh
   171 Split Rock Drive
   Waterbury, CT 06706

Mr. Cavanaugh is a retired principal in Waterbury who was hired as a consultant to assist the Plaintiff.  He will testify to experience working with the Plaintiff and will describe the operation of the school while she was principal.  Mr. Cavanaugh's testimony is expected to last approximately one to three hours.


9. Janice Calabro
   126 Pineridge Road
   Waterbury, CT 06706-2453

Ms. Calabro was the president of the Wallace Middle School PTA.  She will testify to her experiences working with the Plaintiff and the problems at the school during the 1999-2000 school year.  She will also testify concerning the events that lead up to the causes for the filing of a complaint with the State Department of Education over safety concerns at Wallace Middle School, and the resolution of the complaint.  It is anticipated that she will testify for approximately one to three hours.


10. Michael Ptak
    276 East Mountain Road
    Waterbury, CT  06706-2818

22

Mr. Ptak was a parent of a Wallace Middle School student during the 1999-2000 school year.  He was active in the PTA. He will testify to his experiences working with the Plaintiff and the problems at the school during the 1999-2000 school year.  He will also testify concerning the events that lead up to, the causes for filing a complaint with the State Department of Education over safety concerns at Wallace Middle School, and the resolution of the complaint.  It is anticipated that he will testify for approximately one to two hours.

11. Patricia Moore
    Waterbury Board of Education
    236 Grand Street
    Waterbury, CT 06702-1972

During the 1999-2000 school year, Ms. Moore was a house principal at Wallace Middle School.  She will testify about her experiences working with the Plaintiff.  She will discuss the problems that existed at the school.  She will testify for approximately one to two hours.

12. Michelle Pizzuto
    Wallace Middle School
    3465 East Main Street
    Waterbury, CT 06705

During the 1999-2000 school year, Ms. Pizzuto was a teacher at the Wallace Middle School.  She will testify to her interactions with the Plaintiff, the leadership issues that existed at that time, the response of the Plaintiff to the concerns of the staff, the manner in which the school was operated and the communications the Plaintiff had with staff. She will testify for approximately one to two hours.

13. Mary Moriarty
    Wallace Middle School
    3465 East Main Street
    Waterbury, CT 06705

During the 1999-2000 school year, Ms. Moriarty was a teacher at the Wallace Middle School.  She will testify to her interactions with the Plaintiff, the leadership issues that existed at that time, the response of the Plaintiff to the concerns of the staff, the manner in which the school was operated and the communications the Plaintiff had with staff. She will testify for approximately one to two hours.

14. Mary Ellen Perugini
    c/o Bunker Hill School
    170 Bunker Hill Avenue
    Waterbury, CT 06708

During the 1999-2000 school year, Ms. Perugini was a teacher at the Wallace Middle School.  She will testify to her interactions with the Plaintiff, the leadership issues that existed at that time, the response of the Plaintiff to the concerns of the staff, the manner in which the school was operated and the communications the Plaintiff had with staff. She will testify for approximately one to two hours.

15. Jayne Cipriano
    Wallace Middle School
    3465 East Main Street
    Waterbury, CT 06705

During the 1999-2000 school year, Ms. Cipriano was a teacher at the Wallace Middle School.  She will testify to her interactions with the Plaintiff, the leadership issues that existed at that time, the response of the Plaintiff to the concerns of the staff, the manner in which the school was operated and the communications the Plaintiff had with staff. She will testify for approximately one to two hours.

24

16. Barbara Bianco
    71 Woodmere Road
    Waterbury, CT 06704

During the 1999-2000 school year, Ms. Bianco was a teacher at the Wallace Middle School.  She will testify to her interactions with the Plaintiff, the leadership issues that existed at that time, the response of the Plaintiff to the concerns of the staff, the manner in which the school was operated and the communications the Plaintiff had with staff.  She will testify for approximately one to two hours.


17. Gina Calabrese
    Walsh School
    29 Ashley Street
    Waterbury, CT  06704

Ms. Calabrese will testify concerning her experiences as a new principal in Waterbury during the 1999-2000 school year.  She will testify for approximately one to two hours.


The parties respectfully reserve the right to file any objections they may have to any or

all or any portion of the anticipated testimony of any witness proposed by the opposing

party up to and including ten days after disclosure of same.


**(11)  EXHIBITS**

### For the Plaintiff

1    Letter from plaintiff to Damerow dated June 28, 1999, with attached resume
     and letters of recommendation

2    Memo from plaintiff to Rosenstein dated 9/2/99