3       Memo from plaintiff to faculty and staff dated 9/3/99

4       Memo from plaintiff to Guerrera dated 9/24/99

5       Waterbury Republican article dated 9/26/99 entitled "Teacher absences:
        Students pay price"

6       Principal's Advisory Council Minutes from 10/2/99

7       Memo from plaintiff to Greengas dated 10/25/99

8       Memo canceling PTA meeting scheduled for 10/27/99

9       Memo dated 11/15/99 entitled "Hospitalized Student"

10      Article from Waterbury Republican-American dated 1/9/00 entitled: "Wallace
        safety before board"

11      Article from Waterbury Republican-American dated 1/20/00 entitled: "PTA
        says safety complaint ignored"

12      Article from Waterbury Republican-American dated 1/25/00 entitled:
        "Wallace unsafe, they say"

13      Article from Waterbury Republican-American dated 1/27/00 entitled:
        "Progress reported on safety concerns at Wallace"

14      Memo from plaintiff to Leff dated 2/7/00

15      Memo from plaintiff to Borrelli dated 2/10/00

16      The Teacher Evaluation Plan dated 6/12/89

17      CHRO "Report on Employment Practices in the Waterbury School District"

18      School Administrators of Waterbury Grievance dated 5/9/00

19    Memo from Borrelli to plaintiff dated 2/17/00

20    Letter from Damerow to plaintiff dated 1/3/00

21    Memo from plaintiff to Borrelli dated 6/1/00

22    Memo from Damerow to plaintiff dated 8/31/99

23    Memo from plaintiff to Lombardo dated 1/12/00

24    Memo from plaintiff to Ariola dated 6/27/00

25    Memo from Cavanaugh to staff dated 2/1/00

26    Memo from Sequeira to plaintiff dated 9/9/99

27    Memo from plaintiff to Sullivan dated 6/14/00

28    Handwritten notes concerning meeting of plaintiff and Sullivan dated 3/6/00

29    Memo from plaintiff to Bianco dated 10/1/99

30    Memo from Greengas to Damerow dated 1/20/00

31    Memo dated 1/24/00 entitled: "Resolution of Wallace Middle School Safety
      Committee Issues"

32    Agenda for Principal's Advisory Committee Meeting 2/17/00

33    Agenda for Administrators= Meeting 9/7/99

34    Agenda for Faculty Meeting 12/13/99

35    Memo from plaintiff to Greengas dated 12/23/99

36    Memo from plaintiff to Faculty and Staff dated 8/30/99

37     Memo from plaintiff to Rosenstein dated 9/1/99

38     Memo from plaintiff to Faculty and Staff dated 9/3/99

39     Memo from plaintiff to Marcone dated 9/7/99

40     Memo from plaintiff to Sequeira dated 9/13/99

41     Memo from plaintiff to Sixth and Eighth Grade Teachers dated 9/15/99

42     Memo from plaintiff to Faculty and Staff dated 9/20/99

43     Memo from plaintiff to Faculty and Staff dated 9/22/99

44     Memo from plaintiff to Beshi dated 9/23/99

45     Memo from plaintiff to All Faculty dated 9/23/99

46     Memo from plaintiff to Guerrera dated 9/24/99

47     Memo from plaintiff to Faculty and Staff dated 10/8/99

48     Memo from plaintiff to Greengas dated 10/25/99

49     Memo from plaintiff to All Staff dated 10/18/99

50     Memo from plaintiff to Bryk dated 10/21/99, with attachments

51     Memo from plaintiff to All Staff dated 11/1/99

52     Memo from plaintiff to Henry, et al., dated 11/8/99

53     Memo from plaintiff to All Staff dated 11/18/99

54     Memo from plaintiff to Damerow dated 11/26/99

55     Memo from plaintiff to All Staff dated 12/4/99

56     Memo from plaintiff to Emanuel dated 12/23/99

57     Memo from plaintiff to Greengas dated 12/23/99

58     Memo from plaintiff to All Staff dated 1/4/00

59     Second Memo from plaintiff to All Staff dated 1/400

60     Memo from plaintiff to Anzalone dated 1/31/00

61     Memo from plaintiff to Leff, et al., dated 2/4/00

62     Memo from plaintiff to Leff dated 2/7/00

63     Memo from plaintiff to Borrelli dated 2/10/00

64     Second Memo from plaintiff to Borrelli dated 2/10/00

65     Memo from plaintiff to Cavanaugh, et al., dated 2/12/00

66     Memo from plaintiff to All Teachers dated 2/18/00

67     Memo from plaintiff to Borrelli dated 2/21/00, with attachments

68     Plaintiff's personnel file

69     File of letters reflecting plaintiff's post-Waterbury attempts to secure employment

## Defendant's Preliminary Objections To The Plaintiff's Evidence

The Defendant objects to Exhibit 1 based on hearsay and relevance.

