DEFENDANT'S PROPOSED
INSTRUCTION NO. 3

## WHAT IS AND IS NOT EVIDENCE

The term "evidence" includes the sworn testimony of the witnesses who appeared before you and the exhibits admitted into evidence which you will have in the jury room.

Statements, objections or arguments made by the attorneys are not evidence. Attorneys attempt to point out those things that are most significant or most supportive to their case, and in so doing, call your attention to inferences from the evidence that might otherwise escape your notice.  What the attorneys say when making objections, or during [opening and] closing arguments, is not binding upon you.  Arguments by attorneys are not evidence, because the attorneys are not witnesses.  What the attorneys have said to you in their [opening statement and in their] summations is intended to help you understand the evidence to reach your verdict.

You must consider only what the evidence has been in this case, as it has been presented to you through witnesses and exhibits. Furthermore, if your recollection is different from that of the attorneys or of the court, it is your recollection and interpretation of the evidence that controls.

In the course of this case, the attorneys have conferred with me outside of your hearing and, on occasion, you have been excused from the room so a point of law or

51

objection could be decided.   The attorneys have the right and duty to ask the court to make

rulings of law and to request conferences at the side bar out of the hearing of the jury.  In

those situations, you should not speculate about what was discussed.  Likewise, you should

not show any prejudice against an attorney or his or her client because the attorney asked

for a conference out of the hearing of the jury or asked the court for a ruling on the law.

During the trial, there have also been objections by the attorneys and rulings by the

court.  It is the duty of the attorney on each side of a case to object when the other side

offers testimony or other evidence which the attorney believes is not properly admissible.

Such evidentiary issues must be decided by me, the Court.  You should not show any

prejudice against an attorney or his or her client because he or she objected to the

admissibility of evidence.

In addition, you are to consider only the evidence that was admitted. If some evidence

was presented and stricken from the record or some evidence offered and refused, you must

not consider it.  You must dismiss it from your minds, and you also must not draw any inference

from questions or answers that were stricken. Those matters are to be treated as though you

had never known of them.  Also, if certain testimony was received for a limited purpose -- such

as for the purpose of assessing a witness' credibility -- you must follow the limiting instructions I

have given.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.  As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

---

3  E. Devitt, C. Blackmar, & M. Wolff, supra §70.14, §§71.08 - 71.12.

D. Wright & W. Ankerman, Connecticut Jury Instructions §§ 6, 12, 14, 16 (4th Ed. 1993).

DEFENDANT'S PROPOSED
INSTRUCTION NO. 4

## **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are, generally speaking, two types of evidence from which you may properly find the facts of this case: direct evidence and circumstantial or indirect evidence.

Direct evidence is a document or the testimony of an eyewitness which directly supports a party's claims.

Circumstantial evidence involves the offering of evidence of a fact or facts from which the jury is asked to infer the existence and proof of another fact or facts. Such other fact may be found so proven if, but only if, you the jury find that the inference asked to be drawn is not only logical and reasonable but is strong enough so that you can find that it is more probable than not that the fact you are asked to infer is true. Accordingly, you must be careful to avoid resorting to sympathy, speculation, conjecture or guesswork -- under the guise of relying on circumstantial evidence -- in order to determine critical facts in this case.

Let me give you an example of circumstantial evidence. Suppose you are inside a room which has no windows. Suppose a person walks in wearing a wet raincoat, wet boots and carrying an umbrella. Even though you cannot see that it is raining outside, you would probably conclude that it must be raining. The wet raincoat, boots and umbrella are all circumstantial evidence that it is raining. That is all that is meant by circumstantial evidence.

