the way that Mr. Borrelli acted at the time that he acted. In other words, Ms. Heard-McKnight must show that Mr. Borrelli either deliberately set out to violate her Constitutional rights, or was deliberately indifferent to her Constitutional rights in order to overcome the qualified immunity defense. Thus, Ms. Heard-McKnight must show that Mr. Borrelli's conduct was illegal and that it was so illegal that it violated clearly established law. She must also show that he violated this clearly established law intentionally or with reckless disregard to Ms. Heard-McKnight's Constitutional rights.

If Ms. Heard-McKnight fails to meet this standard, you should find that Mr. Borrelli is entitled to qualified immunity.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 10

## PLAINTIFF'S OPINION AS TO HER OWN QUALIFICATIONS

During this trial, Ms. Heard-McKnight has testified that she was denied equal

protection under the law on account of her race because she believed that her performance

was satisfactory and that she was evaluated using a different process than other similarly

situated individuals.  Ms. Heard-McKnight's opinion as to her performance carries relatively

little weight, and is only entitled to any weight if corroborated by other evidence derived from

the decision-makers.[22]  The most probative evidence of qualification comes from the

decision-makers -- the evaluators of Ms. Heard-McKnight's performance.[23]  In this regard,

---

[22] See, e.g., Charrette v. S.M. Flickinger Co., Inc., 806 F.Supp. 1045, 1058 (N.D.N.Y. 1992) (discharged employee's conclusory, self-serving statements that his performance was excellent is insufficient to establish that the employee performed his job satisfactorily for purpose of age discrimination claim); EEOC v. LA. Dept. of Social Services, 63 FEP 161, 164 (E.D.La. 1993) (courts cannot allow an employee's subjective belief of discrimination, however genuine, to be a basis of judicial relief); Schuler v. Polaroid Corp., 848 F.2d 276, 280 (1st Cir. 1988) (employee's evidence that his ratings were good were insufficient to establish pretext where the termination decision rested on the value to the company of the plaintiff's results, not his dedication or competence); Weeks v. Aetna Life Insurance Co., Civil Action No. 3:93CV502 (AVC) (D. Conn. Apr. 25, 1994), slip op. at 12 (plaintiff's conclusory allegations regarding her performance are insufficient to establish intentional age discrimination); Mills v. First Federal Savings & Loan Association of Belvedere, 83 F.3d 833 (7th Cir. 1996) (employee's self serving statements about her ability are insufficient to contradict an employer's negative assessment of that ability); Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir. 1991); Cf. Smith v. Flax, 618 F. 2d 1062, 1067 (4th Cir. 1980) (employee's perception of herself not relevant at all).

[23] See, e.g., Meiri v Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829 (1985) ("[i]n determining whether an employee's job performance is satisfactory, courts may -- as they often must -- rely on the evaluations rendered by supervisors.").

any evidence of Ms. Heard-McKnight's past accomplishments or involvements is insufficient to establish a violation of the anti-discrimination laws.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 11

### COMMENTS BY BOARD OFFICIALS

Ms. Heard-McKnight has testified or attempted to testify that certain officials told her that some unidentified person(s) instituted a plan to terminate the "outsiders" who were hired as principals for the 1999-2000 school year; that "outsiders" would only be in position one year; or that the Board of Education members favored promoting employees to administrative positions over outsiders.

To the extent that such comments were admitted into evidence, such comments are insufficient to demonstrate that Mr. Borrelli had a discriminatory intent, unless you find that they were unambiguously related to Ms. Heard-McKnight's race specifically, that Mr. Borrelli

79

was aware of the comments and in fact acted on them.[24] Further, to rely on these comments and attribute them to Mr. Borrelli, you must also find that they are comments about race. If you find that the reference to "outsiders" is not a race based statement, then you may not rely on it to find any discriminatory intent.

