54    Memo from plaintiff to Anzalone dated 1/31/00

55    Memo from plaintiff to Leff, et al., dated 2/4/00

56    Memo from plaintiff to Leff dated 2/7/00

57    Memo from plaintiff to Borrelli dated 2/10/00

58    Second Memo from plaintiff to Borrelli dated 2/10/00

59    Memo from plaintiff to Cavanaugh, et al., dated 2/12/00

60    Memo from plaintiff to All Teachers dated 2/18/00

61    Memo from plaintiff to Borrelli dated 2/21/00, with attachments

62    Plaintiff's personnel file

63    File of letters reflecting plaintiff's post-Waterbury attempts to secure
      employment

## Defendant's Preliminary Objections To The Plaintiff's Evidence

The Defendant objects to Exhibit 1 based on hearsay and relevance.

The Defendant objects to Exhibit 2 based on relevance.

The Defendant objects to Exhibit 3 based on relevance.

The Defendant objects to Exhibit 4 based on relevance.

The Defendant does not have a copy of Exhibit 5 but it appears from the description to be replete with hearsay. Therefore, the Defendant objects to the proposed exhibit. The Defendant also objects based on relevance.

The Defendant objects to Exhibit 6 based on relevance.

The Defendant objects to Exhibit 7 based on relevance.

The Defendant does not have a copy of Exhibit 8, but it appears from the description to be replete with hearsay. Therefore, the Defendant objects to the proposed exhibit. The Defendant also objects based on relevance.

Exhibit 12 is subject to Defendant's First Motion in Limine.

The Defendant objects to Exhibit 15 based on hearsay.

The Defendant objects to Exhibit 17 based on relevance.

The Defendant objects to Exhibit 18 because the attachments have the names of students on them which invades privacy rights. The Defendant further objects based on hearsay.

The Defendant objects to Exhibit 19 based on relevance.

The Defendant objects to Exhibit 20 because this document contains unidentified handwriting which raises issues of authenticity and completeness. It is also objected to based on hearsay.

The Defendant objects to Exhibit 21 based on relevance.

26

The Defendant objects to Exhibit 22 based on relevance and hearsay.

The Defendant objects to Exhibit 23 based on relevance.

The Defendant objects to Exhibit 24 based on relevance.

The Defendant object to Exhibit 25 as it contains unidentified handwriting.

The Defendant objects to Exhibit 27 because this document contains unidentified handwriting which raises issues of authenticity and completeness and based on relevance.

The Defendant objects to Exhibit 30 based on hearsay and relevance.

The Defendant objects to Exhibit 31 based on relevance.

The Defendant objects to Exhibit 32 because it is a duplication of Exhibit 3.

The Defendant objects to Exhibit 33 based on relevance.

The Defendant objects to Exhibit 34 based on relevance.

The Defendant objects to Exhibit 35 based on relevance.

The Defendant objects to Exhibit 36 based on relevance.

The Defendant objects to Exhibit 37 based on relevance.

The Defendant objects to Exhibit 38 based on relevance.

The Defendant objects to Exhibit 39 based on relevance.

The Defendant objects to Exhibit 40 based on relevance.

The Defendant objects to Exhibit 41 based on relevance.

The Defendant objects to Exhibit 42 because it is a duplication of Exhibit 6.

The Defendant objects to Exhibit 43 based on relevance.

The Defendant objects to Exhibit 44 based on relevance.

The Defendant objects to Exhibit 45 based on relevance.

The Defendant objects to Exhibit 50 because it is a duplication of Exhibit 29.

The Defendant objects to Exhibit 51 because it is a duplication of Exhibit 29.

The Defendant objects to Exhibit 54 based on relevance.

The Defendant objects to Exhibit 55 because the document appears to be incomplete.  It references attachments, but Plaintiff has never produced the attachments or failed to identify what the attachments were.

The Defendant objects to Exhibit 56 because it is a duplication of Exhibit 9.

The Defendant objects to Exhibit 57 because it is a duplication of Exhibit 10.

