DEFENDANT'S PROPOSED
INSTRUCTION NO. 4

## **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are, generally speaking, two types of evidence from which you may properly find the facts of this case: direct evidence and circumstantial or indirect evidence.

Direct evidence is a document or the testimony of an eyewitness which directly supports a party's claims.

Circumstantial evidence involves the offering of evidence of a fact or facts from which the jury is asked to infer the existence and proof of another fact or facts. Such other fact may be found so proven if, but only if, you the jury find that the inference asked to be drawn is not only logical and reasonable but is strong enough so that you can find that it is more probable than not that the fact you are asked to infer is true. Accordingly, you must be careful to avoid resorting to sympathy, speculation, conjecture or guesswork -- under the guise of relying on circumstantial evidence -- in order to determine critical facts in this case.

Let me give you an example of circumstantial evidence. Suppose you are inside a room which has no windows. Suppose a person walks in wearing a wet raincoat, wet boots and carrying an umbrella. Even though you cannot see that it is raining outside, you would probably conclude that it must be raining. The wet raincoat, boots and umbrella are all circumstantial evidence that it is raining. That is all that is meant by circumstantial evidence.

51

Haskell v. Kaman Corp., 743 F. 2d 113, 119 (2d Cir. 1984)

Hagelthorn v. Kennecott Corp., 710 F. 2d 76, 80-81 (2d Cir. 1983)

Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 919-21 (2d Cir. 1981)

3  E. Devitt, C. Blackmar, & M. Wolff, supra, §72.03.

Shennessey v. Shennessey, 145 Conn. 211, 214-15 (1958)

DEFENDANT'S PROPOSED
INSTRUCTION NO. 5

## **BURDEN OF PROOF IN CIVIL CASE IS ON PLAINTIFF**

In this case, the plaintiff, Sharon Heard-McKnight, bears the burden of proof. Ms. Heard-McKnight has the burden of proving every essential element of her case by a preponderance of the evidence. The burden is not upon Mr. Borrelli to disprove Ms. Heard-McKnight's claim. The burden remains with Ms. Heard-McKnight at all times.

To "prove by a preponderance of the evidence" means to prove that something is more likely true than not true. Thus, in this case, it is Ms. Heard-McKnight's burden at all times to prove that it is more likely than not true that she was denied the equal protection of the laws on account of her race by the Defendant. There is no requirement that the Defendant convince you that something did not happen.

If you do not find that a fact or issue alleged by Ms. Heard-McKnight has been proven by a fair preponderance of the evidence, then you will find it not to have been proven at all, and you are not to consider this fact or issue in reaching your verdict. If you believe that the testimony on any fact or issue is evenly balanced so that you cannot say that it inclines you either one way or the other, there would be no preponderance of the evidence as to that fact or issue, and Ms. Heard-McKnight has failed to prove that fact or issue.

53

The burden of proof imposed by law upon Ms. Heard-McKnight requires that your decision must be based upon evidence alone and that you must remove from your consideration such matters that are merely guesses or speculations. You are not at liberty to surmise or speculate or guess as to the material facts in this case.

---

3 E. Devitt, C. Blackmar, & M. Wolff, supra §72.01.

D. Wright & W. Ankerman, supra, § 311.

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 2751-52 (1993).

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-254 (1981).

DEFENDANT'S PROPOSED
INSTRUCTION NO. 6

## **BURDEN OF PROOF—EQUAL PROTECTION CLAIM**

Ms. Heard-McKnight claims that the defendant, Matthew Borrelli, denied her the
equal protection of the laws on the basis of her race in violation of the Fourteenth
Amendment to the Constitution. More specifically, she claims that Mr. Borrelli treated her
differently than other similarly situated employees because of her race when he advised her
that he had decided to recommend the non-renewal of her employment contract. Ms.
Heard-McKnight claims that Mr. Borrelli's treatment of her led to her decision to resign and
violated her rights to equal protection.

