DEFENDANT'S PROPOSED
INSTRUCTION NO. 13

## **DAMAGES**

Ladies and Gentlemen, it is now my responsibility to instruct you on damages. You should draw no conclusions with respect to the fact that I am now instructing you on damages. This does not mean that I believe you should find for or against Ms. Heard-McKnight on the issue of liability. My instruction on damages is only meant to apply if you decide that the defendant is liable under Ms. Heard-McKnight's claim, based upon the law as I instructed you earlier.

In general, there are two kinds of damages that may be awarded in a case of this type: compensatory damages and punitive damages. Compensatory damages are intended to make the plaintiff whole, that is, to fairly compensate her for any injury she sustained as a direct result of the Defendant's unlawful actions.

Ms. Heard-McKnight is entitled to compensatory damages only for injuries caused by unlawful acts of the defendant. Damages may not be based on speculation or sympathy. They must be based on the evidence presented at trial. The object of an award of compensatory damages is to place the injured party in as close to the situation she would have occupied if the wrong had never been committed. In this case, there are generally two

76

areas of a potential award of compensatory damages—backpay and emotional distress. You may not award any amount to cover Ms. Heard-McKnight's attorney's fees. That issue, if necessary, will be decided by me at a later time.

I.    Back Pay

I will now instruct you on the issue of backpay damages.

In the event that you are convinced that Ms. Heard-McKnight has established that Mr. Borrelli is liable for a violation of the equal protection clause of the Fourteenth Amendment to the Constitution, you should award her a sum which will compensate her for the money she would have expected to have earned if she had remained employed as a principal in Waterbury. In these cases, damages are meant to put the plaintiff in the economic position she would have occupied if the discrimination had not occurred.[20]

Thus, the first issue you must decide is whether Ms. Heard-McKnight has proven by a preponderance of the evidence that, in the absence of any racial discrimination by the Defendant, she would have remained a principal in Waterbury. That is, you must first determine whether Ms. Heard-McKnight has proven by a preponderance of the evidence that she would have met all of the requirements to remain a principal.

---

20 See, e.g., McKennon v. Nashville Banner Publishing Co., 115 S.Ct. 879, 886 (1995); Bridgeport Hospital v. CHRO, 232 Conn. 91, 111 (1995) (citation omitted).

77

If you find that her employment would have ended even if Mr. Borrelli had taken no allegedly unlawful action against her, then you cannot award any back pay to her. Additionally, if you find that she failed to take advantage of the procedures to challenge Mr. Borrelli's evaluation and therefore failed to determine whether Mr. Borrelli's evaluation would have caused her nonrenewal, then you cannot award any back pay to her.

Also, if you find that following her resignation, no prospective employers asked about Mr. Borrelli's evaluation of her performance, Mr. Borrelli cannot be liable for her failure to obtain employment after June 2000, and therefore he cannot be liable for back pay.

If you determine that Ms. Heard-McKnight has proven that the defendant intentionally violated the equal protection clause and that she would have met all of the requirements to remain a principal, you may award Ms. Heard-McKnight back pay based upon your findings grounded on the evidence presented at trial as to what amounts Ms. Heard-McKnight would have been earning, both as to wages and fringe benefits, if she had remained as a principal up until the time of trial.

Certain deductions must be made from this back pay amount, however.

First, you should deduct any income or wages Ms. Heard-McKnight has earned from employment from June 2000 to the present. That is, you should subtract amounts earned from employment with other employers, self employment or unemployment compensation payments from the effective date of her resignation until the present.

78

You should also subtract any Social Security payments received and any workers compensation she received.

You must also deduct from any back pay award any amounts which <u>could</u> have been earned by Ms. Heard-McKnight through the exercise of reasonable diligence.

It is Ms. Heard-McKnight's duty to use reasonable diligence to obtain other employment or to seek other sources of income to minimize any damages she might suffer.[21] This includes the obligation to seek and accept other suitable positions which may have been available and which, using reasonable efforts, she could have discovered.[22] In this regard, the Defendant has the burden of proving by a preponderance of the evidence that Ms. Heard-McKnight failed to minimize her damages.

Ms. Heard-McKnight must actively seek other employment by filling out job applications, checking want ads, registering with employment agencies and discussing employment possibilities with friends and acquaintances.[23] Ms. Heard-McKnight must also accept any equivalent or higher paying job that she is offered in order to receive backpay damages from the time she is offered such a position. If you find that Ms. Heard-McKnight did not exercise reasonable diligence or turned down a substantially equivalent or higher

---

21 <u>See</u>, <u>e.g.</u>, <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231-32 (1982); <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Lussier v. Runyon</u>, 516 U.S. 815 (1995); <u>Suggs v. Servicemaster Education Food Mgt.</u>, 72 F.3d 1228, 1233 (6th Cir. 1996); <u>Whittlesey v. Union Carbide Corp.</u>, 742 F.2d 724, 728 (2d Cir. 1984).
   22 <u>Id</u>.

paying position, then you may decline to award her any damages at all or you may deduct

the amount Ms. Heard-McKnight could have earned if she had exercised reasonable

diligence to obtain or accept other employment.

