United States District Court
District of Connecticut
FILED AT HARTFORD
12/3/04
Kevin F. Rowe, Clerk
By: [signature]
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANCES TILGHMAN and<br>SHARON HEARD-MCKNIGHT, | CIVIL ACTION NO.<br>301CV 01657 (RNC) |
| Plaintiffs, | |
| vs.<br>WATERBURY BOARD OF<br>EDUCATION, MATTHEW BORRELLI<br>and PHILIP GIORDANO, | |
| Defendants. | MAY 10, 2004 |

**DEFENDANT MATTHEW BORRELLI'S MEMORANDUM OF LAW IN SUPPORT OF FIRST MOTION IN LIMINE**

**I.   INTRODUCTION**

The Defendant Matthew Borrelli ("Borrelli") requests this court to preclude the Plaintiff Sharon Heard-McKnight ("Heard-McKnight") from admitting at trial the Connecticut Commission on Human Rights and Opportunities' ("CHRO") *Report on Employment Practices in the Waterbury School District* dated September 2000. (the "Report").[1] The CHRO refers to the Report as its investigation into alleged discriminatory hiring practices by the Waterbury Board of Education (the "Board") that

---

[1] A copy of the Report is attached as Exhibit A.

occurred prior to August 1999. The Report, however, is nothing more than a summary of hearsay statements and severely prejudicial remarks

The Report is not relevant because Heard-McKnight does not claim that she was discriminatorily denied a job. The Board hired McKnight in late August 1999, after the hiring practices discussed in the Report were addressed. Moreover, Borrelli is the person who reviewed Heard-McKnight's performance and advised her that he was going to recommend the non-renewal of her Administrator's Contract (the "Contract"). Borrelli did not start working for the Board until <u>after</u> the events discussed in the CHRO's Report and he had nothing to do with Heard-McKnight's hiring. Any evidence regarding the Board's past hiring practices, which did not involve Borrelli, has no probative value in this case.

In addition, the Report itself is hearsay and does not fall within the public document exception of Fed. R. Evid. 803(8). The Report contains a litany of hearsay statements that were provided to the CHRO during a public forum that was held on April 4, 2004. Much of what the CHRO relied upon came from persons who either had a direct interest in the Board's Report, or have no first-hand knowledge of the Board's hiring practices. <u>See</u> Exhibit A. Thus, the very foundation of the Report is not reliable. Based

2

on this unreliable information, the CHRO concluded that the Board's prior hiring practices resulted in racial inequities. Because the Report lacks the indicia of reliability required to satisfy Rule 803(8), it should be excluded as hearsay.

There is no question the prejudicial effect of the Report substantially outweighs its non-existent probative value. The CHRO not only asserts that the Board engaged in discrimination, it accuses the Board and its attorneys of being dishonest. The CHRO went so far as to condemn the Board for treating Heard-McKnight and Tilghman in a "disturbing" manner. No limiting instruction can mitigate the CHRO's inflammatory statements about the Board and its attorneys.

Finally, if the Court admits the report, Borrelli will have to admit substantial evidence that will refute the CHRO's findings. Since the Report has no probative value, however, this will unduly prolong the trial and confuse the jury.

## II. FACTS AND PROCEDURAL HISTORY

Heard-McKnight was hired in August 1999 to be the principal of the Wallace Middle School.[2] As a new principal without tenure, the Board had the statutory right

---

[2] Tilghman, Heard-McKnight's former co-plaintiff, was hired on August 24, 1999.

3

under General Statutes. § 10-151 to terminate her employment by giving her notice on or before April 1st that her Contract would not be renewed.

Borrelli began working for the Board as its Interim Superintendent in February 2000. On or about February 9, 2000 he met with all the school principals and told them that he expected them demonstrate superior or excellent performance, or have the potential for superior or excellent performance as administrators. He set out criteria by which he was going to evaluate all administrators. In addition, Borrelli established a set of goals for each principal. Borrelli conveyed these expectations to all administrators, including Heard-McKnight.

