

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANCES TILGHMAN and<br>SHARON HEARD-MCKNIGHT, | : | CIVIL ACTION NO.<br>301CV 01657 (RNC) |
| Plaintiffs, | : | |
| vs. | : | |
| WATERBURY BOARD OF<br>EDUCATION, MATTHEW BORRELLI<br>and PHILIP GIORDANO, | : | |
| Defendants. | : | MAY 10, 2004 |

## DEFENDANT MATTHEW BORRELLI'S MEMORANDUM OF LAW IN SUPPORT OF HIS SECOND MOTION IN LIMINE

### I.   INTRODUCTION

The Defendant Matthew Borrelli ("Borrelli") requests this court to preclude the former co-plaintiff Frances Tilghman ("Tilghman") from testifying about the non-renewal of her Administrator's Contract ("Contract") with the Waterbury Board of Education (the "Board"). The only reason the Plaintiff Sharon Heard-McKnight ("Heard-McKnight") would use Tilghman's testimony would be to convince jurors that Borrelli engaged in a pattern of discrimination against African-Americans. However, after hearing Tilghman's evidence, this court granted summary judgment to the Defendants. Thus, it has already

5

SHIPMAN & GOODWIN® LLP  •  COUNSELORS AT LAW
ONE AMERICAN ROW  •  HARTFORD, CONNECTICUT 06103-2819  •  (860) 251-5000  •  FAX (860) 251-5099  •  JURIS NO. 57385

found that Tilghman's non-renewal was not discriminatory and her testimony is irrelevant to Heard-McKnight's claims. Moreover, if admitted, Borrelli would be forced to refute Tilghman's evidence, which will prolong the trial and confuse the jury.

The court should also prevent Tilghman from giving an opinion concerning Heard-McKnight's abilities as an Administrator. Tilghman did not make the decision to non-renew Heard-McKnight's Contract. She has no direct knowledge about why Borrelli intended to recommend the non-renewal of her contract. Accordingly, Tilghman's subjective opinion about how she perceived Heard-McKnight's abilities is not relevant to this case.

## II. FACTS AND PROCEDURAL HISTORY

Heard-McKnight was hired in late August 1999 to be the principal of the Wallace Middle School.[1] As a new principal without tenure, the Board had the statutory right under General Statutes § 10-151 to terminate her employment by giving her notice on or before April 1st that her Contract would not be renewed.

Borrelli began working for the Board as its Interim Superintendent in February 2000. On or about February 9, 2000 he met with all the school principals and told them

---

[1] Tilghman, Heard-McKnight's former co-plaintiff, was hired on August 24, 1999.

6

that he expected them demonstrate superior or excellent performance, or have the potential for superior or excellent performance as administrators. He set out criteria by which he was going to evaluate all administrators. In addition, Borrelli established a set of goals for each principal. Borrelli conveyed these expectations to all administrators, including Heard-McKnight.

Heard-McKnight failed to demonstrate excellent performance or the potential for excellent performance needed to lead the middle school. Borrelli met with her on or about March 20, 2000 to review her performance and to advise her that he would not be recommending her continued employment. Borrelli assessed Heard-McKnight as being an ineffective principal who did not meet reasonable performance expectations. In the face of Borrelli's assessment, Heard-McKnight submitted her resignation effective at the end of the 1999-2000 school year.

Heard-McKnight then joined forces with Tilghman, another former Waterbury school administrator, by bringing this suit. Heard-McKnight claims that she was discriminated against because she is African-American. More specifically, she claims that Borrelli treated her differently because she is African-American. While the Complaint goes into great detail about hiring practices that allegedly existed before she arrived, her

7

cause of action is for disparate treatment and the only claim remaining in this case is against Borrelli. Therefore events that occurred before Borrelli became the Interim Superintendent are not relevant.

On March 23, 2003, the Defendants moved for summary judgment on all claims asserted by Tilghman and Heard-McKnight. On March 24, 2004, the Honorable Robert N. Chatigny granted the Defendant's motion as to Tilghman in its entirety. As to Heard-McKnight, the Court granted summary judgment on all but one claim against Borrelli, which alleges a violation of the Equal Protection Clause as enforced through 42 U.S.C. § 1983. The Court held that Borrelli had "articulate[d] a legitimate, non-discriminatory reason for [his] decision to oppose Heard-McKnight's reappointment." However, it also found that Heard-McKnight's Affidavit in Opposition to the Defendants' motion created an issue of fact as to whether Borrelli's reasons for his negative comments were false.

The underlying issue at trial is whether Borrelli's evaluation of Heard-McKnight and his decision to recommend the non renewal of her Contract was racially motivated in violation of 42 U.S.C. § 1983. However, Borrelli anticipates that Heard-McKnight will call Tilghman to testify about the circumstances underlying her non-renewal. For the reasons set forth below, the Court should exclude this testimony.

8

### III. ARGUMENT

#### A. TILGHMAN'S TESTIMONY CONCERNING THE NON-RENEWAL OF HER OWN CONTRACT SHOULD BE EXCLUDED

1. The circumstances regarding Tilghman's non-renewal are not probative of Heard-McKnight's claims and her testimony will prolong the trial, confuse the jury and prejudice Borrelli.

Evidence of discrimination against other employees is relevant only if the plaintiff is able to show that the action taken against the other employee was based on discrimination. Stopka v. Alliance of American Insurers, 141 F.3d 681, 687 (7th Circ. 1998), citing Sims v. Mulcahey, 902 F.2d 524, 531 (7th Cir), *cert denied* 498 US 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). Even if evidence of other discrimination is probative, the district court should exclude that evidence under Rule 403 to avoid a series of collateral "trials within the trial" that would result in confusion and undue delay. Stopka, supra at 687. See also Farooqui v. Cook County, 2000 U.S. App LEXIS 22407, *4-5 (6th Cir. 2000) (holding that evidence regarding five other employees who received a transfer was inadmissible because "[t]o show that each of these employees transferred out *because* of discrimination, the court would have to conduct a trial within a trial").