The Defendant objects to Exhibit 2 based on relevance.

The Defendant objects to Exhibit 3 based on relevance.

The Defendant objects to Exhibit 4 based on relevance.

The Defendant does not have a copy of Exhibit 5 but it appears from the description to be replete with hearsay. Therefore, the Defendant objects to the proposed exhibit. The Defendant also objects based on relevance.

The Defendant does not have a copy of Exhibit 6 but it appears from the description to be replete with hearsay. Therefore, the Defendant objects to the proposed exhibit. The Defendant also objects based on relevance.

The Defendant objects to Exhibit 7 based on relevance.

The Defendant objects to Exhibit 8 based on relevance.

The Defendant does not have a copy of Exhibit 9 but it appears from the description to be replete with hearsay. Therefore, the Defendant objects to the proposed exhibit. The Defendant also objects based on relevance.

The Defendant objects to Exhibit 10 based on hearsay and relevance.

The Defendant objects to Exhibit 11 based on hearsay and relevance.

The Defendant objects to Exhibit 12 based on hearsay and relevance.

The Defendant does not have a copy of Exhibit 13 but it appears from the description to be replete with hearsay. Therefore, the Defendant objects to the proposed exhibit. The Defendant also objects based on relevance.

Exhibit 17 is subject to Defendant's First Motion in Limine.

The Defendant objects to Exhibit 20 based on hearsay.

The Defendant objects to Exhibit 22 based on the fact that it is a duplicate.  It appears to be the same document as Exhibit 20 and is objected to based on hearsay.

The Defendant objects to Exhibit 23 because the attachments have the names of students on them which invades privacy rights.  The Defendant further objects based on hearsay.

The Defendant objects to Exhibit 24 based on relevance.

The Defendant objects to Exhibit 25 because this document contains unidentified handwriting which raises issues of authenticity and completeness.  It is also objected to based on hearsay.

The Defendant objects to Exhibit 26 based on relevance.

The Defendant objects to Exhibit 27 based on relevance and hearsay.

The Defendant objects to Exhibit 28 based on hearsay.

The Defendant objects to Exhibit 29 based on relevance.

The Defendant objects to Exhibit 30 based on relevance.

The Defendant objects to Exhibit 33 because this document contains unidentified handwriting which raises issues of authenticity and completeness.

The Defendant objects to Exhibit 36 based on hearsay and relevance

31

The Defendant objects to Exhibit 37 based on relevance.

The Defendant objects to Exhibit 38 because it is a duplication of Exhibit 3.

The Defendant objects to Exhibit 39 based on relevance.

The Defendant objects to Exhibit 40 based on relevance.

The Defendant objects to Exhibit 41 based on relevance.

The Defendant objects to Exhibit 43 based on relevance.

The Defendant objects to Exhibit 44 based on relevance.

The Defendant objects to Exhibit 45 based on relevance.

The Defendant objects to Exhibit 46 based on relevance.

The Defendant objects to Exhibit 48 because it is a duplication of Exhibit 7.

The Defendant objects to Exhibit 49 based on relevance.

The Defendant objects to Exhibit 50 based on relevance.

The Defendant objects to Exhibit 51 based on relevance.

The Defendant objects to Exhibit 56 based on relevance.

The Defendant object to Exhibit 57 because it is a duplication of Exhibit 35.

The Defendant objects to Exhibit 60 based on relevance.

The Defendant objects to Exhibit 61 because the document appears to be incomplete.  It references attachments, but Plaintiff has never produced the attachments or failed to identify what the attachments were.

32

The Defendant objects to Exhibit 62 because it is a duplication of Exhibit 14.

The Defendant objects to Exhibit 63 because it is a duplication of Exhibit 15.