54

---

Haskell v. Kaman Corp., 743 F. 2d 113, 119 (2d Cir. 1984)

Hagelthorn v. Kennecott Corp., 710 F. 2d 76, 80-81 (2d Cir. 1983)

Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 919-21 (2d Cir.     1981)

3  E. Devitt, C. Blackmar, & M. Wolff, supra, §72.03.

Shennessey v. Shennessey, 145 Conn. 211, 214-15 (1958)

DEFENDANT'S PROPOSED
INSTRUCTION NO. 5

## BURDEN OF PROOF IN CIVIL CASE IS ON PLAINTIFF

In this case, the plaintiff, Ms. Heard-McKnight, bears the burden of proof.  Ms. Heard-McKnight has the burden of proving every essential element of her case by a preponderance of the evidence.  The burden is not upon Mr. Borrelli to disprove Ms. Heard-McKnight's claim.  The burden remains with Ms. Heard-McKnight at all times.

To "prove by a preponderance of the evidence" means to prove that something is more likely true than not true.  Thus, in this case, it is Ms. Heard-McKnight's burden at all times to prove that it is more likely than not true that she was denied the equal protection of the laws on account of her race by the Defendant.  There is no requirement that the Defendant convince you that something did not happen.

If you do not find that a fact or issue alleged by Ms. Heard-McKnight has been proven by a fair preponderance of the evidence, then you will find it not to have been proven at all, and you are not to consider this fact or issue in reaching your verdict.  If you believe that the testimony on any fact or issue is evenly balanced so that you cannot say that it inclines you either one way or the other, there would be no preponderance of the evidence as to that fact or issue, and Ms. Heard-McKnight has failed to prove that fact or issue.

56

The burden of proof imposed by law upon Ms. Heard-McKnight requires that your decision must be based upon evidence alone and that you must remove from your consideration such matters that are merely guesses or speculations. You are not at liberty to surmise or speculate or guess as to the material facts in this case.

_____

3 E. Devitt, C. Blackmar, & M. Wolff, supra §72.01.

D. Wright & W. Ankerman, supra, § 311.

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 2751-52 (1993).

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-254 (1981).

DEFENDANT'S PROPOSED
INSTRUCTION NO. 6

## BURDEN OF PROOF—EQUAL PROTECTION CLAIM

Ms. Heard-McKnight has brought a claim under the Civil Rights Act of 1871 commonly referred to as Section 1983. She claims that the defendant, Mr. Borrelli, denied her the equal protection of the laws on the basis of her race in violation of the Fourteenth Amendment to the Constitution. More specifically, she claims that Mr. Borrelli treated her differently than other similarly situated employees because of her race when he advised her that he had decided to recommend the non-renewal of her contract. Ms. Heard-McKnight claims that Mr. Borrelli's treatment of her led to her decision to resign and violated her rights to equal protection.

As a threshold matter, in order to establish a claim under Section 1983, Ms. Heard-McKnight must prove by a preponderance of the evidence the following three elements:

1.    That the conduct she complained about was committed by Mr. Borrelli while he was a person acting under color of state law;

2.    That Mr. Borrelli's conduct deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States and;

3.    That Mr. Borrelli's acts were the proximate cause of her injuries and subsequent damages.

58

A person acts "under color of law" when that person acts under pretense of law. This means that the acts complained of would not have occurred "but for" the fact that the person committing them was an official, purporting to exercise his or her official powers.  There is no dispute that Mr. Borrelli was acting in his capacity as interim Superintendent when he evaluated Ms. Heard-McKnight's performance and provided her with his assessment of her performance.

Second, Ms. Heard-McKnight must prove that the defendant's acts caused her to suffer the loss of one or more federal rights.  In this case, Ms. Heard-McKnight claims that Mr. Borrelli's actions deprived her of equal protection of the laws in violation of the Fourteenth Amendment.  Thus, you must decide whether Ms. Heard-McKnight was denied the equal protection of the laws by Mr. Borrelli.

Third, if you find that Ms. Heard-McKnight was denied equal protection of the law, you must decide whether Mr. Borrelli caused such deprivation.  If you find that someone other than Mr. Borrelli caused Ms. Heard-McKnight to be deprived of the equal protection of the law in violation of the Fourteenth Amendment, you must find in favor of the defendant.