In addition, you may not rely on these comments if you find them to be remote, vague, or made by individuals who had no authority over Ms. Heard-McKnight's

---

[24] See, e.g., Ayala-Gerena v. Bristol Myers-Squibb, 71 FEP Cases 1398 (1st Cir. 1996) (discharged Puerto Rican employees have not shown that alleged remarks that employer's Puerto Rican subsidiary had "black mafia" [which was] getting rich at the expense of the company," and that one of them, was Puerto Rican, might never get another opportunity to work for North American company, are stray remarks unrelated to decisional process itself, since they lack necessary link between alleged speakers' discriminatory remark and adverse employment action); Getschmann v. James River Paper Co., 65 FEP Cases 1047, 1049 (D.Conn. 1993) (supervisor's comments to plaintiff that "it sometimes is difficult to teach an old dog new tricks," and that plaintiff was "set in his ways," coupled with supervisor's description of a particular division of the company as having a "mature work force" and a general manager's comment that "younger more aggressive employees [were] needed," were legally inadequate to prove age discrimination. The court stated that (1) the supervisor was not even referring to the plaintiff in one of the comments, (2) another comment was made by a general manager who was not alleged to have been involved in plaintiff's termination, and that (3) "[s]ince defendant's evidence of a legitimate reason [was] so overwhelming, [the other two] remarks [were] 'too slender a reed to carry the weight of the charge in this case against the evidence which refutes it.' "); Fox v. Bank of Boston-Connecticut, supra, slip op. at 10 (supervisor's alleged statement regarding a "commitment to a younger work force" does not suffice to prove age discrimination); Weeks v. Aetna Life Insurance Co., supra, slip op. at 4-5 (supervisor's statement that she "could no longer pay the plaintiff's salary and benefits any longer" is insufficient to defeat summary judgment); Graham v. Renbrook School, 692 F. Supp. 102, 108-09 (D. Conn. 1988) (supervisor's remarks that employee might not "fit in" with younger faculty is inadequate to show pretext for age discrimination); Gagne v. Northwestern National Insurance Co., 881 F.2d 309 (6th Cir. 1989) (supervisor's statement that she "needed younger blood" insufficient to overcome summary judgment); Armendariz v. The Pinkerton Tobacco Co., 58 F.3d 144 (5th Cir. 1995) (comments about how employee was "getting old" and "losing her memory" were stray remarks which were too remote and vague to be probative of age discrimination); Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (supervisor's statements that employee lacked wherewithal to adequately perform his job, moved in slow motion, and was neither aggressive nor pro-active were not direct evidence of age discrimination); Sullivan v. Boys Club of America, Inc., 627 F.Supp. 189, 195 (E.D.Ill. 1985) (supervisor's criticism of discharged 62 year old employee's "old Field Service style" is not direct evidence of age discrimination, where reference was to employee's management style and performance, not his age); Cf. Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984).

employment.  Stray remarks such as these do not constitute probative evidence of

discrimination.[25]

---

25 <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 137 (2d Cir. 1997)(biased statement of a supervisor who was not
consulted about a termination decision provides no basis for imputing to the decision maker an invidious
motivation for the termination.); <u>Santos v. Costco Wholesale, Inc.</u>, 271 F. Supp. 2d 565, 573-4 (SDNY
2003)("[v]erbal comments may constitute evidence of discrimination only when (1) such comments are
related to race…; (2) proximate in time to the adverse employment decision; (3) made by an individual with
authority over the employment decision at issue; and (4) related to the employment decision at issue.");
<u>Ranieri v. Highland Falls-Fort Montgomery School District</u>, 198 F. Supp. 2d 542 (DNY 2002)("Stray workplace
remarks that have no demonstrated nexus to the personnel action complained of are insufficient to defeat a
motion for summary judgment".)

DEFENDANT'S PROPOSED
INSTRUCTION NO. 12

## **<u>BUSINESS JUDGMENT</u>**

In this case, it is important to remember that you are not being called upon to decide

whether the Defendant made good or wise decisions in evaluating Ms. Heard-McKnight.

Nor are you being called upon to decide whether Waterbury is a good place to work.

Employers are entitled to make their own subjective business judgments and to

conduct the operations of their business as they see fit. Accordingly, you are not being

asked to judge whether you agree with the way in which principals were evaluated or

whether the process was fair or efficient. You are not being asked to determine whether Ms.

Heard-McKnight's performance was judged correctly. Rather, an employer is allowed, in

ordinary circumstances, to make personnel decisions without fear of incurring civil liability.

Indeed, an employer is allowed to make mistakes and you are not here to second-guess Mr.

Borrelli's decisions.

It is not necessary that you believe that the Defendant made the best decisions

regarding Ms. Heard-McKnight or that you would have made the same decisions yourself.