The Defendant objects to Exhibit 58 because it is a duplication of Exhibit 10.

The Defendant objects to Exhibit 59 because it appears to be incomplete.  It references an attachment, but Plaintiff has never produced the attachments or failed to identify what the attachments were.

The Defendant objects to Exhibit 62 based on relevance and hearsay.

The Defendant objects to Exhibit 63 because it is unclear what letters the Plaintiff has and the authenticity of those letters. Plaintiff has only produced letters to the Defendant through November, 2001.

### For the Defendant

| 1. | November 17, 1999 | Wallace Middle School PTA General Meeting Minutes |
|----|----|----|
| 2. | December 4, 1999 | Memo from Sharon Heard-McKnight to all staff |
| 3. | December 8, 1999 | Memo from Sharon Heard-McKnight to all staff regarding cafeteria rules |
| 4. | January 26, 2000 | Letter from Michael Ptak to Frank Lombardo regarding Wallace Middle School safety solutions with three page attachments |
| 5. | January 28, 2000 | Parent's Complaint to the Commissioner of the State Board of Education pursuant to Section 10-4(b) of the General statutes |
| 6. | February 3, 2000 | Memo from Sharon Heard-McKnight to all staff regarding new staff, detention, in school suspension |
| 7. | February 4, 2000 | Memo from Sharon Heard-McKnight to the House Principals regarding discipline statistics needed for interim superintendent Borrelli |
| 8. | February 10, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding obstacles/challenges |
| 9. | February 10, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding discipline report |

| | | |
|---|---|---|
| 10. | February 12, 2000 | Memo from Sharon Heard-McKnight to house principals and educational consultant regarding discipline statistics for the months of September, 1999 – January, 2000 |
| 11. | February , 2000 | Presentation called "Waterbury Redefined, Principals Goals February – June 2000 and Interim Superintendent's Initiatives, February – June, 2000 |
| 12. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding recommendation for expulsion of Melanie A. **, grade 8 |
| 13. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding recommendation for expulsion of Jessica O.**, grade 8 |
| 14. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding recommendation for expulsion of Marilyn M.**, grade 8 |
| 15. | February 17, 2000 | Memo from Matthew Borrelli to Sharon Heard-McKnight regarding meeting with staff members on February 16, 2000 |
| 16. | February 17, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli regarding Safety Committee's complaint to the State Board of Education |
| 17. | February 18, 2000 | Memo from Matthew Borrelli to principals and supervisors regarding a support system |
| 18. | March, 2000 | March 2000 memo from Mary Moriarty |
| 19. | March, 2000 | Letter from Michelle Pizzuto to Matthew Borrelli with attachments |

| 20. | March, 2000 | Notice of Meeting for Parents with Matthew Borrelli |
|-----|-------------|------------------------------------------------------|
| 21. | March 3, 2000 | Letter from Matthew Borrelli to Matthew Larkin, President School Administrators of Waterbury regarding evaluation |
| 22. | March 6, 2000 | Notes of Matthew Borrelli regarding meeting with staff and faculty |
| 23. | March 13, 2000 | Letter from Jan Calabro, chairperson of the safety committee, to Mr. Borrelli regarding information request for the complaint filed with the State Department of Education |
| 24. | March 20, 2000 | Memo from Donald Schaer, Supervisor of Technology Education to all principals regarding school reform options |
| 25. | March 20, 2000 | Letter of resignation from Sharon Heard-McKnight |
| 26. | March 24, 2000 | Letter from Matthew Borrelli to Sharon Heard-McKnight regarding 1999-2000 final evaluation |
| 27. | April 3, 2000 | Letter and attachments from Theodore S. Sergi, Commissioner of Education, to Matthew Borrelli |
| 28. | April 10, 2000 | Memo from Matthew Borrelli to all principals and supervisors concerning evaluations |
| 29. | April 12, 2000 | Memo from Sharon Heard-McKnight to Matthew Borrelli and the Safety Committee's complaint to the State Board of Education |
| 30. | April 13, 2000 | Note from Matthew Borrelli regarding the response prepared by Sharon Heard-McKnight |