In order to establish her equal protection claim, Ms. Heard-McKnight must prove by a
preponderance of the evidence the following three elements:

1. That the conduct she complained about was committed by Mr. Borrelli while
   he was a person acting under color of state law;

2. That Mr. Borrelli's conduct deprived her of rights, privileges, or immunities
   secured by the Constitution or laws of the United States and;

3. That Mr. Borrelli's acts were the proximate cause of her injuries and
   subsequent damages.

55

The parties do not dispute the first element of this standard.  However, Ms. Heard-McKnight still must prove the other two elements in order to succeed.  She must therefore prove that she was denied her equal protection rights, and that Mr. Borrelli caused this deprivation.  If you find that she was denied equal protection, but that someone other than Mr. Borrelli caused this deprivation, then Ms. Heard-McKnight has not proved her case and you must find in favor of the defendant.

I will now instruct you on the burden that Ms. Heard-McKnight has in proving her case.  She must prove that Mr. Borrelli denied her equal protection of the laws.  The equal protection clause essentially requires that all persons similarly situated be treated alike by state and local governments and their officials. [2]  To prove her claims, Ms. Heard McKnight has the initial burden of proving:

1.     that she was a member of a protected class;

2.     that she was qualified for the middle school principal position at the time Mr. Borrelli was assessing her performance;

3.     that, despite her qualifications, Mr. Borrelli decided to recommend her non-renewal; and

2 See e.g. Annis v. County of Westchester, 136 F.3d 239, 245 (2d. Cir. 1998); Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d. Cir. 2000); Giordano v. City of New York et al., 274 F.3D 740750 (2d. Cir. 2002).

56

4.    that the recommendation for the non-renewal of her conduct occurred under circumstances giving rise to an inference of race discrimination.[3]

In this case, the parties do not dispute that Ms. Heard-McKnight is an African-American person and therefore she is a member of a protected class.  Thus, you need only determine:  (a) whether Ms. Heard-McKnight was qualified for her position at the time Mr. Borrelli was assessing her performance; and (b) whether the Mr. Borrelli decided to recommend the non-renewal of her contract under circumstances giving rise to an inference of race discrimination.

In order to prove that she was qualified for her position, Ms. Heard-McKnight must show by a preponderance of the evidence that she possessed the basic skills necessary to perform her job as a principal.[4]  If you find that Ms. Heard-McKnight did not possess these basic skills, you must find for the defendant and proceed no further.

If you find that Ms. Heard-McKnight was qualified for her job, you must then determine whether Mr. Borrelli's alleged treatment of her occurred under circumstances giving rise to an inference of discrimination.  To prove an inference of discrimination, Ms.

---

3 See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Graham v. Long Island Railroad, 230 F.3d 34, 40 (2d. Cir 2000) Zahorik v. Cornell Univ., 729 F.2d 85, 91 (2d Cir. 1984); Graham v. Renbrook School, 692 F.Supp. 102, 106 (D.Conn. 1988); Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, 1706 (1993); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2751 (1993); Saulpaugh v. Monroe Community Hospital, 4 F.3d  134, 142 (2nd Cir. 1993), cert. denied, 510 U.S. 1164 (1994); Schachner v. Beth Israel Medical Center, 14 F. Supp. 2d 468, 470 (S.D.N.Y. 1998).

Heard-McKnight has the burden of proving that she was treated differently than similarly situated employees, and that such treatment was based on her race.[5]

To find for Ms. McKnight on this issue, you must first find that the persons to whom Ms. Heard-McKnight claims she was "similarly situated" were "similarly situated in all material respects." For example, Ms. Heard-McKnight was a non-tenured principal. You must decide whether any other non-tenured principals were treated materially, differently than Ms. Heard-McKnight, and if so, whether that treatment was based on race. You are not to decide whether the criteria that Mr. Borrelli was using are criteria that you think are fair or appropriate. Rather, you must look to see whether the same criteria were used for the other non-tenured school principals. As Mr. Borrelli was evaluating school principals and not house principals or classroom teachers, non-tenured school principals are the only persons with whom Ms. Heard-McKnight is to be compared.