Also, you must take into account the fact that Ms. Heard-McKnight may have been

unable to work due to physical ailments and injuries unrelated to Mr. Borrelli's actions. For

any period of time that she was unable to work full time, you must reduce her damage claim

as she was unavailable to work and therefore not entitled to receive back pay during that

period.

## II.     Emotional Distress Damages

In addition to back pay, if you find that the Defendant intentionally denied Ms. Heard-

McKnight the equal protection of the laws, the law allows Ms. Heard-McKnight to recover for

any mental suffering that she experienced as a result of the Defendant's actions.

In order for emotional distress damages to be awarded, Ms. Heard-McKnight must

prove that she experienced mental suffering or emotional distress that was proximately

caused by the allegedly unlawful conduct of the Defendant.[24]  It is difficult to prove the

existence or extent of mental suffering with certainty, and there is always the possibility that

---

23 Id.

24 See, e.g., Johnson v. Flammia, 169 Conn. 491, 499 (1975); Boland v. Vanderbilt, 140 Conn. 520, 525 (1953); Bates v. Carroll, 99 Conn. 677, 679 (1932); Preston v. Keith, 217 Conn. 12, 20-21 (1991); Richardson v. Pratt & Whitney Mfg. Co., 129 Conn. 669, 672 (1943).

80

there is no real basis for the claim or that the suffering is exaggerated.[25]  For that reason,

you must scrutinize with care the evidence offered in support of any claim for mental

suffering and approach the matter with caution.  You must apply sound, common sense in

reaching any damages award you make for this reason.  In awarding damages, you must

also disregard any suffering which may have been experienced by Ms. Heard-McKnight from

causes other than the Defendant's actions and award her only those damages which you

are satisfied resulted from the alleged denial of the equal protection of the laws.  Ms. Heard-

McKnight can only recover for the actions of Mr. Borrelli.  If her mental suffering was caused

by others, whether it be parents, teachers, other school administrators or Board of Education

members, she cannot recover for such damages from Mr. Borrelli as he is only liable for his

own acts.  In assessing this claim, you are permitted to draw inferences as to whether Ms.

Heard-McKnight suffered emotional distress as a result of Mr. Borrelli's actions from the

absence of any medical testimony and the absence of physical symptoms.[26]

In scrutinizing the evidence with respect to Ms. Heard-McKnight's mental suffering,

you must also bear in mind that such damages for mental suffering cannot be awarded

---

25 See, e.g., Delott v. Roraback, 179 Conn. 406, 409 (1980); D. Wright & W. Ankerman, Connecticut Jury Instructions §§ 222, 240 (4th Ed. 1993).

26 See, Annis v. County of Westchester, 136 F.3d 239, 249 (2d Cir. 1998).

simply because someone's feelings are hurt.[27]  This is because a state of complete serenity is a rare achievement in life, and a certain amount of emotional distress is simply a part of the price we pay for living in this world.[28]

You may not speculate or guess as to the nature or extent of Ms. Heard-McKnight's injuries.  You may only award damages for those injuries that Ms. Heard-McKnight has proven, by a fair preponderance of the evidence and with a reasonable probability, resulted from the actions of Mr. Borrelli.  In this regard, you may consider whether Ms. Heard-McKnight's alleged mental distress was the product of other sources of stress in her life. You must remember that the burden of proving damages with reasonable certainty lies with Ms. Heard-McKnight. The theory of emotional distress damages is to provide fair and just compensation, no more and no less, to Ms. Heard-McKnight.

III.    Nominal Damages

After considering all of the evidence introduced in this case, you may find that Mr. Borrelli denied Ms. Heard-McKnight the equal protection of the laws, based on her race, but that Ms. Heard-McKnight did not suffer any compensable injury.  If you make such a finding, you are entitled to find in favor of Ms. Heard-McKnight and award her nominal damages. Nominal damages are awarded in recognition of the fact that a person's rights have been

_____

27 See, e.g., Chipokas v. Heritage Savings & Loan Assoc., Inc., 13 Conn. L. Trib. 36 (Milford Sup. Ct., July 21, 1987, Kulawiz, J.) (citing Seirs v. Coshen, 31 Conn. Supp. 305, 308-309 (1973)).

violated. Again, you may award nominal damages if you conclude that Mr. Borrelli discriminated against Ms. Heard-McKnight or denied her the equal protection of the laws based on her race, but that she did not suffer any compensable injury. Typically, nominal damages are awarded in the amount of $1.