Heard-McKnight failed to demonstrate excellent performance or the potential for excellent performance needed to lead the middle school. Borrelli met with her on or about March 20, 2000 to review her performance and to advise her that he would not be recommending her continued employment. Borrelli assessed Heard-McKnight as being an ineffective principal who did not meet reasonable performance expectations. In the face of Borrelli's assessment, Heard-McKnight submitted her resignation effective at the end of the 1999-2000 school year.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

Heard-McKnight then joined forces with Tilghman, another former Waterbury school administrator, by bringing this suit. Heard-McKnight claims that she was discriminated against because she is African-American. More specifically, she claims that Borrelli treated her differently because she is African-American. While Heard-McKnight's Complaint goes into great detail about hiring practices that allegedly existed before she arrived, her cause of action is for disparate treatment and the only claim remaining in this case is against Borrelli. Therefore events that occurred before Borrelli became the Interim Superintendent are not relevant.

On March 23, 2003, the Defendants moved for summary judgment on all claims asserted by Tilghman and Heard-McKnight. On March 24, 2004, the Honorable Robert N. Chatigny granted the Defendant's motion as to Tilghman in its entirety. As to Heard-McKnight, the Court granted summary judgment on all but one claim against Borrelli, which alleges a violation of the Equal Protection Clause as enforced through 42 U.S.C. § 1983. The Court held that Borrelli had "articulate[d] a legitimate, non-discriminatory reason for [his] decision to oppose Heard-McKnight's reappointment."[3] However, it also

---

[3] The Defendant shall address the Court's decision later on in this brief. Accordingly, a copy of the decision is attached hereto as Exhibit B.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

found that Heard-McKnight's Affidavit in Opposition to the Defendants' motion created an issue of fact as to whether Borrelli's reasons for his negative comments were false.

The underlying issue at trial is whether Borrelli's evaluation of Heard-McKnight and his decision to recommend the non renewal of her Contract was racially motivated in violation of 42 U.S.C. § 1983. However, Heard-McKnight's Complaint makes several allegations about what she believes were discriminatory hiring practices prior to 1999. In fact, several of Heard-McKnight's allegations appear to have been taken verbatim from the CHRO's Report. Id. As such, Heard-McKnight will likely try to admit the report to create an inference of discrimination in her case. Because this is not a failure to hire case and because the Report is unreliable hearsay, the Court should exclude the Report at trial.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

## III. ARGUMENT

### A  THE COURT SHOULD EXCLUDE THE CHRO'S REPORT BECAUSE IT IS NOT RELEVANT TO HEARD-MCKNIGHT'S INDIVIDUAL CLAIM OF DISCRIMINATION.

1. The Report primarily addresses past hiring practices that allegedly existed before Borrelli became the Interim Superintendent and it is therefore not relevant to this case.

The Report consists of the CHRO's so-called investigation into the Board's hiring practices that allegedly existed prior to the arrival of Borrelli. Borrelli was neither involved in those practices, nor does the Report suggest that he was. As such, the Report, which discusses past hiring practices, is not relevant. Borrelli became the Board's Interim Superintendent in February 2000, after Heard-McKnight was hired. The alleged past practices of prior decision-makers are entirely irrelevant to Borrelli's evaluation of Heard-McKnight.

In Schrand v. Federal Pacific Electric Company, 851 F.2d 152, 153-154 (6th Cir. 1988), the plaintiff alleged he was fired because of his age. At trial, the district court allowed two former employees to testify that they too were terminated because of their age. The Sixth Circuit reversed and remanded the case for a new trial, holding:

> The testimony...should have been excluded. First, it was not relevant. Pierce, who made the decision to terminate [the plaintiff], was not involved

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

> in the decision to terminate either [witness]. ...Thus, there was no evidence from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate Schrand.

Schrand, supra at 156. (emphasis added)

In Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997), the plaintiff alleged that he was denied a promotion because of his race. During the trial, the court refused to allow two witnesses to testify that they had been denied promotions in the past because of their race. Williams, supra at 1129. In affirming the district court's decision, the Sixth Circuit Court held:

> Moore's testimony regarding his non-hire had no relevance to [plaintiff's] case. Moore applied for a different position, with different qualifications and hiring requirements...and different people at TNN reviewed his application. The rejection of Moore's application, therefore, has no apparent connection to that of [plaintiff's] application.