9

In this case, the court has already ruled that Tilghman has insufficient evidence to state a claim for discrimination. In fact, this court's decision indicates the "[D]efendants have articulated a legitimate, non discriminatory reason for her termination . . . because she created a divisive atmosphere at Bunker Hill, alienating parents and exacerbating racial tensions." Decision, p. 6. By stark contrast, the court found Tilghman's evidence was "notably weak on the ultimate issue of racial animus," and that "she offer[ed] no evidence that the treatment she received from the Board differed from [its] treatment of white administrators." Id.

Borrelli has already successfully defended Tilghman's case. The court should not allow Heard-McKnight to present it all over again at her trial. The court has found that Borrelli did not discriminate against Tilghman. The circumstances concerning her non-renewal, therefore, cannot be used as evidence of a pattern of discrimination by Borrelli. If the court admits Tilghman's testimony, it will enable the jury to infer a pattern of discrimination in a case where the court has already found no discrimination existed.

Tilghman's case is not on trial. However, if she testifies, Borrelli must refute her testimony with the substantial evidence that was presented at summary judgment. Thus, this court will enable Heard-McKnight to present a separate trial within her trial, requiring

10

the needless presentation of cumulative evidence. This prolonged trial will come at Borrelli's expense and he will suffer the prejudice of a confused jury that will lose focus on the issues concerning Heard-McKnight's case.

    2.    Tilghman has no direct knowledge as to why Borrelli non-renewed McKnight's contract, thereby making her subjective opinions of <u>McKnight's abilities irrelevant</u>.

It is well settled that the testimony of present or former employees, none of whom were involved in the decision-making process that affects the plaintiff's employment, is entirely irrelevant to plaintiff's claims of discrimination. <u>Visser v. Packer Engineering</u>, 924 F. 2d 655, 661 (7th Cir. 1991) (testimony from co-workers that plaintiff was terminated because of his age was inadmissible because it was not based on personal knowledge); <u>Frieze v. Boatmens' Bank of Belton</u>, 950 F.2d 538, 540 (8th Cir. 1991) (statements that the plaintiff was "too old... to become president of the bank" did not create an inference of discrimination because the statements were not made by persons who decided to terminate the plaintiff).[2] Numerous Courts have held that statements made

---

[2] See also <u>LaMontagne v. American Convenience Products, Inc.</u>, 750 F.2d 1405, 1412 (7th Cir. 1984) (the mere fact that an employee recommended the plaintiff be replaced by a younger worker does not infer discrimination when the ultimate decision to terminate the plaintiff was made by a separate individual with more decision-making authority); <u>Krumwiede v. Mercer County Ambulance Service</u>, 116 F.3d 361, 363 (8th Cir. 1997) (comments by co-workers that the plaintiff was an old "granny" were irrelevant because they were not involved in decision-making process.)

11

by employees not involved in the decision-making process are not probative of an intent to discriminate by the decision-maker. Khachikian v. BASF Corp., 1993 U.S. Dist. LEXIS 16053, *35, 64 FEP Cases (BNA) 1842, 1850-51 (N.D.N.Y., 1993); DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998).

The courts refusing to admit this testimony have held that co-workers' opinions amount to mere speculation since they have no personal knowledge of the decision-maker's intent. For example, in Visser, the Court ruled:

> "The affiants do not report admissions by [the decision-maker] about his motives in firing [the plaintiff]. They do not report primary facts from which a reasonable person in their position would infer that one of the [decision-maker's] motives was to deprive [the plaintiff] of his pension. They construct a psychological model of [the decision-maker] and deduce from it that he *must* have wanted to do [the plaintiff] out of a pension. This is the kind of argumentation one expects in a closing argument. It is doubtful that a psychiatrist or psychologist would be allowed to offer it as expert testimony – it comes awfully close to arguing bad conduct from bad character contrary to Fed. R. Evid.404(a). It certainly exceeds the competency of a lay witness. Id.
>
> *Discrimination law would be unmanageable if disgruntled employees – the friends of the plaintiff and other people in the same legal position of the plaintiff – could defeat summary judgment by affidavits speculating about the defendant's motives...* The evidence here is speculation about the defendant's motives in dealing with the witnesses but not with the plaintiff. The affiants are self appointed biased tribunal to sit in judgment of the [decision-maker's] motives. Id. (emphasis added).

12

Tilghman has no direct knowledge regarding Borrelli's reasons for advising Heard-McKnight that he would recommend the non-renewal of her contract. Tilghman's testimony would amount to nothing more than speculative and subjective evidence about Borrelli's motives. This court should preclude any such testimony.

THE DEFENDANT,<br>
MATTHEW BORRELLI,

BY: _[signature]_

Gary S. Starr
Fed. Bar No. ct 06038
Stephen M. Sedor
Fed. Bar No. ct 21117
Shipman and Goodwin, LLP
One American Row
Hartford, CT 06103-2819
Phone: 860-251-5000
Fax:    860-251-5500

370267 v.01 S2

## CERTIFICATION

This shall certify that a copy of the Defendant's Second Motion in Limine was mailed, postage prepaid, to the following counsel of record on this 10th day of May, 2004.

John R. Williams
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510

_____
Stephen M. Sedor

370267 v.01

14