The Defendant objects to Exhibit 64 because it is a duplication of Exhibit 15.

The Defendant objects to Exhibit 65 because it appears to be incomplete.  It references an attachment, but Plaintiff has never produced the attachments or failed to identify what the attachments were.

The Defendant objects to Exhibit 68 based on relevance and hearsay.

The Defendant objects to Exhibit 69 because it is unclear what letters the Plaintiff has and the authenticity of those letters.  Plaintiff has only produced letters to the Defendant through November, 2001.

### For the Defendant

| | | |
|---|---|---|
| 1. | November 17, 1999 | Wallace Middle School PTA General Meeting Minutes |
| 2. | December 4, 1999 | Memo from Sharon Heard-McKnight to all staff |
| 3. | December 8, 1999 | Memo from Sharon Heard-McKnight to all staff regarding cafeteria rules |
| 4. | January 26, 2000 | Letter from Michael Ptak to Frank Lombardo regarding Wallace Middle School safety solutions with three page attachments |

| 5. | January 28, 2000 | Parent's Complaint to the Commissioner of the State Board of Education pursuant to Section 10-4(b) of the General statutes |
| 6. | February 3, 2000 | Memo from Sharon Heard-McKnight to all staff regarding new staff, detention, in school suspension |
| 7. | February 4, 2000 | Memo from Sharon Heard-McKnight to the House Principals regarding discipline statistics needed for interim superintendent Borrelli |
| 8. | February 10, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding obstacles/challenges |
| 9. | February  10, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding discipline report |
| 10. | February 12, 2000 | Memo from Sharon Heard-McKnight to house principals and educational consultant regarding discipline statistics for the months of September, 1999 – January, 2000 |
| 11. | February 15, 2000 | Presentation called "Waterbury Redefined, Principals Goals February – June 2000 and Interim Superintendent's Initiatives, February – June, 2000 |
| 12. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding recommendation for expulsion of Melanie A. **, grade 8 |
| 13. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding recommendation for expulsion of Jessica O.**, grade 8 |

| 14. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding recommendation for expulsion of Marilyn M.**, grade 8 |
| 15. | February 17, 2000 | Memo from Matthew Borrelli to Sharon Heard-McKnight regarding meeting with staff members on February 16, 2000 |
| 16. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding Safety Committee's complaint to the State Board of Education |
| 17. | February 18, 2000 | Memo from Matthew Borrelli to principals and supervisors regarding a support system |
| 18. | March, 2000 | March 2000 memo from Mary Moriarty |
| 19. | March, 2000 | Letter from Michelle Pizzuto to Matthew Borrelli with attachments |
| 20. | March, 2000 | Notice of Meeting for Parents with Matthew Borrelli |
| 21. | March 3, 2000 | Letter from Matthew Borrelli to Matthew Larkin, President School Administrators of Waterbury regarding evaluation |
| 22. | March 6, 2000 | Notes of Matthew Borrelli regarding meeting with staff and faculty |
| 23. | March 13, 2000 | Letter from Jan Calabro, chairperson of the safety committee, to Mr. Borrelli regarding information request for the complaint filed with the State Department of Education |

| | | |
|---|---|---|
| 24. | March 20, 2000 | Memo from Donald Schaer, Supervisor of Technology Education to all principals regarding school reform options |
| 25. | March 20, 2000 | Letter of resignation from Sharon Heard-McKnight |
| 26. | March 24, 2000 | Letter from Matthew Borrelli to Sharon Heard-McKnight regarding 1999-2000 final evaluation |
| 27. | April 3, 2000 | Letter and attachments from Theodore S. Sergi, Commissioner of Education, to Matthew Borrelli |
| 28. | April 10, 2000 | Memo from Matthew Borrelli to all principals and supervisors concerning evaluations |
| 29. | April 12, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli and the Safety Committee's complaint to the State Board of Education |
| 30. | April 13, 2000 | Note from Matthew Borrelli regarding the response prepared by Sharon Heard-McKnight |
| 31. | April 14, 2000 | An attachment of April 14, 2000 from Matthew Borrelli to Theodore Sergi together with a revised memo of April 14, 2000 from Sharon Heard-McKnight to Matthew Borrelli regarding actions to reform Wallace Middle School |
| 32. | April 19, 2000 | Memo from Matthew Borrelli to principals on the School Reform Plan |
| 33. | May 8, 2000 | Letter from Sharon Heard-McKnight to Mr. Borrelli regarding miscellaneous issues |
| 34. | May 26, 2000 | Letter from Karen Flannigan, Office of Legal and Governmental Affairs, State Department of |