I shall now instruct you on each of the elements that you will need to decide concerning whether Ms. Heard-McKnight has proven her case by a preponderance of the evidence.  First, did Mr. Borrelli deprive Ms. Heard-McKnight of her rights to equal protection of the laws?  The equal protection clause essentially requires that all persons similarly

59

situated be treated alike by state and local governments and their officials. [3]  Ms. Heard-

McKnight claims that Mr. Borrelli advised her that he would be recommending that her

contract of employment not be renewed for the 2000-2001 school year because of her race.

To prove her claims, Ms. Heard McKnight has the initial burden of proving a prima facie

case based on the preponderance of the evidence.  To assert a prima facie case, Ms.

Heard-McKnight must prove the following:

     1.      that she was a member of a protected class;

     2.      that she was qualified for the middle school principal position;

     3.      that, despite her qualifications, Mr. Borrelli decided to recommend her non-

renewal; and

     4.      that the recommendation for the non-renewal of her conduct occurred under

circumstances giving rise to an inference of race discrimination. [4]

---

3 See e.g. Annis v. County of Westchester, 136 F.3d 239, 245 (2d. Cir. 1998); Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d. Cir. 2000); Giordano v. City of New York et al., 274 F.3D 740750 (2d. Cir. 2002).

4 See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Graham v. Long Island Railroad, 230 F.3d 34, 40 (2d. Cir 2000) Zahorik v. Cornell Univ., 729 F.2d 85, 91 (2d Cir. 1984); Graham v. Renbrook School, 692 F.Supp. 102, 106 (D.Conn. 1988); Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, 1706 (1993); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2751 (1993); Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 142 (2nd Cir. 1993), cert. denied, 510 U.S. 1164 (1994); Schachner v. Beth Israel Medical Center, 14 F. Supp. 2d 468, 470 (S.D.N.Y. 1998).

In this case, the parties do not dispute that Ms. Heard-McKnight is an African-American person and therefore she is a member of a protected class. Thus, you need only determine whether: (a) whether Ms. Heard-McKnight was qualified for her position; and (b) whether the Mr. Borrelli decided to recommend the non-renewal of her contract under circumstances giving rise to an inference of race discrimination.

Whether one is qualified may change over time as the demands of a position may change. Ms. Heard-McKnight must show by a preponderance of the evidence that she was meeting the legitimate expectations of her employer. The job expectations are to be measured as of the time Mr. Borrelli was the interim superintendent and doing his assessment of her.

If you find that Ms. Heard-McKnight was not qualified for her position, you must find for the defendant and proceed no further. If you find that Ms. Heard-McKnight was qualified to perform her job, you must then determine whether Mr. Borrelli's alleged treatment of her occurred under circumstances giving rise to an inference of discrimination. To prove an inference of discrimination, Ms. Heard-McKnight must prove the following:

1.    that she, compared with others similarly situated, was selectively treated; and

2.    that such selective treatment was based on impermissible racial discrimination.[5]

As I just indicated to you, Ms. Heard-McKnight must prove that she was treated differently than others who were similarly situated to her.  To find for Ms. McKnight on this issue, you must first find that the persons to whom Ms. Heard-McKnight claims she was "similarly situated" were "similarly situated in all material respects."  What constitutes "all material respects" must be judged by you based on (1) whether Ms. Heard-McKnight and those she maintains were similarly situated were subject to the same workplace standards;  (2) whether the conduct for which Ms. Heard-McKnight was non-renewed was comparable; and whether those employees reported to the same supervisor.[6]  The determination that acts are "comparable" requires not only an examination of the acts, but also an examination of the context and surrounding circumstances in which those acts are evaluated.[7]  You are not to decide whether the criteria that Mr. Borrelli was using are criteria that you think are fair or appropriate.  Rather you must look to see whether the

---

5 Annis, supra at 245; Diesel, supra at 103, Giordano, supra at 750; Padilla v. Harris et al., 285 F. Supp. 2d 263, 268 (D. Conn. 2003)(JBA); Lovel v. Comsewogue School District, 214 F. Supp. 2d 319, 322 (EDNY 2002).