Moreover, the fact that you might disagree with the decisions made by Mr. Borrelli is not

enough for you to find for Ms. Heard-McKnight. Your job is to decide whether Ms. Heard-

McKnight has proven by a preponderance of the evidence that the defendant is liable for

82

an intentional denial of the equal protection of the laws based on the instructions that I

have given you.[26]

---

26 <u>Scaria v. Rubin</u>, 117 F.3d 652, 654-55 (2d. Cir. 1997)("As between experience and education, the [defendant] elected to value the first over the second in filling the job, and there is nothing to show that this value judgment was pretextual."); <u>Dister v. The Continental Group</u>, 859 F.2d 1108, 1116 (2d Cir. 1988)("It is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal."); <u>De La Cruz v. El Conquistador Resort and Country Club</u>, 218 F.3d 1, 9 (1st Cir. 2000)(Title VII was not designed to transform courts into a "super-personnel department, assessing the merits—or even the rationality of employers' nondiscriminatory business decisions...To obtain relief under Title VII, the evidence must permit a fact-finder reasonably to infer that unlawful discrimination was a determinative factor in the employer's decision"); <u>Fitzpatrick v. The New York Cornell Hospital</u>, 2002 US Dist LEXIS 25166, *17 (SDNY 2002)(District Courts "do not have a roving commission to review business judgments and they must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process.")

DEFENDANT'S PROPOSED
INSTRUCTION NO. 13

## DAMAGES

Ladies and Gentlemen, it is now my responsibility to instruct you on damages. You should draw no conclusions with respect to the fact that I am now instructing you on damages. This does not mean that I believe you should find for or against Ms. Heard-McKnight on the issue of liability.  My instruction on damages is only meant to apply if you decide that the defendant is liable under Ms. Heard-McKnight's claim, based upon the law as I instructed you earlier.

In general, there are two kinds of damages that may be awarded in a case of this type: compensatory damages and punitive damages.  Compensatory damages are intended to make the plaintiff whole, that is, to fairly compensate her for any injury she sustained as a direct result of the Defendant's unlawful actions.

Ms. Heard-McKnight is entitled to compensatory damages only for injuries caused by unlawful acts of the defendant.  Damages may not be based on speculation or sympathy. They must be based on the evidence presented at trial.  The object of an award of compensatory damages is to place the injured party in as close to the situation she would have occupied if the wrong had never been committed.  In this case, there are generally two

84

areas of a potential award of compensatory damages—backpay and emotional distress. You may not award any amount to cover Ms. Heard-McKnight's attorney's fees. That issue, if necessary, will be decided by me at a later time.

I.    <u>Back Pay</u>

I will now instruct you on the issue of backpay damages.

In the event that you are convinced that Ms. Heard-McKnight has established that Mr. Borrelli is liable for a violation of the equal protection clause of the Fourteenth Amendment to the Constitution, you should award her a sum which will compensate her for the money she would have expected to have earned if she had remained employed as a principal in Waterbury. In these cases, damages are meant to put the plaintiff in the economic position she would have occupied if the discrimination had not occurred.[27]

Thus, the first issue you must decide is whether Ms. Heard-McKnight has proven by a preponderance of the evidence that, in the absence of any racial discrimination by the Defendant, she would have remained a principal in Waterbury. That is, you must first determine whether Ms. Heard-McKnight has proven by a preponderance of the evidence that she would have met all of the requirements to remain a principal.

---

27 <u>See</u>, <u>e.g.</u>, <u>McKennon v. Nashville Banner Publishing Co.</u>, 115 S.Ct. 879, 886 (1995); <u>Bridgeport Hospital v. CHRO</u>, 232 Conn. 91, 111 (1995) (citation omitted).

If you find that her employment would have ended even if Mr. Borrelli had taken no allegedly unlawful action against her, then you cannot award any back pay to her. Additionally, if you find that she failed to take advantage of the procedures to challenge Mr. Borrelli's evaluation and therefore failed to determine whether Mr. Borrelli's evaluation would have caused her nonrenewal, then you cannot award any back pay to her.

Also, if you find that following her resignation, no prospective employers asked about Mr. Borrelli's evaluation of her performance, Mr. Borrelli cannot be liable for her failure to obtain employment after June 2000, and therefore he cannot be liable for back pay.