| 31. | April 14, 2000 | An attachment of April 14, 2000 from Matthew Borrelli to Theodore Sergi together with a revised memo of April 14, 2000 from Sharon Heard-McKnight to Matthew Borrelli regarding actions to reform Wallace Middle School |
| --- | --- | --- |
| 32. | April 19, 2000 | Memo from Matthew Borrelli to principals on the School Reform Plan |
| 33. | May 8, 2000 | Letter from Sharon Heard-McKnight to Mr. Borrelli regarding miscellaneous issues |
| 34. | May 26, 2000 | Letter from Karen Flannigan, Office of Legal and Governmental Affairs, State Department of Education to Matthew Borrelli and Jan Calabro with an attachment of a draft Memorandum Agreement regarding the 10-4b complaint |
| 35. | March 13, 2000 | Notes of analysis of Heard-McKnight's performance by Matthew Borrelli |
| 36. | March 29, 2000 | Evaluation of Gina Calabrese by Matthew Borrelli |
| 37. | February 2000 | Videotape of Matthew Borrelli presentation to administrators |
| 38. | | Documents related to payments to Heard-McKnight related to her Workers' Compensation claim. |
| 39. | | Heard-McKnight's Initial Contract with the Waterbury Board of Education dated August 1999. |

**(12)    DEPOSITION TESTIMONY**

None.

**(13)    REQUESTS FOR JURY INSTRUCTIONS**

**Plaintiff's Requests**

1.  To prevail on a claim of intentional discrimination, the plaintiff must prove by a preponderance of the evidence, either directly or indirectly, that there is evidence of intentional discrimination.  Direct evidence would include oral or written statements showing a discriminatory motivation for the defendant's treatment of her.  Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one reasonably to believe that race or sex was a motivating factor in the defendants' treatment of the plaintiff.  [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions § 104.03.]

2.  The plaintiff is entitled to prevail in this case if she shows that discrimination was a motivating -- as opposed to determining -- factor in the challenged employment decisions or any one of them.  [Devitt, etc., § 104.03.]

3.  Direct evidence is evidence of remarks or actions that, if believed, directly prove that the plaintiff's membership in a protected class was a factor in the defendants' adverse employment decision.  [Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).]

33

4. To establish discrimination in failing to retain the plaintiff in a position for which she was qualified by using indirect evidence, the plaintiff must prove what is called a prima facie case of race discrimination. To establish a prima facie case, the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) that she was a member of a protected group; (2) that she held and was qualified for the position in question; (3) that despite her qualifications she was rejected; (4) that subsequently the defendant awarded the position to a person who was not a member of the protected class. [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Legrand v. Trustees of University of Arkansas, 821 F.2d 478 (8th Cir. 1987), cert. denied, 485 U.S. 1034 (1988); Blackwell v. Sun Electric Corp., 696 F.2d 1176 (6th Cir. 1983); Cockrham v. South Central Bell Telephone Co., 695 F.2d 143 (5th Cir. 1983); Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Geisler v. Folsom, 735 F.2d 991 (6th Cir. 1984); Robinson v. Arkansas State Highway & Transportation Commission, 698 F.2d 957 (8th Cir. 1983); Lerma v. Bolger, 689 F.2d 589 (5th Cir. 1982).]

5. It is necessary only that the plaintiff prove that the defendant in fact took some adverse employment action against her and that her race was a factor which played a part in the defendant's decision; in other words, that the defendant had a discriminatory purpose or motive. [Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1101 (8th Cir. 1988).]

6. If you determine that the defendant discriminated against the plaintiff, then you

must determine the amount of damages that she has suffered as a result. You may award as actual damages an amount that reasonably compensates the plaintiff for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that she would have received had she not been discriminated against. Basically, you have the ability to make the plaintiff whole for any wages or other benefits that she has lost as a result of the discrimination against her. [Lorillard v. Pons, 434 U.S. 575 (1978); Faris v. Lynchburg Foundry, 769 F.2d 958 (4th Cir. 1985); Blum v. Western Electric Co., 731 F.2d 1473 (10th Cir. 1984); Devitt, etc., supra, §§ 104.06, 104A.11.]