---

4 De La Cruz v. New York City Human Resources Administration, 82 F.3d 16 (2d Cir. 1996).
5 Annis, supra at 245; Diesel, supra at 103, Giordano, supra at 750; Padilla v. Harris et al., 285 F. Supp. 2d 263, 268 (D. Conn. 2003)(JBA); Lovel v. Comsewogue School District, 214 F. Supp. 2d 319, 322 (EDNY 2002).

Because discrimination is the essence of an equal protection violation, Ms. Heard-McKnight must prove that she was intentionally discriminated against, or treated differently, because of her race and not because of any other factors.[6] That is, Ms. Heard-McKnight has the ultimate burden of establishing that it was more likely true than not true that Mr. Borrelli decided that he was going to recommend the non-renewal of her contract because of her race. If you find that Mr. Borrelli did not take any action based on Ms. Heard-McKnight's race, then she has not proven her case.

If you decide that Ms. Heard-McKnight has offered evidence that creates an inference of discrimination, you must then decide whether Mr. Borrelli has given legitimate, non-discriminatory reasons for advising Ms. Heard-McKnight that he was going to recommend that non-renewal of her contract.[7] In order to determine whether Mr. Borrelli has provided a legitimate and non-discriminatory reason, you must consider the evidence you have heard from him and the other witnesses.

You are not to determine, and you need not agree, that Mr. Borrelli was correct in his assessment of Ms. Heard-McKnight's performance. The law does not prohibit an employer or supervisor from utilizing whatever mechanisms he thinks best to evaluate

---

6 "In analyzing whether conduct was unlawfully discriminatory for purposes of Section 1983, we borrow the burden shifting framework of Title VII claims." Annis v. County of Westchester, 136 F. 3d 239, 245 (2d Cir. 1998).

7 Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000); James v. NY Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

59

employees. In this regard, the equal protection clause entitles an employer to make its own business judgments, except that decisions cannot be based on race. It is not necessary that you believe that Mr. Borrelli made the best decision or that you would have made the same decision yourself. Nor is it your job to decide whether Waterbury has good or bad personnel policies. Your job is to decide whether Ms. Heard-McKnight was denied equal protection under the law because of her race.

If you find that Mr. Borrelli has provided legitimate and non-discriminatory reasons for deciding to recommend the non-renewal of Ms. Heard-McKnight's contract, you must find for Mr. Borrelli unless Ms. Heard-McKnight can prove that Mr. Borrelli's stated reasons are a pretext for discrimination.[8] In order to determine whether Mr. Borrelli's stated reasons are pretextual, you must determine whether you believe that his stated reasons were false and that his real motivation was her race.[9] Even if you disbelieve Mr. Borrelli, you ultimately may not find for Ms. Heard-McKnight unless you find Mr. Borrelli's decisions were based on Ms. Heard-McKnight's race. Thus, even if you find that the reasons offered by Mr. Borrelli for his actions were false, you must still find in favor of Mr. Borrelli, unless you also conclude that the real reason for the actions taken by him was

---

8 Id.
9 Id.

60

based on race.[10] This requires that you find that Ms. Heard-McKnight's explanation of her

claims of discrimination is true.[11]

It is important to note that the equal protection clause does not require an employer to

accord special treatment to employees based on their race.[12] It requires that race be a

neutral factor, neither helping nor hindering employment. The employer is entitled to make

its own subjective business decisions, and not retain anyone for a good reason, bad reason

---

10 Fisher v. Vassar College, 114 F.3d 1332, 1339-40 (2d Cir. 1997).

11 Winiarski v. Connecticut Dept. Pub. Health et al., Slip Op. Case No. cv 3:00:2321 (RNC), citing Reeves, 530 U.S. at 148; James, 233 F.3d at 154-157; St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993).