You may not award both nominal damages and compensatory damages. Thus, if you find that Ms. Heard-McKnight is entitled to compensatory damages, you may not award her nominal damages.

IV.    Punitive Damages

In a case like this, the purpose of punitive damages is to punish individuals for extraordinary misconduct.[29] In other words, punitive damages are available to punish truly evil and outrageous conduct by a municipal official. Thus, if you find that Mr. Borrelli denied Ms. Heard-McKnight the equal protection of the laws, based solely on her race, an award of punitive damages would only be appropriate if Ms. Heard-McKnight proved by a

---

28 Restatement (Second) of Torts § 46, Comment d (1977).
29 Waterbury Petroleum Prod. v. Canaan Oil & Fuel, 193 Conn. 208, 237-238 (1984).

preponderance of the evidence that Mr. Borrelli acted with actual malice or with reckless

indifference to Ms. Heard-McKnight's constitutional rights.[30]

An act is performed maliciously if it is prompted by ill-will or such gross indifference to

the rights of others as to amount to an actual intent to harm. An act is reckless if it is

performed with a serious or callous disregard for its consequences.[31] You may not award

punitive damages if you find that Mr. Borrelli was merely mistaken or negligent in his

conduct. Thus, you must determine whether Ms. Heard-McKnight has proven that Mr.

Borrelli acted with an evil motive or intent or recklessly disregarded Ms. Heard-McKnight's

rights. A punitive damage award is to reflect the degree of reprehensibility of the

defendant's conduct. Punitive damages are to be awarded only if the Defendant culpability,

after having paid compensatory damages, is so reprehensible as to warrant the imposition of

further sanctions to achieve punishment or deference.[32]

Whether to make an award of punitive damages in addition to actual damages is a

matter exclusively within your province. However, I remind you that punitive damages

should never be awarded because of any sympathy, bias or prejudice with respect to any

---

30 Smith v. Wade, 461 U.S. 30, 56 (1983) (punitive damages may only be awarded against a municipal official when the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); Caruso v. Forslund, 842 F. Supp. 1497, 1499 (D. Conn. 1994); Edgecomb v. Housing Authority of the Town of Vernon, 824 F. Supp. 312, 317 (D. Conn. 1993) (where there was no evidence of bad faith by defendants, there was no basis for assessing punitive damages).

31 See, e.g., Bishop v. Kelly, 206 Conn. 608, 614 (1988); Restatement (Second) of Torts § 500 (1977).

32 BMW of North America, Inc. v. Gore, 517 U.S. 559, 575-77 (1996); State Farm Mutual Automobile Ins. V.

84

party in this case.  Again, your decision as to whether punitive damages may be awarded must be based solely on the evidence presented here in court.  If Ms. Heard-McKnight has failed to prove by a preponderance of the evidence that Mr. Borrelli acted maliciously or in callous disregard of her constitutional rights, then you must not award punitive damages.

If you award Ms. Heard-McKnight compensatory damages or nominal damages as a result of the actions of Mr. Borrelli, you have the option of making a separate and additional award of punitive damages against him.  If you award punitive damages, you should consider the net worth of the person who will pay these damages and the impact on that person.  Punitive damages must bear a reasonable relationship to the plaintiff's actual injury.  You are under no obligation to award punitive damages. If you award Ms. Heard-McKnight nominal damages or compensatory damages, you can decide that punitive damages are not warranted.

Campbell, 538 U.S. 408 (2003).

DEFENDANT'S PROPOSED
INSTRUCTION NO. 14

## **AVOIDING SYMPATHY, PREJUDICE AND SPECULATION**

Ladies and Gentlemen, I must remind you that the mere filing of a lawsuit containing allegations or claims against another person is proof of nothing. And you must not draw any inference from that fact. To decide whether a case has been proven in accordance with all of the requirements of law on which I have instructed you, you must look to the evidence, for it is from the evidence that you must determine whether the plaintiff has proven her case. Your verdict must be based absolutely and solely upon the evidence given to you here in the trial of this case. You should not be swayed or influenced by any sympathy or prejudice for or against any of the parties. You should not be influenced by any claims or comments of counsel which are not warranted by the evidence, but you should decide the case upon the evidence presented before you at this trial with due regard to the law as stated by the Court, as applied to the facts which you find to be established by the evidence. You should draw no inferences from material or testimony which was excluded from evidence or from the mere asking of a question to which an objection is sustained or which has not been answered.

86

As I have instructed you, your decision must be based upon the evidence alone and you must not surmise, speculate or guess as to the material facts in this case.