Moore, supra at 1130. (emphasis added). (See also Callanan v. Runyun, 75 F.3d 1293, 1298 (8th Cir. 1996)(Although an employer's past discriminatory policy may relevant, the evidence "must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts;" therefore, evidence of past discrimination that did not involve the plaintiff's own supervisors was irrelevant); Wyvill v. United Companies Life Ins. Co., 212 F.3d, 296, 302 (5th Cir. 2000)("This court and

8

others have held that testimony from other employees who had different supervisors than the plaintiff...cannot be probative of whether discrimination was a determinative factor in the plaintiff's discharge"); Freund v. Westlake Import Motors, Inc., 1998 US Dist. LEXIS 2486, *4-5 (N.D. Ill. 1998)(holding that only the decision-maker's motive matters in determining whether an employment action was discriminatory).

Any evidence of the Board's prior practices is nothing more than anecdotal evidence that the plaintiff would elicit to inflame the jury. In Annis v. County of Westchester, 136 F.3d 239, 247 (2d. Cir. 1998), the plaintiff alleged she was sexually harassed from 1990 to 1993. In an attempt to portray her employer as having condoned a hostile working environment for several years, the plaintiff produced substantial testimony regarding events that occurred before her supervisor and alleged harassers began working there. Id. at 247. The Court held:

> *This evidence should never have been admitted.* The testimony described the [employer] as sexist and sexually undisciplined, an environment a reasonable jury would regard as deplorable. The jury would naturally associate these conditions with [defendant] even in the absence of similar goings on during his tenure. The evidence was thus *fiercely prejudicial.* Further, the testimony was minimally probative.[4] (emphasis added).

---

[4] In Annis, the Second Circuit did not reverse the verdict in favor of the plaintiff. However, in doing so, it did not retreat from its finding that the district court improvidently admitted the prior testimony. Instead, the Court found that the plaintiff had produced sufficient evidence to satisfy her burden that she suffered from a hostile working environment from 1990 to 1993. Annis, supra at 247.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

Borrelli was the person who evaluated Heard-McKnight's performance. He was not involved in the hiring process referenced in the Report. The past practices of those besides Borrelli have no probative value concerning the non-renewal of Heard-McKnight's Contract. The Court should exclude the Report in its entirety.[5]

2. Heard-McKnight does not claim that she was discriminatorily denied a job and therefore the Report has no probative value.

The CHRO's Report is almost exclusively a summary of its "investigation" into allegations that the Board, prior to 1999, engaged in hiring practices that resulted in racial inequities. This, however, is not a failure to hire case and the Report has no relevance. Pursuant to Fed. R. Evid. 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact this is of consequence to the termination of the action more probable or less probable than it would be without the evidence."

---

[5] Pages 23-24 of the Report address the CHRO's "concern" regarding the number of minorities whose contracts were not renewed in 2000. Although this portion of the Report is not necessarily irrelevant, it should nevertheless be excluded because the CHRO based its conclusions on pages 23-24 almost entirely on Heard-McKnight and Tilghman's testimony. This Court has already found that Tilghman has granted the defendant's motion for summary judgment on Tilghman's causes of action. To the extent the Report is based on Heard-McKnight's testimony, she can provide the same evidence at trial, thereby negating any need to admit the Report into evidence so that the jury can see the multitude of prejudicial remarks about unrelated hiring practices.

10

Evidence which is not relevant is not admissible. Fed. R. Evid. 402. Even if the court concludes evidence is relevant, it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; Paolitto v. John Brown E&C, Inc., 151 F.3d 60, 65 (2d Cir. 1998).

Courts should not permit a plaintiff to elicit evidence related to discrimination claims other than the claim at issue in her particular case. See Robbins v. Camden City Board of Education, 105 F.R.D. 49, 62 (D. NJ 1985). In Robbins, supra, the plaintiff alleged that she was denied tenure because of her race and age. During discovery, she requested information concerning the defendant's recent hiring practices, promotions, transfers and discharges. In denying the plaintiff's motion to compel the defendant to produce this information, the Court held:

> In the context of an individual plaintiff alleging illegal denial of tenure, information concerning defendant's practices in hiring, promotion, transfer, discharge and so on seems one step beyond the parameters of relevance in its broadest sense...Before plaintiff will be permitted to inquire beyond the practices at issue in her case, she must show a more particularized need and relevance.