Education to Matthew Borrelli and Jan Calabro with an attachment of a draft Memorandum Agreement regarding the 10-4b complaint

35.     March 13, 2000     Notes of analysis of Heard-McKnight's performance by Matthew Borrelli

36.     March 29, 2000     Evaluation of Gina Calabrese by Matthew Borrelli

The parties respectfully reserve the right to file any objections they may have to all or any part of the trial exhibits designated by the opposing party within ten days of their receipt of same.

**(12)   DEPOSITION TESTIMONY**

None.

**(13)   REQUESTS FOR JURY INSTRUCTIONS**

**Plaintiff's Requests**

1.  To prevail on a claim of intentional discrimination, the plaintiff must prove by a preponderance of the evidence, either directly or indirectly, that there is evidence of intentional discrimination.  Direct evidence would include oral or written statements showing a discriminatory motivation for the defendant's treatment of her.  Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one

37

reasonably to believe that gender or age was a motivating factor in the defendants' treatment of the plaintiff.  [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions ' 104.03.]

2.  The plaintiff is entitled to prevail in this case if she shows that discrimination was a motivating -- as opposed to determining -- factor in the challenged employment decisions or any one of them.  [Devitt, etc., ' 104.03.]

3.  Direct evidence is evidence of remarks or actions that, if believed, directly prove that the plaintiff's membership in a protected class was a factor in the defendants' adverse employment decision.  [Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).]

4.  To establish discrimination in failing to retain the plaintiff in a position for which she was qualified by using indirect evidence, the plaintiff must prove what is called a prima facie case of race discrimination.  To establish a prima facie case, the plaintiff must prove each of the following elements by a preponderance of the evidence:  (1) that she was a member of a protected group; (2) that she held and was qualified for the position in question; (3) that despite her qualifications she was rejected; (4) that subsequently the defendant awarded the position to a person who was not a member of the protected class.  [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Legrand v. Trustees of University of Arkansas, 821 F.2d 478 (8th Cir. 1987), cert. denied, 485 U.S. 1034 (1988);

38

Blackwell v. Sun Electric Corp., 696 F.2d 1176 (6th Cir. 1983); Cockrham v. South Central Bell Telephone Co., 695 F.2d 143 (5th Cir. 1983); Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Geisler v. Folsom, 735 F.2d 991 (6th Cir. 1984); Robinson v. Arkansas State Highway & Transportation Commission, 698 F.2d 957 (8th Cir. 1983); Lerma v. Bolger, 689 F.2d 589 (5th Cir. 1982).]

    5. It is necessary only that the plaintiff prove that the defendant in fact took some adverse employment action against her and that her race was a factor which played a part in the defendant's decision; in other words, that the defendant had a discriminatory purpose or motive.  [Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1101 (8th Cir. 1988).]

    6. If you determine that the defendant discriminated against the plaintiff, then you must determine the amount of damages that she has suffered as a result.  You may award as actual damages an amount that reasonably compensates the plaintiff for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that she would have received had she not been discriminated against. Basically, you have the ability to make the plaintiff whole for any wages or other benefits that she has lost as a result of the discrimination against her.  [Lorillard v. Pons, 434 U.S. 575 (1978); Faris v. Lynchburg Foundry, 769 F.2d 958 (4th Cir. 1985); Blum v. Western Electric Co., 731 F.2d 1473 (10th Cir. 1984); Devitt, etc., supra, ' ' 104.06, 104A.11.]

    7. You shall also calculate separately, as future damages, a monetary amount

equal to the present value of the wages and benefits that the plaintiff would have earned

had she not been discriminated against for that period from the date of your verdict until

the date when she would have voluntarily resigned or obtained other employment.

[Maxfield v. Sinclair International, 766 F.2d 788 (3d Cir. 1985); Blum v. Witco Chemical

Corp., 829 F.2d 367 (3d Cir. 1987); Devitt, etc., supra, '' 104.05, 104.06, 104A.11.]