6 Shumway v. United Parcel Service, Inc., 118 F. 3d 60, 63 (2d Cir1997); Graham v. Long Island Rail Road, 230 F.3d 34, 39 (2d Cir. 2000); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 93 (2d. Cir. 1995); Hines v. Hillside Children's' Center, 73 F. Supp. 2d 308, 318 (WDNY 1999).

7 Id.

62

same criteria were used for similarly situated school principals. As Mr. Borrelli was evaluating school principals and not house principals, administrators at lower levels of the school system or teachers, principals are the only persons with whom Ms. Heard-McKnight is to be compared. Because discrimination is the essence of an equal protection violation, Ms. Heard-McKnight must prove that she was intentionally discriminated against, or treated differently, because of her race and not because of any other factors.[8] That is, Ms. Heard-McKnight has the ultimate burden of establishing that it was more likely true than not true that Mr. Borrelli decided that he was going to recommend the non-renewal of her contract, which led to her resignation, because of her race.

If you decide that Ms. Heard-McKnight has met her initial burden of proving a prima facie case, you must then decide whether Mr. Borrelli has given legitimate, non-discriminatory reasons for advising Ms. Heard-McKnight that he was going to recommend that non-renewal of her contract.[9] In order to determine whether Mr. Borrelli has provided a legitimate and non-discriminatory reason, you must consider the evidence you have heard from the Defendant and other witnesses.

---

8 "In analyzing whether conduct was unlawfully discriminatory for purposes of Section 1983, we borrow the burden shifting framework of Title VII claims." Annis v. County of Westchester, 136 F. 3d 239, 245 (2d Cir. 1998).

9 Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000); James v. NY Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

If you find that Mr. Borrelli has provided legitimate and non-discriminatory reasons for deciding to recommend the non-renewal of Ms. Heard-McKnight's contract, you must find for Mr. Borrelli, unless Ms. Heard-McKnight can prove that Mr. Borrelli's stated reasons are a pretext for discrimination.[10] In order to determine whether Mr. Borrelli's stated reasons are pretextual, you must determine whether you believe that his stated reasons were false.  You must also consider whether the circumstances in this case demonstrate that Mr. Borrelli's advising Ms. Heard-McKnight that he had decided to recommend the non-renewal of her contract was based on her race.[11] Even if you disbelieve Mr. Borrelli, you may not find for Ms. Heard-McKnight unless you find Mr. Borrelli's decisions were based on Ms. Heard-McKnight's race.

You are not to determine, and you need not agree, that Mr. Borrelli was correct in his assessment of her performance.  The law does not prohibit an employer or supervisor from utilizing whatever mechanisms he thinks best to evaluate employees.  In this regard, Section 1983 entitles an employer to make its own business judgments, except that decisions cannot be based on race.

---

10 Id.
11 Id.

It is not necessary that you believe that Mr. Borrelli made the best decision or that you would have made the same decision yourself. Nor is it your job to decide whether Waterbury has good or bad personnel policies. Your job is to decide whether Ms. Heard-McKnight was denied equal protection under the law because of her race. Once again, I remind you that Mr. Borrelli's business decisions need not be good or even wise; they simply cannot be based on Ms. Heard-McKnight's race. In this regard, Ms. Heard-McKnight must convince you by a preponderance of the evidence that, whatever the stated reasons for Mr. Borrelli's actions and conclusions, race was a determining factor and Mr. Borrelli's stated reasons were given in order to hide racial discrimination, in other words, his reasons were a pretext for discrimination.

Keep in mind that a reason cannot be shown to be a pretext for discrimination unless Ms. Heard-McKnight shows that race discrimination was the real reason. Thus, even if you find that the reasons offered by Mr. Borrelli for his actions were false, you must find in favor of Mr. Borrelli, unless you also conclude that the real reason for the decision for the actions taken by him was illegal in that it was based on race.[12] It is not enough to disbelieve Mr. Borrelli. You must also find that Ms. Heard-McKnight's

---

12 <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1339-40 (2d Cir. 1997).

explanation of her claims of discrimination is true.[13]  Thus, even if you do not agree

with or believe the stated reasons for Mr. Borrelli's actions, you must return a verdict

for Mr. Borrelli if you find the actual reasons for his actions were not based on race.