If you determine that Ms. Heard-McKnight has proven that the defendant intentionally violated the equal protection clause and that she would have met all of the requirements to remain a principal, you may award Ms. Heard-McKnight back pay based upon your findings grounded on the evidence presented at trial as to what amounts Ms. Heard-McKnight would have been earning, both as to wages and fringe benefits, if she had remained as a principal up until the time of trial.

Certain deductions must be made from this back pay amount, however.

First, you should deduct any income or wages Ms. Heard-McKnight has earned from employment from June 2000 to the present. That is, you should subtract amounts earned from employment with other employers, self employment or unemployment compensation payments from the effective date of her resignation until the present.

86

You should also subtract any Social Security payments received and any workers compensation she received.

You must also deduct from any back pay award any amounts which <u>could</u> have been earned by Ms. Heard-McKnight through the exercise of reasonable diligence.

It is Ms. Heard-McKnight's duty to use reasonable diligence to obtain other employment or to seek other sources of income to minimize any damages she might suffer.[28] This includes the obligation to seek and accept other suitable positions which may have been available and which, using reasonable efforts, she could have discovered.[29] In this regard, the Defendant has the burden of proving by a preponderance of the evidence that Ms. Heard-McKnight failed to minimize her damages.

Ms. Heard-McKnight must actively seek other employment by filling out job applications, checking want ads, registering with employment agencies and discussing employment possibilities with friends and acquaintances.[30] Ms. Heard-McKnight must also accept any equivalent or higher paying job that she is offered in order to receive backpay damages from the time she is offered such a position. If you find that Ms. Heard-McKnight

---

28 <u>See</u>, <u>e.g.</u>, <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231-32 (1982); <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Lussier v. Runyon</u>, 516 U.S. 815 (1995); <u>Suggs v. Servicemaster Education Food Mgt.</u>, 72 F.3d 1228, 1233 (6th Cir. 1996); <u>Whittlesey v. Union Carbide Corp.</u>, 742 F.2d 724, 728 (2d Cir. 1984).
29 <u>Id</u>.
30 <u>Id</u>.

did not exercise reasonable diligence or turned down a substantially equivalent or higher paying position, then you may decline to award her any damages at all or you may deduct the amount Ms. Heard-McKnight could have earned if she had exercised reasonable diligence to obtain or accept other employment.

Also, you must take into account the fact that Ms. Heard-McKnight may have been unable to work due to physical ailments and injuries unrelated to Mr. Borrelli's actions. For any period of time that she was unable to work full time, you must reduce her damage claim as she was unavailable to work and therefore not entitled to receive back pay during that period.

II.    Emotional Distress Damages

In addition to back pay, if you find that the Defendant intentionally denied Ms. Heard-McKnight the equal protection of the laws, the law allows Ms. Heard-McKnight to recover for any mental suffering that she experienced as a result of the Defendant's actions.

In order for emotional distress damages to be awarded, Ms. Heard-McKnight must prove that she experienced mental suffering or emotional distress that was proximately caused by the allegedly unlawful conduct of the Defendant.[31] It is difficult to prove the existence or extent of mental suffering with certainty, and there is always the possibility that

---

31 See, e.g., Johnson v. Flammia, 169 Conn. 491, 499 (1975); Boland v. Vanderbilt, 140 Conn. 520, 525 (1953); Bates v. Carroll, 99 Conn. 677, 679 (1932); Preston v. Keith, 217 Conn. 12, 20-21 (1991); Richardson v. Pratt & Whitney Mfg. Co.,

there is no real basis for the claim or that the suffering is exaggerated.[32]  For that reason,

you must scrutinize with care the evidence offered in support of any claim for mental

suffering and approach the matter with caution.  You must apply sound, common sense in

reaching any damages award you make for this reason.  In awarding damages, you must

also disregard any suffering which may have been experienced by Ms. Heard-McKnight from

causes other than the Defendant's actions and award her only those damages which you

are satisfied resulted from the alleged denial of the equal protection of the laws.  Ms. Heard-

McKnight can only recover for the actions of Mr. Borrelli.  If her mental suffering was caused

by others, whether it be parents, teachers, other school administrators or Board of Education

members, she cannot recover for such damages from Mr. Borrelli as he is only liable for his

own acts.  In assessing this claim, you are permitted to draw inferences as to whether Ms.