7. The plaintiff has alleged that, as a result of the defendant's intentional discrimination, she has suffered mental anguish, inconvenience and humiliation. The plaintiff has the burden of proving any compensatory damages by a preponderance of the evidence. If you determine that the plaintiff has proven by a preponderance of the evidence that she has experienced mental anguish, inconvenience or humiliation, you may award her damages for those injuries. No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence. No exact standard exists for fixing the compensation to be awarded for these elements of damages. The damages that you award must be fair compensation -- no more and no less. When considering the amount of monetary damages to which the plaintiff may be entitled, you should consider the nature, character, and seriousness of any mental

35

anguish, inconvenience or humiliation she felt. You must also consider its extent or duration, as any award you make must cover the damages endured by the plaintiff since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that Ms. Heard-McKnight's emotional stress and its consequences have continued to the present time or can reasonably be expected to continue in the future. [Devitt, etc., supra, §§ 104.05, 104.06, 104A.11; Adams v. Doehler-Harvis, 144 Mich. App. 764 (1985); Freeman v. Kelvinator, Inc., 569 F. Supp. 999 (E.D. Mich. 1979); Slayton v. Michigan Host, Inc., 122 Mich. App. 411, 332 N.W.2d 498 (1983); Riethmiller v. Blue Cross, 151 Mich. App. 188, 390 N.W.2d 227 (1986).]

8. In addition to the claims for damages already mentioned, you should consider whether the plaintiff is entitled to punitive damages. These are awarded as a punishment of a defendant and as a warning to others to keep them from following the defendant's example. You may award these damages if you determine by a preponderance of the evidence that one or more of the defendant's acts were done with either (1) actual malice, which is nothing more nor less than intentional wrongdoing, or (2) a wanton and willful disregard for the rights of another, in other words, a deliberate act taken with knowledge that it probably will harm another and with reckless indifference to the consequences -- or, as one court has said, just not giving a damn. If you determine that the facts justify an award of punitive damages, you should try to determine a fair, just, and reasonable

36

amount for the plaintiff under all the circumstances. Punitive damages are not intended to compensate a plaintiff for injuries but rather are intended to punish the defendant and to prevent similar conduct in the future. Punitive damages must bear a reasonable relationship to the plaintiff's actual injury. However, no single numerical equation has been made to easily link punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors. These include: (1) the impact or severity of the defendant's conduct; (2) the amount of time the defendant conducted itself or himself in this manner; (3) the amount of compensatory damages; (4) the potential profit the defendant may have obtained from the wrongful conduct; (5) the attitudes and actions of the defendant or, if it is an institution, its top management, after the misconduct was discovered; (6) the effect of the damages award on the defendant's financial condition; and (7) any punishment the defendant may have shown he or it is expected to receive from other sources. [Levinson v. Prentice-Hall, Inc., 868 F.2d 558 (3d Cir. 1989); Brown v. M&M/Mars, 883 F.2d 505 (7th Cir. 1989); Knights Bridge Marketing Services, Inc. v. Promociones Proyectos, S.A., 728 F.2d 572 (1st Cir. 1984); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 924 n.7 (2d Cir. 1981); Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, 692 F.2d 214 (1st Cir. 1982); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1419 (10th Cir. 1987); Benjamin v. United Merchants & Manufacturers, Inc., 873 F.2d 44 (2d Cir. 1989); Dominic v. Consolidated Edison of New York, 822 F.2d

37

1249 (2d Cir. 1987); Rose v. Hearst Magazine Division, 814 F.2d 491 (7th Cir. 1987); Burns v. Texas Refining, Inc., 890 F.2d 747 (5th Cir. 1989); Conway v. ElectroSwitch Corp., 825 F.2d 593, 597 (1st Cir. 1987); Berbraecken v. Westinghouse Electric, 881 F.2d 1041 (11th Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Devitt, etc., supra, §§ 104.07, 104A.12.]

## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

In accordance with the Court's Superceding Pretrial Order of October 29, 2004, the parties have conferred about their proposed jury instructions and have made progress on resolving their disputes. However, certain disputes were unable to be resolved. Consequently, the Defendant submits the following objections to the proposed jury instructions of the Plaintiff.

1.    Plaintiff's Proposed Instruction Nos. 2 and 5

Ms. Heard-McKnight proposes an instruction to the jury that race must have been a "motivating" factor, rather than the determinative factor, in the evaluation decision of Mr. Borrelli. The use of the word "motivating" in this context represents the standard that is used in a mixed motive discrimination analysis. See Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988). In the absence of evidence of a mixed motive, the relevant inquiry is whether race was a determinative factor in the employer's decision. See Estes, 856 F.2d at 1101.

In order to support a mixed motive jury instruction, a plaintiff must present sufficient evidence for a reasonable jury to conclude that race was a motivating factor for an employment action. Desert Palace, 539 U.S. at 101. In the present case, Ms. Heard-McKnight has not offered any evidence or justification for a mixed motive jury instruction. In fact, Judge Chatigny noted that Ms. Heard-McKnight had not presented any evidence of a racial motive in her response to the motion for summary judgment in this case. (Summary Judgment Ruling, at p. 16). Therefore, Ms. Heard-McKnight has not made any preliminary showing of a racial motive that would justify submitting the question of mixed motive to the jury. Such an instruction would be prejudicial to Mr. Borrelli under these circumstances in that it would create the impression in the mind of the jury that race was one factor in his evaluation of Ms. Heard-McKnight.

39

Further, under the mixed motive analysis, the burden of proof would shift to Mr. Borrelli to prove that he would have taken the action regardless of this unsupported discriminatory motive. Desert Palace, 539 U.S. at 100. This shifting of the burden of proof is unwarranted where Ms. Heard-McKnight has failed to produce any evidence of a racial motivation by Mr. Borrelli. Consequently, Ms. Heard-McKnight's Jury Instruction Nos. 2 and 5 are improper. If after the conclusion of the evidence in this case Ms. Heard-McKnight has made a showing of a racial motive, then it may be necessary to revisit this issue.

### 2.    Plaintiff's Proposed Instruction No. 4

In this proposed instruction, Ms. Heard-McKnight inaccurately outlines the standard of proof under the Equal Protection Clause. The final factor listed in Ms. Heard-McKnight's statement of the standard of proof is not an accurate reflection of her burden in this case. In order to prove a violation of the Equal Protection Clause, a plaintiff must prove that the defendant engaged in conduct that gives rise to an inference of discriminatory intent. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Ms. Heard-McKnight's instruction states that if she can prove that a non-minority replaced her, that she has established her prima facie case. While this evidence might be circumstantial evidence that could lead to an inference of discrimination, it is not necessarily determinative on its own. In order to reflect accurately Ms. Heard-McKnight's

40

burden of proof in this case, the jury should not be permitted to hear her Proposed

Instruction No. 4. Mr. Borrelli's Proposed Instruction No. 6 is a more accurate statement

of the law on this issue.

### 3.    Plaintiff's Proposed Instruction No. 6

The statement of the standards used to determine damages in this proposed

instruction is overly simplistic and does not include any discussion of the various factors

that the jury should consider in reaching its decision on compensatory damages. Ms.

Heard-McKnight's proposed instruction states that if the jury concludes that she was

discriminated against, then she is automatically entitled to full back pay. Ms. Heard-

McKnight does not instruct the jury to consider any of the circumstances where back pay

would be improper or where deductions would be required from a back pay award. In

contrast, Mr. Borrelli's Proposed Instruction No. 13 provides a detailed analysis of the

grounds for an award of compensatory damages and any potential limitations on such an

award. Mr. Borrelli's instruction therefore provides a more accurate statement of the

factors that the jury must consider in this case and is the more appropriate instruction to

present to the jury.