12 See, generally, Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982), cert. denied 459 U.S. 1103 (1983) (in determining merits of age discrimination claim, court does not sit to judge the propriety of a corporation's business decisions); Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("it is not the function of the fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal"); Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 560 (7th Cir. 1987), cert. denied 108 S.Ct. 488 (1987) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere."); Weihaupt v. AMA, 874 F.2d 419, 430 (7th Cir. 1989) (the court does not sit as a super-personnel department that re-examines a corporation's business decision); Smith v. F.W. Morse & Co., 1996 U.S.App. LEXIS 2022 at **28-29 (1st Cir. 1996) ("To sum up, an employee (pregnant or not) runs a risk of suffering the ordinary slings and arrows that suffuse the workplace every day she goes to work and everyday she stays away. . . . That the discharge took place while appellant was on maternity leave possessed considerable evidentiary significance -- but that circumstance neither transformed the character of the employer's action nor rendered it per se unlawful under Title VII); Stacey v. Allied Stores Corp., 768 F.2d 402, 408, 38 FEP Cases 773, 778 (D.C. Cir. 1985) ("Not only do we not sit, as the Second Circuit put is so well, 'to judge the wisdom of a corporation's business decisions, 'Parcinski [v. The Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982), cert. denied, 459 U.S. 1103], but we can discern no requirement whatever in the ADEA that an employer seek to place in another position an employee whose age brings her or her under the ADEA's protective shield when that employee is being terminated for non-discriminatory reasons"); Steelworkers v. Weber, 443 U.S. 193, 207 (1979) (Title VII was not intended to "diminish traditional management prerogatives."); Furnco Construction Corp. v. Waters, 438 U.S. 567, 577-78 (1978) (Title VII does not require the employer to restructure its employment practices to maximize the number of minorities and women hired or retained); Douglas v. Anderson, 656 F.2d 528 (9th Cir. 1981) (federal statutes prohibiting discrimination are not "intended as the vehicle for general review of business decisions.").

or no reason at all, as long as the action is not taken because of that employee's race.[13] An employer is not obligated to show good cause or justifiable cause to make a decision about retaining an employee. Once again, I remind you that Mr. Borrelli's business decisions need not be good or even wise; they simply have to be non-discriminatory.

Employers and their executives, such as superintendents, are entitled to make their own subjective business judgments and to conduct the operations of their business as they see fit. A superintendent is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Indeed, a superintendent is allowed to make mistakes and you are not here to second-guess Mr. Borrelli's decisions.[14]

The ultimate issue for your decision is whether Ms. Heard-McKnight was treated differently by the defendant than similarly situated non-tenured principals because of her race. If you find that Ms. Heard-McKnight was not treated differently than other non-

---

13 See, Francis v. Runyon, 928 F. Supp. 195, 203 (E.D.N.Y. 1996), Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir 1988).

14 Scaria v. Rubin, 117 F.3d 652, 654-55 (2d. Cir. 1997)("As between experience and education, the [defendant] elected to value the first over the second in filling the job, and there is nothing to show that this value judgment was pretextual."); Dister v. The Continental Group, 859 F.2d 1108, 1116 (2d Cir. 1988)("It is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal."); De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 9 (1st Cir. 2000)(Title VII was not designed to transform courts into a "super-personnel department, assessing the merits—or even the rationality of employers' nondiscriminatory business decisions...To obtain relief under Title VII, the evidence must permit a fact-finder reasonably to infer that unlawful discrimination was a determinative factor in the employer's decision"); Fitzpatrick v. The New York Cornell Hospital, 2002 US Dist LEXIS 25166, *17 (SDNY 2002)(District Courts "do not have a roving commission to review business judgments and they must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process.")

tenured principals, you must find for Mr. Borrelli. Also, if you find that Ms. Heard-McKnight

was treated differently than other non-tenured principals because of a factor other than

her race, you must find for Mr. Borrelli. You may only find for Ms. Heard-McKnight if she

proves by a preponderance of the evidence that Mr. Borrelli intentionally treated her

differently than similarly situated principals because of her race.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 7

## **CONNECTICUT TENURE LAW FOR PRINCIPALS**

This is a case involving a school administrator. Under Connecticut law, principals receive tenure in a school district after they have worked in the district for 40 months. Tenured principals have certain job protections that non-tenured principals do not have. For example, tenured principals can only be terminated from their employment for cause. In contrast, non-tenured principals do not have these same job protections. Superintendents and boards of education may choose not to continue to employ a principal because the principal is not meeting the standards of the school district. This process is called a "non-renewal" because the superintendent or the board of education is in effect choosing not to renew the contract of the principal rather than actually terminating the principal.