────────────────────────

D. Wright & W. Ankerman, supra §312.

DEFENDANT'S PROPOSED
INSTRUCTION NO. 15

## **SPECIAL VERDICT FORMS**

A form of special verdict has been prepared for your convenience. You will take this form to the jury room.

(Form of special verdict is read.)

You will note that each of the interrogatories or questions calls for a "Yes" or "No" answer, or a specific amount of damages. The answer to each question must be your unanimous answer. Your foreperson will write your unanimous answer in the space provided opposite each question. As you will note from the wording of the questions, it will not be necessary to consider or answer certain questions if the answer to certain other questions is "No."

After the interrogatories or questions are answered, the foreperson will then date and sign the special verdict as so completed, and you will then return with it to the courtroom.

88

## (13)(A)    PLAINTIFF'S OBJECTIONS TO DEFENDANTS' REQUESTS TO CHARGE

### Defendants' Proposed Instruction No. 6:

1. The defendants' proposed charge concerning "similarly situated" persons misstates the law. Requiring the plaintiff to be compared only with nontenured middle school principals is far too narrow a comparison. "In Shumway [v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir. 1997)], we explained that such an employee 'must be similarly situated in all *material* respects' – not in *all* respects. 118 F.3d at 64 (emphasis added). A plaintiff is not obligated to show disparate treatment of an *identically* situated employee. To the contrary, Shumway holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom the plaintiff points be similarly situated in all material respects....In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001).

Defendants' Proposed Instruction No. 7:

The Connecticut tenure statute has nothing to do with this case. As discussed above, it also is irrelevant to the question of whether other persons were similarly situated to the plaintiff.

Defendants' Proposed Instruction No. 8:

This instruction tends to create the misleading impression that the defendant must be proven to have intended to violate the law. He need be shown only to have intended the actions which in fact did violate the law. Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).

Defendants' Proposed Instruction No. 10:

The court must never instruct the jury on qualified immunity. It is not proper in this Circuit to allow a jury to decide this question. Rather, if at the close of the evidence the court believes that there is a possible construction of the evidence which would permit a

90

finding of unreasonable force but nevertheless that qualified immunity would apply, the court must submit "interrogatories on the key factual disputes" to the jury and then decide qualified immunity itself on the basis of the answers to those interrogatories. Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 764, 765 (2nd Cir. 2003); Stephenson v. Doe, 332 F.3d 68, 78-81 (2nd Cir. 2003); Warren v. Dwyer, 906 F.2d 70 (2nd Cir. 1990). Accordingly, it is not appropriate for the court, in submitting such interrogatories, to explain its reason for doing so. Offering such an explanation is simply a way of evading the clear directions of the Second Circuit on this issue.

Defendants' Proposed Instructions No. 11 and No. 12:

These proposed instructions constitute a commentary upon the evidence and as such are improper.

## (14)   ANTICIPATED EVIDENTIARY PROBLEMS

The parties will be filing motions in limine regarding any anticipated evidentiary problems. Defendant's first three motions in limine are attached as Exhibits 1, 2 and 3.

## (15)   PROPOSED FINDINGS AND CONCLUSIONS

Not applicable.

**(16)    TRIAL TIME**

Approximately nine days.

**(17)    FURTHER PROCEEDINGS**

Counsel anticipate raising evidentiary issues by way of motions in limine.

**(18)    ELECTION FOR TRIAL BY MAGISTRATE**

No objection.

**(19)    CERTIFICATION OF CONSULTATION**

By signing below, the parties certify that this Superseding Joint Trial Memorandum is the product of consultation between the parties.  The trial attorneys for the parties participated in a telephone conference on November 29, 2004 to discuss and attempt to resolve any issues related to this Memorandum, including witnesses, exhibits, and jury instructions.  The attorneys were able to resolve several issues and have identified those issues that were unable to be resolved.

92

THE PLAINTIFF, SHARON HEARD-McKNIGHT

BY:

JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
TELEPHONE: 203.562.9931
FAX: 203.776.9494
E-MAIL: jrw@johnrwilliams.com
Her Attorney

THE PLAINTIFF, SHARON HEARD-McKNIGHT

BY:_____

      JOHN R. WILLIAMS (ct00215)
      Williams and Pattis, LLC
      51 Elm Street
      New Haven, CT 06510
      TELEPHONE:  203.562.9931
      FAX:  203.776.9494
      E-MAIL:  jrw@johnrwilliams.com
      Her Attorney


DEFENDANT/MATTHEW BORRELLI

By_____

      Gary S. Starr (ct06038)
      Gabriel J. Jiran (ct23469)
      For Shipman & Goodwin LLP
      One Constitution Plaza
      Hartford, CT  06103-1919
      Telephone (860) 251-5000
      Facsimile (860) 251-5214
      gstarr@goodwin.com
      gjiran@goodwin.com
      His Attorneys

387234 v.01

12