Robbins, supra at 62.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

Magistrate Fitzsimmons recently addressed this issue in <u>Patterson v. The Food Group LLC/Pond House Café</u>, Case No. 3:02cv1137, D. Conn., April 8, 2004[6]. In Patterson, supra, the plaintiff alleged he was terminated because of his race. During discovery, he asked the defendant to identify the race of all employees the defendant had *hired* during the past five years. In denying the plaintiff's motion to compel, Magistrate Fitzsimmons held:

> The court finds that the information concerning the hiring practices of the Pond House are not relevant to plaintiff's claim that he was terminated on the basis of his race and/or age. Plaintiff's request is DENIED.

<u>Patterson</u>, supra at p.2 (emphasis in original).[7]

Heard-McKnight was hired in late August 1999. During that time, the CHRO actually applauded the Board's efforts to recruit minorities. Exhibit A, p. 14. Thus, the supposedly improper hiring practices were not used to prevent her from getting a job. Any evidence about past hiring practices has no relevance to Heard-McKnight's claim that she was non-renewed in 2000. It would truly be unfair to prejudice the Board with

---

[6] A copy of Magistrate Fitzsimmon's Ruling is attached as Exhibit C.
[7] The fact that <u>Robbins</u> and <u>Patterson</u> involve discovery disputes strengthens their applicability to this case. The scope of discovery under Rule 26 is broader than the scope of evidence that can be admitted at trial. Under Rule 26, a plaintiff may discovery information that is reasonably calculated to lead to the discovery of admissible evidence. Since evidence concerning a defendant's hiring practices are not relevant even under Rule 26's liberal standards, that evidence is certainly not relevant at trial.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

evidence of past practices when the CHRO itself concluded that Heard-McKnight was hired during a time that the Board had eliminated those practices.

### B. THE CHRO'S REPORT IS HEARSAY AND DOES NOT FALL WITHIN ANY EXCEPTION TO THE RULE AGAINST HEARSAY.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Report is certainly hearsay. The only reason Heard-McKnight would offer the Report is to prove that the Board had actually engaged in discriminatory hiring practices. Thus, even if the Report was relevant, it is inadmissible hearsay.

The Report also fails to qualify as an exception to the hearsay rule. For years, plaintiffs have attempted to introduce reports and findings of the EEOC or equivalent state agency as a public record under Fed. R. Evid. 803(8)(c). Paolitto v. John Brown E&C, Inc., 151 F.3d 60, 65 (2d Cir. 1998); Coleman v. Home Depot, Inc., 306 F. 3d 1333, 1343-44 (3rd Cir. 2002). However, courts have repeatedly excluded them for failing to satisfy the rigorous elements of Rule 803 (8)(c). See e.g. Paolitto, supra at 65 (exclusion of CHRO report was proper because the evidence at trial contradicted the report and the

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

defendant had a full opportunity to present to the jury all the evidence it submitted to the CHRO).[8]

The principal basis on which government records and reports should be excluded is the Rule 803(8)(c) "trustworthiness proviso". Bridgeway Corp. v. Citibank, 201 F. 3d 134, 143 (2d. Cir. 2000). Coleman, supra at 1343-1341-1342. Reports of the EEOC or CHRO are inadmissible when "the sources of its information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8), Coleman, Id. at 1342. Factors which may be of assistance in passing upon the reliability of reports include: (1) the