8.  The plaintiff has alleged that, as a result of the defendant's intentional

discrimination, she has suffered mental anguish, inconvenience and humiliation.  The

plaintiff has the burden of proving any compensatory damages by a preponderance of the

evidence.  If you determine that the plaintiff has proven by a preponderance of the

evidence that she has experienced mental anguish, inconvenience or humiliation, you may

award her damages for those injuries.  No evidence of the monetary value of such

intangible things as pain and suffering has been, or needs to be, introduced into evidence.

 No exact standard exists for fixing the compensation to be awarded for these elements of

damages.  The damages that you award must be fair compensation -- no more and no

less.  When considering the amount of monetary damages to which the plaintiff may be

entitled, you should consider the nature, character, and seriousness of any mental

anguish, inconvenience or humiliation she felt.  You must also consider its extent or

duration, as any award you make must cover the damages endured by the plaintiff since

the wrongdoing, to the present time, and even into the future if you find as fact that the

40

proofs presented justify the conclusion that Ms. Heard-McKnight's emotional stress and its

consequences have continued to the present time or can reasonably be expected to

continue in the future. [Devitt, etc., supra, '' 104.05, 104.06, 104A.11; Adams v.

Doehler-Harvis, 144 Mich. App. 764 (1985); Freeman v. Kelvinator, Inc., 569 F. Supp. 999

(E.D. Mich. 1979); Slayton v. Michigan Host, Inc., 122 Mich. App. 411, 332 N.W.2d 498

(1983); Riethmiller v. Blue Cross, 151 Mich. App. 188, 390 N.W.2d 227 (1986).]

9.  In addition to the claims for damages already mentioned, you should consider

whether the plaintiff is entitled to punitive damages.  These are awarded as a punishment

of a defendant and as a warning to others to keep them from following the defendant's

example.  You may award these damages if you determine by a preponderance of the

evidence that one or more of the defendant's acts were done with either (1) actual malice,

which is nothing more nor less than intentional wrongdoing, or (2) a wanton and willful

disregard for the rights of another, in other words, a deliberate act taken with knowledge

that it probably will harm another and with reckless indifference to the consequences -- or,

as one court has said, just not giving a damn.  If you determine that the facts justify an

award of punitive damages, you should try to determine a fair, just, and reasonable

amount for the plaintiff under all the circumstances.  Punitive damages are not intended to

compensate a plaintiff for injuries but rather are intended to punish the defendant and to

prevent similar conduct in the future.  Thus, if you award these damages, you should

41

consider the net worth of the person or organization or institution which will pay these

damages and the impact on that person, organization or institution of paying that award.

Punitive damages must bear a reasonable relationship to the plaintiff's actual injury.

However, no single numerical equation has been made to easily link punitive to

compensatory damages.  In determining a reasonable relationship to the actual injury, you

must consider all relevant factors.  These include:  (1) the impact or severity of the

defendant's conduct; (2) the amount of time the defendant conducted itself or himself in

this manner; (3) the amount of compensatory damages; (4) the potential profit the

defendant may have obtained from the wrongful conduct; (5)  the attitudes and actions of

the defendant or, if it is an institution, its top management, after the misconduct was

discovered; (6) the effect of the damages award on the defendant's financial condition;

and (7) any punishment the defendant may have shown he or it is expected to receive

from other sources.  [Levinson v. Prentice-Hall, Inc., 868 F.2d 558 (3d Cir. 1989); Brown v.

M&M/Mars, 883 F.2d 505 (7th Cir. 1989); Knights Bridge Marketing Services, Inc. v.

Promociones Proyectos, S.A., 728 F.2d 572 (1st Cir. 1984); Stanojev v. Ebasco Services,

Inc., 643 F.2d 914, 924 n.7 (2d Cir. 1981); Nation-Wide Check Corp., Inc. v. Forest Hills

Distributors, 692 F.2d 214 (1st Cir. 1982); Hicks v. Gates Rubber Co., 833 F.ed 1406,

1419 (10th Cir. 1987); Benjamin v. United Merchants & Manufacturers, Inc., 873 F.2d 44

(2d Cir. 1989); Dominic v. Consolidated Edison of New York, 822 F.2d 1249 (2d Cir.