Once again, the ultimate burden of proving that Mr. Borrelli discriminated against Ms.

Heard-McKnight because of her race remains at all times with Ms. Heard-McKnight.

During you deliberations, you may consider the possibility that there was more than

one reason for the actions taken by Mr. Borrelli.  If you find that there were one or more

reasons for his actions and none involved Ms. Heard-McKnight's race, then she has failed

to establish illegal discrimination on the basis of race in violation of the equal protection

clause and you must find for Mr. Borrelli.

If you find that there were several reasons for Mr. Borrelli's actions, one of which

was Ms. Heard-McKnight's race, you must decide whether or not her race was a

"determinative factor" in the actions taken.[14]  In other words, you must determine whether

Ms. Heard-McKnight has proven it more likely than not that except for her race she would

have been recommended to continue as principal.  It is not enough for her to show that

---

13 <u>Winiarski v. Connecticut Dept. Pub. Health et al.</u>, Slip Op. Case No. cv 3:00:2321 (RNC), citing <u>Reeves</u>,
530 U.S. at 148; <u>James</u>, 233 F.3d at 154-157; <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 519 (1993).
    14 <u>Levin v. Analysis & Technology, Inc.</u>, 960 F.2d 314 (2d Cir. 1992).

race was one of the factors for the employment decision, she must show that she would

have remained employed "but for" Mr. Borrelli's alleged motive to discriminate against her

because she is African-American.

The term "determinative factor" as used in this case means a factor which actually

made a difference in Mr. Borrelli's assessment of Ms. Heard-McKnight. To meet her

burden to prove that race was a determinative factor, Ms. Heard-McKnight must prove

that the reasons given by Mr. Borrelli were false, and the real reason she was not

going to be recommended for a new contract was her race.[15]

Standing alone, none of the actions taken by Mr. Borrelli are illegal. Such actions

only become illegal if Ms. Heard-McKnight can prove that he took such actions or

reached such conclusions in order to discriminate against her on the basis of her race.

Ms. Heard-McKnight has the ultimate burden of establishing that it is more likely true

than not true that except for her race, she would have been recommended for another year

as principal at Wallace Middle School. At all times, Ms. Heard-McKnight bears the burden of

establishing that Mr. Borrelli intentionally discriminated against her on the basis of her race.

It is not enough for Ms. Heard-McKnight to show that race was one of the factors for these

employment decisions. She must also show that race was a factor that made a difference in

---

15 Fisher v. Vassar College, 114 F.3d 1332, 1339 (2d Cir. 1997).

the actions taken against her.[16]  She must show that she would have been retained as

principal if she were not African-American, and but for Mr. Borrelli's motive to discriminate

against her because of her race, she would have been retained.

It is not necessary that you believe that Mr. Borrelli made the best decision or that you

would have made the same decision yourself.  Nor is it your job to decide whether the

evaluation criteria or process was good or bad.  Your job is to decide whether Ms. Heard-

McKnight was denied the equal protection of the laws by Mr. Borrelli because she is African-

American.  Section 1983 does not require an employer to accord special treatment to

employees based on their race.[17]  It requires that race be a neutral factor, neither helping