Heard-McKnight suffered emotional distress as a result of Mr. Borrelli's actions from the

absence of any medical testimony and the absence of physical symptoms.[33]

    In scrutinizing the evidence with respect to Ms. Heard-McKnight's mental suffering,

you must also bear in mind that such damages for mental suffering cannot be awarded

---

129 Conn. 669, 672 (1943).

    32 See, e.g., Delott v. Roraback, 179 Conn. 406, 409 (1980); D. Wright & W. Ankerman, Connecticut Jury Instructions §§ 222, 240 (4th Ed. 1993).

    33 See, Annis v. County of Westchester, 136 F.3d 239, 249 (2d Cir. 1998).

simply because someone's feelings are hurt.[34]  This is because a state of complete serenity

is a rare achievement in life, and a certain amount of emotional distress is simply a part of

the price we pay for living in this world.[35]

You may not speculate or guess as to the nature or extent of Ms. Heard-McKnight's

injuries.  You may only award damages for those injuries that Ms. Heard-McKnight has

proven, by a fair preponderance of the evidence and with a reasonable probability, resulted

from the actions of Mr. Borrelli.  In this regard, you may consider whether Ms. Heard-

McKnight's alleged mental distress was the product of other sources of stress in her life.

You must remember that the burden of proving damages with reasonable certainty lies with

Ms. Heard-McKnight. The theory of emotional distress damages is to provide fair and just

compensation, no more and no less, to Ms. Heard-McKnight.

III.    <u>Nominal Damages</u>

After considering all of the evidence introduced in this case, you may find that Mr.

Borrelli denied Ms. Heard-McKnight the equal protection of the laws, based on her race, but

that Ms. Heard-McKnight did not suffer any compensable injury.  If you make such a finding,

you are entitled to find in favor of Ms. Heard-McKnight and award her nominal damages.

---

34 <u>See</u>, <u>e.g.</u>, <u>Chipokas v. Heritage Savings & Loan Assoc., Inc.</u>, 13 Conn. L. Trib. 36 (Milford Sup. Ct., July 21, 1987, Kulawiz, J.) (<u>citing</u> <u>Seirs v. Coshen</u>, 31 Conn. Supp. 305, 308-309 (1973)).
35 Restatement (Second) of Torts § 46, Comment d (1977).

Nominal damages are awarded in recognition of the fact that a person's rights have been violated. Again, you may award nominal damages if you conclude that Mr. Borrelli discriminated against Ms. Heard-McKnight or denied her the equal protection of the laws based on her race, but that she did not suffer any compensable injury. Typically, nominal damages are awarded in the amount of $1.

You may not award both nominal damages and compensatory damages. Thus, if you find that Ms. Heard-McKnight is entitled to compensatory damages, you may not award her nominal damages.

IV.    Punitive Damages

In a case like this, the purpose of punitive damages is to punish individuals for extraordinary misconduct.[36] In other words, punitive damages are available to punish truly evil and outrageous conduct by a municipal official. Thus, if you find that Mr. Borrelli denied Ms. Heard-McKnight the equal protection of the laws, based solely on her race, an award of punitive damages would only be appropriate if Ms. Heard-McKnight proved by a

---

36 Waterbury Petroleum Prod. v. Canaan Oil & Fuel, 193 Conn. 208, 237-238 (1984).

preponderance of the evidence that Mr. Borrelli acted with actual malice or with reckless indifference to Ms. Heard-McKnight's constitutional rights.[37]

An act is performed maliciously if it is prompted by ill-will or such gross indifference to the rights of others as to amount to an actual intent to harm. An act is reckless if it is performed with a serious or callous disregard for its consequences.[38] You may not award punitive damages if you find that Mr. Borrelli was merely mistaken or negligent in his conduct. Thus, you must determine whether Ms. Heard-McKnight has proven that Mr. Borrelli acted with an evil motive or intent or recklessly disregarded Ms. Heard-McKnight's rights. A punitive damage award is to reflect the degree of reprehensibility of the defendant's conduct. Punitive damages are to be awarded only if the Defendant culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deference.[39]

---

37 Smith v. Wade, 461 U.S. 30, 56 (1983) (punitive damages may only be awarded against a municipal official when the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); Caruso v. Forslund, 842 F. Supp. 1497, 1499 (D. Conn. 1994); Edgecomb v. Housing Authority of the Town of Vernon, 824 F. Supp. 312, 317 (D. Conn. 1993) (where there was no evidence of bad faith by defendants, there was no basis for assessing punitive damages).