### 4.    Plaintiff's Proposed Instruction No. 7

Ms. Heard-McKnight's instruction on emotional distress damages does not clearly

express her burden of proof required to recover those damages. For example, her

41

instruction states that if she can prove emotional distress, then she is entitled to recover damages for that distress. However, she fails to state any causation requirement for recovering those damages and does not warn the jury against considering external sources of emotional distress in its award. Mr. Borrelli's Proposed Instruction No. 13 more clearly outlines the burden of proof for emotional distress damages and expressly states that such distress must have been proximately caused by the alleged discrimination by Mr. Borrelli.

Further, Mr. Borrelli's Proposed Instruction No. 13 distinguishes between alternative sources of emotional distress and cautions the jury that Ms. Heard-McKnight may not recover for emotional distress caused by persons or factors other than Mr. Borrelli. This distinction is vital to ensure that the jury does not award emotional distress damages based on factors not relevant to this case. Consequently, Ms. Heard-McKnight's Proposed Instruction No. 7 is improper and the Court should instead use Mr. Borrelli's Proposed Instruction No. 13.

5.    Plaintiff's Proposed Instruction No. 8

Ms. Heard-McKnight has misstated the standard for punitive damages in this proposed instruction.  The correct standard has been well-established by the Second Circuit and requires that a defendant engage in conduct that is so reprehensible that it warrants punishment.  As such, punitive damages may only be awarded where the defendant's conduct is proved to be the product of an evil motive or intent, or where it involves callous indifference to the protected rights of others.  The defendant must know that he is acting in violation of federal law, not merely that he is engaging in discrimination.  Tolbert v. Queens College, 242 F.3d 58 (2nd Cir. 2001).  Ms. Heard-McKnight's proposed instruction minimizes this rather substantial burden of proof.  In contrast, Mr. Borrelli's Proposed Instruction No. 13 more accurately and fairly describes this burden.  Consequently, the Court should use Mr. Borrelli's Proposed Instruction No. 13 on the issue of punitive damages.

Ms. Heard-McKnight's proposed instruction on punitive damages also allows the jury to consider the financial situation of Mr. Borrelli in its calculation of punitive damages.  This instruction is improper unless Mr. Borrelli chooses to introduce evidence of his financial situation to mitigate a punitive damages award.  Provost v. City of Newburgh, 262 F.3d 146 (2d Cir. 2001).  At this time, Mr. Borrelli has not decided that he will present evidence of his personal financial situation at trial.  Therefore, it is premature to consider a

43

instruction that would allow the jury to consider this issue.

## DEFENDANT'S SUBMISSION OF PROPOSED JURY INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 51 and this Court's pre-trial order, the Defendant respectfully proposes that the following instructions be given to the jury at the close of the case at bar.  The Defendant reserves the right to revise and/or supplement the proposed instructions to conform to the evidence introduced at trial.[1]

---

1 The parties have not included herein the "standard" instructions such as "Province of the Court and Jury"; "Credibility of Witnesses"; "Conduct of Counsel"; "Duties During Deliberation" "Selection of Foreperson/Communications with Court" and so forth.  The Defendants request that such instructions as contained in E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions (4th ed. 1987) be given.  If the court would like the Defendant to supply such instructions, the Defendant will be happy to do so.