Under Connecticut law, the decision to non-renew a non-tenured principal must be made by April 1 of the school year. The principal can then finish the remainder of the school year, but will not be employed for the following school year. If a decision is not made by April 1 to non-renew a principal, then the principal's contract is automatically renewed for the following year.

64

Ms. Heard-McKnight was a non-tenured principal in Waterbury. This status is important because the standard for the dismissal of a principal who is non-tenured is different than that for a principal who is tenured. For a non-tenured principal, a non-renewal decision does not require a finding of incompetence or just cause. A decision not to renew the contract of a non-tenured principal can be based on the superintendent and Board of Education's judgment that the principal's performance is simply not up to the school district's standards. It is the right of a school district to establish excellent performance or the potential for excellent performance as the standard for the non-renewal of principals and principals who do not meet that standard may be notified that their employment will not be extended beyond the current school year. The discretion of the superintendent and Board of Education for non-renewing a principal is very broad. But, it cannot be based on an improper reason such as race.

The law does not require that the superintendent of schools, in assessing whether to continue the employment of a non-tenured principal, prove that the principal is incompetent. The superintendent merely must feel that the non-tenured principal does not come up to the standard that the school district has established for evaluating its non-tenured principals. Therefore, you are not to determine whether Ms. Heard-McKnight was incompetent or not, or even whether Mr. Borrelli believed her to be incompetent. Rather, you are to review the decision to determine whether Ms. Heard-McKnight's race was a

65

factor that made a difference and that she was treated differently than other similarly

situated non-tenured administrators because of her race.  Conn. Gen Stat. § 10-151;  Also

see, A Practical Guide to Connecticut School Law, T. Mooney; Shanbrom v. Orange

Board of Education, 2 Conn. L. Rptr. 396, 398 (1980).

DEFENDANT'S PROPOSED
INSTRUCTION NO. 8

## **DEFENDANT'S STATE OF MIND**

Ms. Heard-McKnight's equal protection claim requires her to prove that the defendant intentionally discriminated against her based on her race. [15] Thus, if you find that Mr. Borrelli actually denied Ms. Heard-McKnight the equal protection of the laws based on her race, but you find that she has failed to prove by a preponderance of the evidence that he did so intentionally, you must find for the defendant. The defendant cannot be held liable under the equal protection clause for negligent or mistaken acts. The defendant may only be held liable if he denied Ms. Heard-McKnight equal protection under the laws with an intent to do so.

An act is intentional if it is done knowingly, that is if it is done voluntarily or deliberately, not because of mistake, accident, negligence or other innocent reason. In determining whether a person acts with a requisite knowledge, you should remember that while witnesses may see and hear and be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend on what was done and what the people involved said was in their minds and your belief or

---

15 <u>See</u>, <u>McCleskey v. Kemp</u>, 481 U.S. 289 (1987); <u>Village of Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252 (1977); <u>Washington v. Davis</u>, 426 U.S. 229 (1976).

67

disbelief with respect to those facts.  However, the defendant may be found to have acted intentionally if you find that he acted in reckless disregard of Ms. Heard-McKnight's rights to equal protection under the laws.  An act is done recklessly if it is done in conscious disregard of its known probable consequences.  For example, handing a loaded gun to a small child, telling the child to play with it and walking away is a reckless act.  While the person may not intend that the child hurt herself or others, the acts are done in conscious disregard of the known probable consequence that the child will fire the gun and cause death or injury to herself or others.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 9

## **PROXIMATE CAUSE**

Ms. Heard-McKnight must prove that the Defendant's acts were a proximate cause of any injuries she sustained. Proximate cause means that there must be a sufficient causal connection between the act or omission of a defendant and any injury or damage sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of the defendant's act or omission. If an injury was a direct result or a reasonably probable consequence of a defendant's act or omission, it was proximately caused by such act or omission.