---

[8] Research has produced a litany of cases where the courts have refused plaintiff's request to introduce reasonable cause findings by the EEOC or equivalent state agency. See eg. Keene v. Hartford Hospital, 208 F. Supp. 2d 238, 2243 (D. Conn. 2003)(JCH)(Excluding Reasonable Cause Finding of CHRO Investigator because it was simply a preliminary finding that discrimination *could* have occurred); EEOC v. Manville Sales Corp., 27 F.3d 1089, 1095 (5th Cir. 1994)(Exclusion of Letter Finding by the EEOC that the defendant engaged in discriminatory practices was properly excluded because of its prejudicial effect); Cortes v. Maxus Exploration Co., 977 F.2d 195, 199 (5th Cir. 1982)(EEOC findings were excluded because they were conclusory and presented an unfair prejudice); Denny v. Hutchinson Sales Corporation, 649 F.2d 816, 822 (10th Cir., 1980)(Civil Rights Commission "Probable Cause" determination was excluded because it had minimal probative value); Johnson v. Yellow Freight System, 734 F.2d 1304, 1309-1310 (8th Cir. 1984)(EEOC's Reasonable Cause finding was properly excluded because the same evidence could be admitted at trial; the jury would reasonably interpret the report as "expert evidence"; and it would force the defendant to present prolonged evidence to refute the EEOC's findings); Hall v. Western Production Co., 988 F.2d 1050, 1058 (10th Cir. 1993)(Exclusion of EEOC Report were proper, because when the same evidence relied upon by the EEOC would be admitted at trial, the jury would feel compelled to reach the same conclusions as the EEOC); Walker v. NationsBANK of Florida, 53 F.1548, 1554-55 (11th Cir. 1995)(EEOC findings are problematic in jury trials because they improperly shift the focus of the jury); Lucas v. City of Shelby, 246 F. Supp. 2d 516, 521 (ND MISS 2002)(EEOC Reports invade the province of the jury); Hairston v. Washington Metropolitan Area Transit Authority, 1997 US Dist LEXIS 5188, *12 (DCC 1997)(EEOC Report inadmissible because it would force the defendant to unduly prolong the evidence at trial); Offsharick v. GMAC, 2003 US Dist LEXIS 15646, *15 (ED PA 2003)(EEOC Report had minimal probative value and was outweighed by its prejudiced minimal probative value).

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; and (4) possible motivational problems. Id. Other factors include:

(1) the finality of the agency findings;
(2) the extent to which the agency findings are based upon material which would not be admissible in evidence and the extent to which such material is supplied by persons with an interest in the outcome of the proceedings;
(3) the extent to which safeguards are used during the hearing;
(4) the extent to which there is an ascertainable record on which the findings are based;
(5) the extent to which the findings are a function of an executive, administrative, or legislative policy judgment as opposed to a factual adjudication;
(6) the extent to which the findings are based upon findings of other investigative bodies; and
(7) whether the public report purports to offer expert opinion.

Id.

Based on these factors, the CHRO's Report fails to satisfy Rule 803(8)(c). The Report is based almost exclusively on hearsay. The Report is nothing more than a preliminary finding that was reached after the CHRO received a snapshot of information concerning the Board's hiring practices. The hearing provided the Board with no meaningful opportunity to cross-examine witnesses or otherwise refute the evidence that the CHRO has relied upon. The "evidence" comes from persons either having an interest

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

its findings, including the plaintiffs in this action, or those lacking first-hand knowledge of the facts. The Report mischaracterizes facts in a manner that is unfavorable to the Board, demonstrating the CHRO was biased in its "investigation." As such, it fails to satisfy the indicia of reliability required by Rule 803(8)(c).

1. The CHRO's Report was issued after a public forum that was neither a "final hearing" nor an adversarial proceeding in which the Board could cross-examine <u>witnesses</u>.

The Report was <u>not</u> generated after an adversarial hearing in which the parties had the opportunity to examine and cross-examine witnesses. Instead, it was made after reviewing a snapshot of information provided from random individuals having no first-hand knowledge of the Board's past hiring practices.

The CHRO received a report from the NAACP and a newspaper article from the <u>Waterbury American-Republican</u> that questioned the Board's past hiring practices. Exhibit A, pp. 1-3. Based on this information, the CHRO, on its own initiative, decided to hold a public hearing pursuant to General Statutes. § 46a-56(a)(2). Based on the information presented at the hearing, the CHRO issued its Report as a "recommendation to officers of the state" to ensure equal employment opportunities. <u>Id</u>.