1987); <u>Rose v. Hearst Magazine Division</u>, 814 F.2d 491 (7th Cir. 1987); <u>Burns v. Texas Refining, Inc.</u>, 890 F.2d 747 (5th Cir. 1989); <u>Conway v. ElectroSwitch Corp.</u>, 825 F.2d 593, 597 (1st Cir. 1987); <u>Berbraecken v. Westinghouse Electric</u>, 881 F.2d 1041 (11th Cir. 1989); <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1164 (1st Cir. 1989); Devitt, etc., <u>supra</u>, ' ' 104.07, 104A.12.]

## DEFENDANT 'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

The Defendant hereby objects to the jury instructions proposed by the Plaintiff as follows:

<u>Instruction 1</u>:

Borrelli objects to Paragraph 1 of Heard-McKnight's proposed instructions because it requests an instruction related to age and gender discrimination. Heard-McKnight in this case only alleges that Borrelli treated her differently from other similarly situated individuals on the basis of her race. She has not alleged that she was the victim of either race or age discrimination. Therefore, the Court should not issue any instructions related to age or gender discrimination.

<u>Instructions 2-6</u>:

Borrelli objects to Paragraphs 2-6 of Heard-McKnight's instructions because they are confusing, fail to adequately identify the type of instruction that she is seeking and unfairly understate her true burden of proof in this case.

43

First, Heard-McKnight's proposed instructions are hopelessly confusing and fail to

identify the type of instruction that she is seeking.  In employment discrimination cases,

jury instructions typically fall into two categories: "mixed motive" cases and "pretext" cases.

 See Luciano v. Olsten Corp. et al., 110 F.3d 210, 218 (1997); Tyler v. Bethlehem Steel

Corp., 958 F.2d 1176, 1180 (2d. Cir. 1992).  In a mixed motive case, there is credible

evidence of both permissible and impermissible factors influencing the challenged adverse

action.  Luciano, supra at 218. "In such a case, once the plaintiff sustains the burden of

proving, that despite the presence of permissible factors, an impermissible factor had a

motivating role in the employment decision [citations omitted] the burden of persuasions

shifts to the employer to prove as an affirmative defense that it would have made the

same decision even in the absence of the discriminatory factor." Id.  Before the burden

would shift to Borrelli, Heard-McKnight would have to satisfy a substantially higher burden

than that in a "pretext charge."  She would have to prove that her evidence of

discrimination is "tied directly to the alleged discriminatory animus." Id.  As the Court held

in Ostrowski v. Atlantic Mutual Insurance Co., 968 F.2d 171, 181 (2d Cir. 1992):

> For example, purely statistical evidence would not warrant such a charge;
> nor would evidence merely of the plaintiff's qualification for and the
> availability of a given position; nor would stray remarks in the workplace by
> persons who are not involved in the decision-making process.  Those
> categories of evidence though they may suffice to present a prima facie case
> under the framework set forth in McDonnell Douglass Corp v. Green,

44

411 US 792...they would not suffice, even if credited, to warrant a <u>Price Waterhouse</u> charge.

"By contrast, in a pretext case, the burden of persuasion never shifts.  After the plaintiff has established a prima facie case of gender-based discrimination...the defendant does not bear the burden of proving that gender was not a factor in its decision. Rather,...the ultimate burden...remains with the plaintiff..."

In her jury instructions, Heard-McKnight fails to indicate whether she is seeking a "mixed-motive" or pretext instruction.[1]  More important, however, is that Heard-McKnight's proposed instructions fail to provide any instruction concerning what the jury could consider regarding the reasons behind Borrelli's decision to advise Heard-McKnight that he would be recommending the non-renewal of her teaching contract. She further fails to indicate what she has to prove and when or if the burden ever shifts to Borrelli.  Instead, she suggests that if the jury finds evidence that race played any motivating role in Borrelli's decisions, it must go directly to the issue of damages.  This charge diminishes her burden of proof and allows the jury to go directly to damages without considering *any evidence* from Borrelli.  <u>See</u> <u>eg</u> Request to Charge No. 6.

_____

1 Notably, Heard-McKnight has also failed to provide any suggestion as to how the court should define the term "motivating factor."  This term would be open to a litany of interpretations by the jury.  This is why it is crucial to determine the type of charge that Heard-McKnight is seeking.