---

16 See Fisher, 114 F. 3d at 1339-40; Levin, 980 F. 2d at 1420.

17 See, generally, Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982), cert. denied 459 U.S. 1103 (1983)
(in determining merits of age discrimination claim, court does not sit to judge the propriety of a corporation's
business decisions); Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("it is not the function
of the fact-finder to second-guess business decisions or to question a corporation's means to achieve a
legitimate goal"); Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 560 (7th Cir. 1987), cert. denied 108 S.Ct. 488
(1987) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter
how mistaken the firm's managers, Title VII and § 1981 do not interfere."); Weihaupt v. AMA, 874 F.2d 419, 430
(7th Cir. 1989) (the court does not sit as a super-personnel department that re-examines a corporation's
business decision); Smith v. F.W. Morse & Co., 1996 U.S.App. LEXIS 2022 at **28-29 (1st Cir. 1996) ("To sum
up, an employee (pregnant or not) runs a risk of suffering the ordinary slings and arrows that suffuse the
workplace every day she goes to work and everyday she stays away. . . . That the discharge took place while
appellant was on maternity leave possessed considerable evidentiary significance -- but that circumstance
neither transformed the character of the employer's action nor rendered it per se unlawful under Title VII); Stacey
v. Allied Stores Corp., 768 F.2d 402, 408, 38 FEP Cases 773, 778 (D.C. Cir. 1985) ("Not only do we not sit, as
the Second Circuit put is so well, 'to judge the wisdom of a corporation's business decisions, 'Parcinski [v. The
Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982), cert. denied, 459 U.S. 1103], but we can discern no requirement
whatever in the ADEA that an employer seek to place in another position an employee whose age brings her or
her under the ADEA's protective shield when that employee is being terminated for non-discriminatory reasons");
Steelworkers v. Weber, 443 U.S. 193, 207 (1979) (Title VII was not intended to "diminish traditional
management prerogatives."); Furnco Construction Corp. v. Waters, 438 U.S. 567, 577-78 (1978) (Title VII does
not require the employer to restructure its employment practices to maximize the number of minorities and

nor hindering employment.  The employer is entitled to make its own subjective business

decisions, and not retain anyone for a good reason, bad reason or no reason at all, as long

as the action is not taken because of that employee's race.[18] An employer is not obligated to

show good cause or justifiable cause to make a decision about retaining an employee.

Once again, I remind you that Mr. Borrelli's business decisions need not be good or even

wise; they simply have to be non-discriminatory.

In no event should you find that the date in which  Mr. Borrelli advised Ms. Heard-

McKnight of his intentions to non-renew her contract is evidence of discrimination.  You have

heard evidence that Mr. Borrelli began working for the Board in February 2000 and informed

Ms. Heard-McKnight of his non-renewal recommendation in mid-March 2000.  The timing of

Mr. Borrelli's decision, standing alone, is not evidence of discrimination.    Ms. Heard-

McKnight was a non-tenured teacher for the Waterbury Board of Education.  Connecticut

law requires a Board of Education to inform non-tenured teachers and administrators that

their contracts will not be renewed by April 1.[19]  In order to make that decision, a Board of

Education may rely on a recommendation by the supervisor of that employee, which in this

case was Mr. Borrelli.  In order to advise the Board of his recommendation,  Mr. Borrelli

---

women hired or retained); Douglas v. Anderson, 656 F.2d 528 (9th Cir. 1981) (federal statutes prohibiting
discrimination are not "intended as the vehicle for general review of business decisions.").

18 See, Francis v. Runyon, 928 F. Supp. 195, 203 (E.D.N.Y. 1996), Dister v. Continental Group, Inc., 859 F.2d
1108, 1116 (2d Cir 1988).

19 Conn. Gen. Stat. § 10-151.

would have to have made a recommendation in advance of April 1. Therefore, you should draw no inference of discrimination by the mere fact that he was evaluating her in March and had decided to recommend Ms. Heard-McKnight's non-renewal in March 2000. It is also not an act of discrimination that Mr. Borrelli evaluated non-tenured administrators in March while tenured employees were not evaluated until later in the school year.

The ultimate issue for your decision is whether Ms. Heard-McKnight was treated differently by the defendant than similarly situated principals because of her race. If you find that Ms. Heard-McKnight was not treated differently than similarly situated principals, you must find for Mr. Borrelli. Also, if you find that Ms. Heard-McKnight was treated differently than similarly situated principals because of a factor other than her race, you must find for Mr. Borrelli. You may only find for Ms. Heard-McKnight if she proves by a preponderance of the evidence that Mr. Borrelli intentionally treated her differently than similarly situated principals based on her race. Thus, Ms. Heard-McKnight is obligated to prove that in making these decisions, Mr. Borrelli intentionally treated her differently than other similarly situated principals based on her race. That is, Ms. Heard-McKnight is required to prove by a preponderance of the evidence that Mr. Borrelli intentionally denied her the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution because of her race.