38 See, e.g., Bishop v. Kelly, 206 Conn. 608, 614 (1988); Restatement (Second) of Torts § 500 (1977).

39 BMW of North America, Inc. v. Gore, 517 U.S. 559, 575-77 (1996); State Farm Mutual Automobile Ins. V. Campbell, 538 U.S. 408 (2003).

Whether to make an award of punitive damages in addition to actual damages is a matter exclusively within your province.  However, I remind you that punitive damages should never be awarded because of any sympathy, bias or prejudice with respect to any party in this case.  Again, your decision as to whether punitive damages may be awarded must be based solely on the evidence presented here in court.  If Ms. Heard-McKnight has failed to prove by a preponderance of the evidence that Mr. Borrelli acted maliciously or in callous disregard of her constitutional rights, then you must not award punitive damages.

If you award Ms. Heard-McKnight compensatory damages or nominal damages as a result of the actions of Mr. Borrelli, you have the option of making a separate and additional award of punitive damages against him.  If you award punitive damages, you should consider the net worth of the person who will pay these damages and the impact on that person.  Punitive damages must bear a reasonable relationship to the plaintiff's actual injury.  You are under no obligation to award punitive damages.  If you award Ms. Heard-McKnight nominal damages or compensatory damages, you can decide that punitive damages are not warranted.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 14

## AVOIDING SYMPATHY, PREJUDICE AND SPECULATION

Ladies and Gentlemen, I must remind you that the mere filing of a lawsuit containing allegations or claims against another person is proof of nothing. And you must not draw any inference from that fact. To decide whether a case has been proven in accordance with all of the requirements of law on which I have instructed you, you must look to the evidence, for it is from the evidence that you must determine whether the plaintiff has proven her case. Your verdict must be based absolutely and solely upon the evidence given to you here in the trial of this case. You should not be swayed or influenced by any sympathy or prejudice for or against any of the parties. You should not be influenced by any claims or comments of counsel which are not warranted by the evidence, but you should decide the case upon the evidence presented before you at this trial with due regard to the law as stated by the Court, as applied to the facts which you find to be established by the evidence. You should draw no inferences from material or testimony which was excluded from evidence or from the mere asking of a question to which an objection is sustained or which has not been answered.

94

As I have instructed you, your decision must be based upon the evidence alone and you must not surmise, speculate or guess as to the material facts in this case.

_____

D. Wright & W. Ankerman, supra §312.

95

DEFENDANT'S PROPOSED
INSTRUCTION NO. 15

## **SPECIAL VERDICT FORMS**

A form of special verdict has been prepared for your convenience. You will take this form to the jury room.

(Form of special verdict is read.)

You will note that each of the interrogatories or questions calls for a "Yes" or "No" answer, or a specific amount of damages. The answer to each question must be your unanimous answer. Your foreperson will write your unanimous answer in the space provided opposite each question. As you will note from the wording of the questions, it will not be necessary to consider or answer certain questions if the answer to certain other questions is "No."

After the interrogatories or questions are answered, the foreperson will then date and sign the special verdict as so completed, and you will then return with it to the courtroom.

96

**(14)    ANTICIPATED EVIDENTIARY PROBLEMS**

The parties will be filing motions in limine regarding any anticipated evidentiary

problems.  Defendant's first three motions in limine are attached as Exhibits 1, 2
and 3.

**(15)    PROPOSED FINDINGS AND CONCLUSIONS**

Not applicable.

**(16)    TRIAL TIME**

Approximately nine days.

**(17)    FURTHER PROCEEDINGS**

Counsel anticipate raising evidentiary issues by way of motions in limine.

**(18)    ELECTION FOR TRIAL BY MAGISTRATE**

No objection.

97



THE PLAINTIFF, SHARON HEARD-McKNIGHT

BY: _____

JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
TELEPHONE: 203.562.9931
FAX: 203.776.9494
E-MAIL: jrw@johnrwilliams.com
Her Attorney


DEFENDANT, MATTHEW BORRELLI

By _____

Gary S. Starr (ct06038)
Gabriel J. Jiran (ct23469)
Stephen M. Sedor (ct261117)
For Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
Telephone (860) 251-5000
Facsimile (860) 251-5500
gstarr@goodwin.com
gjiran@goodwin.com
ssedor@goodwin.com
His Attorneys


99