44

## TABLE OF CONTENTS

I.    Defendant's Proposed Jury Instructions

Instruction    Title

1.       Plaintiff's Claim

2.       Defendant's Claim

3.       What Is And Is Not Evidence

4.       Direct And Circumstantial Evidence

5.       Burden Of Proof In Civil Case Is On Plaintiff

6.       Burden Of Proof – Equal Protection Claim

7.       Connecticut Tenure Law for Principals

8.       Defendant's State Of Mind

9.       Proximate Cause

10.      Qualified Immunity Defense

11.      Plaintiff's Opinion As To Her Own Qualifications

12.      Comments By Board Officials

13.      Business Judgment

14.      Damages

15.      Avoiding Sympathy, Prejudice And Speculation

16.      Special Verdict Forms (Attached as Exhibit 4)

DEFENDANT'S PROPOSED
INSTRUCTION NO. 1

## **PLAINTIFF'S CLAIM**

Ms. Heard-McKnight contends that she was treated differently by Mr. Borrelli because she is African-American. She claims that the criteria used to evaluate her were different from similarly situated white principals in Waterbury and that Mr. Borrelli ignored her efforts and successes in leading Wallace Middle School. Notwithstanding the fact that she performed her job satisfactorily she was advised by Mr. Borrelli that he would be recommending that her employment contract for the 2000-2001 school year not be renewed. As a result, she resigned effective at the end of the school year. Plaintiff argues that the treatment she received from Mr. Borrelli was discriminatory and without regard to her efforts and qualifications.

46

DEFENDANT'S PROPOSED
INSTRUCTION NO. 2

## **DEFENDANT'S CLAIM**

The Defendant contests all of Ms. Heard-McKnight's claims. Mr. Borrelli disputes that Ms. Heard-McKnight was denied equal protection under the laws.

Mr. Borrelli contends that Ms. Heard-McKnight did not perform up to the standard established for principals and was evaluated according to the same criteria used for all non-tenured principals by Mr. Borrelli. Thus, the Defendant contends that Ms. Heard-McKnight was treated the same as all other non-tenured principals and was not discriminated against on the basis of her race. Finally, the Defendant contends that it was objectively reasonable for Mr. Borrelli to believe that his actions did not violate Ms. Heard-McKnight's rights, and therefore, he is entitled to qualified immunity.

Accordingly, Mr. Borrelli asks that you find in his favor and not award Ms. Heard-McKnight any damages on her claims.

47

DEFENDANT'S PROPOSED
INSTRUCTION NO. 3

## WHAT IS AND IS NOT EVIDENCE

The term "evidence" includes the sworn testimony of the witnesses who appeared before you and the exhibits admitted into evidence which you will have in the jury room.

Statements, objections or arguments made by the attorneys are not evidence. Attorneys attempt to point out those things that are most significant or most supportive to their case, and in so doing, call your attention to inferences from the evidence that might otherwise escape your notice. What the attorneys say when making objections, or during [opening and] closing arguments, is not binding upon you. Arguments by attorneys are not evidence, because the attorneys are not witnesses. What the attorneys have said to you in their [opening statement and in their] summations is intended to help you understand the evidence to reach your verdict.

You must consider only what the evidence has been in this case, as it has been presented to you through witnesses and exhibits. Furthermore, if your recollection is different from that of the attorneys or of the court, it is your recollection and interpretation of the evidence that controls.

In the course of this case, the attorneys have conferred with me outside of your hearing and, on occasion, you have been excused from the room so a point of law or

48

objection could be decided.   The attorneys have the right and duty to ask the court to make
rulings of law and to request conferences at the side bar out of the hearing of the jury.  In
those situations, you should not speculate about what was discussed.  Likewise, you should
not show any prejudice against an attorney or his or her client because the attorney asked
for a conference out of the hearing of the jury or asked the court for a ruling on the law.

During the trial, there have also been objections by the attorneys and rulings by the
court.  It is the duty of the attorney on each side of a case to object when the other side
offers testimony or other evidence which the attorney believes is not properly admissible.
Such evidentiary issues must be decided by me, the Court.  You should not show any
prejudice against an attorney or his or her client because he or she objected to the
admissibility of evidence.

In addition, you are to consider only the evidence that was admitted. If some evidence
was presented and stricken from the record or some evidence offered and refused, you must
not consider it.  You must dismiss it from your minds, and you also must not draw any inference
from questions or answers that were stricken. Those matters are to be treated as though you
had never known of them.  Also, if certain testimony was received for a limited purpose -- such
as for the purpose of assessing a witness' credibility -- you must follow the limiting instructions I
have given.

49

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.  As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

————————————

3 E. Devitt, C. Blackmar, & M. Wolff, supra §70.14, §§71.08 - 71.12.

D. Wright & W. Ankerman, Connecticut Jury Instructions §§ 6, 12, 14, 16 (4th Ed. 1993).

50