In order to recover damages for any injury, Ms. Heard-McKnight must prove by a preponderance of the evidence that that injury would not have occurred without the unlawful conduct of Mr. Borrelli. If you find that Ms. Heard-McKnight complains about an injury that would have occurred even in the absence of the conduct of Mr. Borrelli, you must find that Mr. Borrelli did not cause Ms. Heard-McKnight's injury.

Mr. Borrelli is not liable if Ms. Heard-McKnight's injury was caused by a new or independent source. Thus, even if you find that Mr. Borrelli acted wrongfully but that Ms. Heard-McKnight would have suffered injuries anyway or that Ms. Heard-McKnight's

69

injuries were caused by someone or something else, you must find in favor of the defendant.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 10

## **QUALIFIED IMMUNITY DEFENSE**

Government officials such as Mr. Borrelli are shielded from liability for civil damages in certain circumstances under a legal doctrine known as qualified immunity. The decision on whether Mr. Borrelli is entitled to qualified immunity is a question for the Court to decide. However, certain factual questions that are relevant to the qualified immunity analysis must be decided by the jury. For example, you will need to decide facts that will allow me to decide whether Mr. Borrelli acted under a reasonable belief that he was not violating the rights of Ms. Heard-McKnight. For this reason, I have included questions in the jury interrogatories for you to answer that will assist me in making this decision.

71

DEFENDANT'S PROPOSED
INSTRUCTION NO. 11

## PLAINTIFF'S OPINION AS TO HER OWN QUALIFICATIONS

During this trial, Ms. Heard-McKnight has testified that she was denied equal
protection under the law on account of her race because she believed that her performance
was satisfactory and that she was evaluated using a different process than other similarly
situated individuals. Ms. Heard-McKnight's opinion as to her performance carries relatively
little weight, and is only entitled to any weight if corroborated by other evidence derived from
the decision-makers.[16] The most probative evidence of qualification comes from the
decision-makers -- the evaluators of Ms. Heard-McKnight's performance.[17] In this regard,

---

16 See, e.g., Charrette v. S.M. Flickinger Co., Inc., 806 F.Supp. 1045, 1058 (N.D.N.Y. 1992) (discharged
employee's conclusory, self-serving statements that his performance was excellent is insufficient to establish
that the employee performed his job satisfactorily for purpose of age discrimination claim); EEOC v. LA. Dept. of
Social Services, 63 FEP 161, 164 (E.D.La. 1993) (courts cannot allow an employee's subjective belief of
discrimination, however genuine, to be a basis of judicial relief); Schuler v. Polaroid Corp., 848 F.2d 276, 280
(1st Cir. 1988) (employee's evidence that his ratings were good were insufficient to establish pretext where the
termination decision rested on the value to the company of the plaintiff's results, not his dedication or
competence); Weeks v. Aetna Life Insurance Co., Civil Action No. 3:93CV502 (AVC) (D. Conn. Apr. 25, 1994),
slip op. at 12 (plaintiff's conclusory allegations regarding  her performance are insufficient to establish intentional
age discrimination); Mills v. First Federal Savings & Loan Association of Belvedere, 83 F.3d 833 (7th Cir. 1996)
(employee's self serving statements about her ability are insufficient to contradict an employer's negative
assessment of that ability); Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir.  1991); Cf. Smith v. Flax, 618
F. 2d 1062, 1067 (4th Cir. 1980) (employee's perception of herself not relevant at all).

17 See, e.g., Meiri v Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829 (1985) ("[i]n determining
whether an employee's job performance is satisfactory, courts may -- as they often must -- rely on the
evaluations rendered by supervisors.").

any evidence of Ms. Heard-McKnight's past accomplishments or involvements is insufficient

to establish a violation of the anti-discrimination laws.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 12

## COMMENTS BY BOARD OFFICIALS

Ms. Heard-McKnight has testified or attempted to testify that certain officials told her

that some unidentified person(s) instituted a plan to terminate the "outsiders" who were hired

as principals for the 1999-2000 school year; that "outsiders" would only be in position one

year; or that the Board of Education members favored promoting employees to

administrative positions over outsiders.