45

Under these circumstances, Heard-McKnight has seriously understated the evidence that she will need to prevail in this case. Because Heard-McKnight's proposed instruction is so incomplete and confusing, Borrelli reserves the right to submit an additional and supplemental memorandum of law within 10 days to fully apprise the court of his position.

Instruction 7:

Borrelli objects to proposed instruction 7 because to the extent that it asks the jury to calculate future lost earnings. This task is beyond the province of a jury and rests solely within the discretion of the trial court.

Moreover, Borrelli further objects because this instruction fails to make any mention of an instruction related to Heard-McKnight's failure to mitigate her damages. Again, by simplistically stating that she is entitled to recover the amount suggested in her proposed instruction 7, she has understated her burden of proof. Borrelli again reserves his right to present an additional and supplemental memorandum of law concerning this issue.

Instructions 8-9:

Borrelli objects to proposed instructions 8 and 9 because they understate Heard-McKnight's burden of proof concerning her claim for emotional distress and punitive damages. Again, Borrelli reserves the right to present an additional and supplemental memorandum of law concerning this issue.

46

**DEFENDANT'S SUBMISSION OF PROPOSED JURY INSTRUCTIONS**

Pursuant to Federal Rule of Civil Procedure 51 and this Court's pre-trial order, the Defendant respectfully proposes that the following instructions be given to the jury at the close of the case at bar. The Defendant reserves the right to revise and/or supplement the proposed instructions to conform to the evidence introduced at trial.[2]

---

2 The parties have not included herein the "standard" instructions such as "Province of the Court and Jury"; "Credibility of Witnesses"; "Conduct of Counsel"; "Duties During Deliberation" "Selection of Foreperson/Communications with Court" and so forth. The Defendants request that such instructions as contained in E. Devitt, C. Blackmar & M. Wolff, <u>Federal Jury Practice and Instructions</u> (4th ed. 1987) be given. If the court would like the Defendant to supply such instructions, the Defendant will be happy to do so.

47

# **TABLE OF CONTENTS**

I.    Defendant's Proposed Jury Instructions

Instruction    Title

1.        Plaintiff's Claim

2.        Defendant's Claim

3.        What Is And Is Not Evidence

4.        Direct And Circumstantial Evidence

5.        Burden Of Proof In Civil Case Is On Plaintiff

6.        Burden Of Proof – Equal Protection Claim

7.        Defendant's State Of Mind

8.        Proximate Cause

9.        Qualified Immunity Defense

10.       Plaintiff's Opinion As To Her Own Qualifications

11.       Comments By Board Officials

12.       Business Judgment

13.       Damages

14.       Avoiding Sympathy, Prejudice And Speculation

15.       Special Verdict Forms

DEFENDANT'S PROPOSED
INSTRUCTION NO. 1

## PLAINTIFF'S CLAIM

Ms. Heard-McKnight contends that she was treated differently by Mr. Borrelli because she is African-American.  She claims that the criteria used to evaluate her were different from similarly situated white principals in Waterbury and that Mr. Borrelli ignored her efforts and successes in leading Wallace Middle School.  Notwithstanding the fact that she performed her job satisfactorily she was advised by Mr. Borrelli that he would be recommending that her employment contract for the 2000-2001 school year not be renewed.  As a result she decided to resign.

Plaintiff argues that the treatment she received from Mr. Borrelli was discriminatory and without regard to her efforts and qualifications.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 2

## **DEFENDANT'S CLAIM**

The Defendant contests all of Ms. Heard-McKnight's claims. Mr. Borrelli disputes that Ms. Heard-McKnight was denied equal protection under the laws.

Mr. Borrelli contends that Ms. Heard-McKnight did not perform up to the standard established for principals and was evaluated accordingly to the same criteria used for all principals by Mr. Borrelli. Thus, the Defendant contends that Ms. Heard-McKnight was treated the same as all other principals and was not discriminated against on the basis of her race. Finally, the Defendant contends that it was objectively reasonable for Mr. Borrelli to believe that his actions did not violate Ms. Heard-McKnight's rights, and therefore, he is entitled to qualified immunity.

Accordingly, Mr. Borrelli asks that you find in his favor and not award Ms. Heard-McKnight any damages on her claims.