70

DEFENDANT'S PROPOSED
INSTRUCTION NO. 7

## **DEFENDANT'S STATE OF MIND**

Ms. Heard-McKnight's equal protection claim requires her to prove that the defendant intentionally discriminated against her based on her race. [20] Thus, if you find that Mr. Borrelli actually denied Ms. Heard-McKnight the equal protection of the laws based on her race, but you find that she has failed to prove by a preponderance of the evidence that he did so intentionally, you must find for the defendant. The defendant cannot be held liable under the equal protection clause for negligent or mistaken acts. The defendant may only be held liable if he denied Ms. Heard-McKnight equal protection under the laws with an intent to do so.

An act is intentional if it is done knowingly, that is if it is done voluntarily or deliberately, not because of mistake, accident, negligence or other innocent reason. In determining whether a person acts with a requisite knowledge, you should remember that while witnesses may see and hear and be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend

---

20  See, McCleskey v. Kemp, 481 U.S. 289 (1987); Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977); Washington v. Davis, 426 U.S. 229 (1976).

71

on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those facts. However, the defendant may be found to have acted intentionally if you find that he acted in reckless disregard of Ms. Heard-McKnight's rights to equal protection under the laws. An act is done recklessly if it is done in conscious disregard of its known probable consequences. For example, handing a loaded gun to a small child, telling the child to play with it and walking away is a reckless act. While the person may not intend that the child hurt herself or others, the acts are done in conscious disregard of the known probable consequence that the child will fire the gun and cause death or injury to herself or others.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 8

## **PROXIMATE CAUSE**

Ms. Heard-McKnight must prove that the Defendant's acts were a proximate cause
of any injuries she sustained.  Proximate cause means that there must be a sufficient
causal connection between the act or omission of a defendant and any injury or damage
sustained by the plaintiff.  An act or omission is a proximate cause if it was a substantial
factor in bringing about or actually causing injury, that is, if the injury or damage was a
reasonably foreseeable consequence of the defendant's act or omission.  If an injury was
a direct result or a reasonably probable consequence of a defendant's act or omission, it
was proximately caused by such act or omission.

In order to recover damages for any injury, Ms. Heard-McKnight must prove by a
preponderance of the evidence that that injury would not have occurred without the
unlawful conduct of Mr. Borrelli.  If you find that Ms. Heard-McKnight complains about an
injury that would have occurred even in the absence of the conduct of Mr. Borrelli, you
must find that Mr. Borrelli did not cause Ms. Heard-McKnight's injury.

Mr. Borrelli is not liable if Ms. Heard-McKnight's injury was caused by a new or
independent source.  Thus, even if you find that Mr. Borrelli acted wrongfully but that Ms.
Heard-McKnight would have suffered injuries anyway or that Ms. Heard-McKnight's

73

injuries were caused by someone or something else, you must find in favor of the

defendant.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 9

## QUALIFIED IMMUNITY DEFENSE

Mr. Borrelli's actions are protected from liability by what is known as Qualified Immunity. This means that you must return a verdict in favor of Mr. Borrelli unless you find that his actions violated clearly established Constitutional or statutory rights of Ms. Heard-McKnight at the time she acted.[21] In other words, you must ask yourself whether Mr. Borrelli was reasonable in believing that the actions he took did not deny Ms. Heard-McKnight the equal protection of the laws based on her race. In essence, you are asked to step into the shoes of Mr. Borrelli determine whether he reasonably believed that he was not violating Ms. Heard-McKnight's constitutional right to equal protection under the law on the basis of her race.

Qualified Immunity is essential to ensure that municipal officials will not shy away from their duties because of unnecessary fear of personal liability if, in hindsight, their reasonable judgment is mistaken. The Qualified Immunity doctrine therefore necessarily contemplates a margin of error. In order to impose personal liability on Mr. Borrelli, Ms. Heard-McKnight must show that no reasonably competent superintendent would have acted

---

21 Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Shecter v. Comptroller of City of New York, 79 F. 3d 265, 268 (2d Cir. 1996).