To the extent that such comments were admitted into evidence, such comments are

insufficient to demonstrate that Mr. Borrelli had a discriminatory intent, unless you find that

they were unambiguously related to Ms. Heard-McKnight's race specifically, that Mr. Borrelli

was aware of the comments and in fact acted on them.[18] Further, to rely on these

---

18 See, e.g., Ayala-Gerena v. Bristol Myers-Squibb, 71 FEP Cases 1398 (1st Cir. 1996) (discharged Puerto Rican employees have not shown that alleged remarks that employer's Puerto Rican subsidiary had "black mafia" [which was] getting rich at the expense of the company," and that one of them, was Puerto Rican, might never get another opportunity to work for North American company, are stray remarks unrelated to decisional process itself, since they lack necessary link between alleged speakers' discriminatory remark and adverse employment action); Getschmann v. James River Paper Co., 65 FEP Cases 1047, 1049 (D.Conn. 1993) (supervisor's comments to plaintiff that "it sometimes is difficult to teach an old dog new tricks," and that plaintiff was "set in his ways,"  coupled with supervisor's description of a particular division of the company as having a "mature work force" and a general manager's comment that "younger more aggressive employees [were] needed," were legally inadequate to prove age discrimination. The court stated that (1) the supervisor was not even referring to the plaintiff in one of the comments, (2) another comment was made by a general manager who was not alleged to have been involved in plaintiff's termination, and that (3) "[s]ince defendant's evidence of a legitimate reason [was] so overwhelming, [the other two] remarks [were] 'too slender a reed to carry the weight

74

comments and attribute them to Mr. Borrelli, you must also find that they are comments

about race.  If you find that the reference to "outsiders" is not a race based statement, then

you may not rely on it to find any discriminatory intent.

In addition, you may not rely on these comments if you find them to be remote,

vague, or made by individuals who had no authority over Ms. Heard-McKnight's

employment.  Stray remarks such as these do not constitute probative evidence of

discrimination.[19]

---

of the charge in this case against the evidence which refutes it.' "); Fox v. Bank of Boston-Connecticut, supra, slip op. at 10 (supervisor's alleged statement regarding a "commitment to a younger work force" does not suffice to prove age discrimination); Weeks v. Aetna Life Insurance Co., supra, slip op. at 4-5 (supervisor's statement that she "could no longer pay the plaintiff's salary and benefits any longer" is insufficient to defeat summary judgment); Graham v. Renbrook School, 692 F. Supp. 102, 108-09 (D. Conn. 1988) (supervisor's remarks that employee might not "fit in" with younger faculty is inadequate to show pretext for age discrimination); Gagne v. Northwestern National Insurance Co., 881 F.2d 309 (6th Cir. 1989) (supervisor's statement that she "needed younger blood" insufficient to overcome summary judgment); Armendariz v. The Pinkerton Tobacco Co., 58 F.3d 144 (5th Cir. 1995) (comments about how employee was "getting old" and "losing her memory" were stray remarks which were too remote and vague to be probative of age discrimination); Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (supervisor's statements that employee lacked wherewithal to adequately perform his job, moved in slow motion, and was neither aggressive nor pro-active were not direct evidence of age discrimination); Sullivan v. Boys Club of America, Inc., 627 F.Supp. 189, 195 (E.D.Ill. 1985) (supervisor's criticism of discharged 62 year old employee's "old Field Service style" is not direct evidence of age discrimination, where reference was to employee's management style and performance, not his age); Cf. Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984).
19 McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997)(biased statement of a supervisor who was not consulted about a termination decision provides no basis for imputing to the decision maker an invidious motivation for the termination.); Santos v. Costco Wholesale, Inc., 271 F. Supp. 2d 565, 573-4 (SDNY 2003)("[v]erbal comments may constitute evidence of discrimination only when (1) such comments are related to race...; (2) proximate in time to the adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue."); Ranieri v. Highland Falls-Fort Montgomery School District, 198 F. Supp. 2d 542 (DNY 2002)("Stray workplace remarks that have no demonstrated nexus to the personnel action complained of are insufficient to defeat a motion for summary judgment".)