United States District Court
District of Connecticut
FILED AT HARTFORD
12/3/04
Kevin F. Rowe, Clerk
By R.W.
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANCES TILGHMAN and<br>SHARON HEARD-MCKNIGHT, | CIVIL ACTION NO.<br>301CV 01657 (RNC) |
| Plaintiffs, | |
| vs.<br>WATERBURY BOARD OF<br>EDUCATION, MATTHEW BORRELLI<br>and PHILIP GIORDANO, | |
| Defendants. | MAY 10, 2004 |

**DEFENDANT MATTHEW BORRELLI'S MEMORANDUM OF LAW IN SUPPORT OF THIRD MOTION IN LIMINE**

**I.    INTRODUCTION**

The Defendant Matthew Borrelli ("Borrelli") requests this court to preclude the Plaintiff Sharon Heard-McKnight ("Heard-McKnight") from introducing evidence at trial concerning the Board's <u>past</u> hiring practices. In Heard-McKnight's Complaint, she devotes several paragraphs to allegations that the Board engaged in discriminatory hiring practices <u>before</u> she was hired. Her allegations appear to rely on the Connecticut Commission on Human Rights and Opportunities' ("CHRO") *Report on Employment Practices in the Waterbury School District* dated September 2000. (the "Report"). The

1

CHRO refers to the Report as its investigation into alleged discriminatory hiring practices by the Waterbury Board of Education (the "Board") that occurred prior to August 1999. The Report, however, is nothing more than a summary of hearsay statements and severely prejudicial remarks.[2]

The Report is not relevant because the Plaintiff Sharon Heard-McKnight ("Heard-McKnight") does not claim that she was discriminatorily denied a job. The Board hired Heard-McKnight in late August 1999, after the hiring practices discussed in the Report.

Moreover, Borrelli is the person who evaluated Heard-McKnight and advised her that he was going to recommend the non renewal of her Administrator's Contract (the "Contract"). Borrelli started working for the Board after the events discussed in the CHRO's Report. Any evidence regarding the Board's past hiring practices, which did not involve Borrelli, have no probative value in this case.

Third, the minimal probative value of the Board's past practices is substantially outweighed by the prejudicial effect that it will have on the jury. No reasonable jury will be able to separate the Board's past practices with the issues specific to Heard-McKnight.

---

[2] As the court is aware, Borrelli's First Motion in Limine requests the Court to preclude the Report in its entirety. The Report primarily concerns allegations that the Board had engaged in prior discriminatory hiring practices before Heard-McKnight was hired. The arguments set forth in support of Borrelli's motion to exclude the Report are largely the same as they are in this motion.

2

To the contrary, they will look to punish Borrelli for what it may believe are the Board's past transgressions.

Finally, if the court admits evidence regarding the Board's past practices, Borrelli will spend many hours at trial refuting that evidence, particularly since he had no involvement in those actions. This will prolong the trial and cause the jury to focus on facts unrelated to Heard-McKnight's case.

## II. FACTS AND PROCEDURAL HISTORY

Heard-McKnight was hired in August 1999 to be the principal of the Wallace Middle School.[3] As a new principal without tenure, the Board had the statutory right under General Statutes. § 10-151 to terminate her employment by giving her notice on or before April 1st that her Contract would not be renewed.

Borrelli began working for the Board as its Interim Superintendent in February 2000. On or about February 9, 2000 he met with all the school principals and told them that he expected them demonstrate superior or excellent performance, or have the potential for superior or excellent performance as administrators. He set out criteria by which he was going to evaluate all administrators. In addition, Borrelli established a set of goals for

---

[3] Tilghman, Heard-McKnight's former co-plaintiff, was hired on August 24, 1999.

each principal. Borrelli conveyed these expectations to all administrators, including Heard-McKnight.

Heard-McKnight failed to demonstrate excellent performance or the potential for excellent performance needed to lead the middle school. Borrelli met with her on or about March 20, 2000 to review her performance and to advise her that he would not be recommending her continued employment. Borrelli assessed Heard-McKnight as not being an effective principal, someone who did not meet reasonable performance expectations. In the face of Borrelli's assessment, Heard-McKnight submitted her resignation effective at the end of the 1999-2000 school year.

Heard-McKnight then joined forces with Tilghman, another former Waterbury school administrator, by bringing this suit. Heard-McKnight claims that she was discriminated against because she is African-American. More specifically, she claims that Borrelli treated her differently because she is African-American. While Heard-McKnight's Complaint goes into great detail about hiring practices that allegedly existed before she arrived, her cause of action is for disparate treatment and the only claim remaining in this case is against Borrelli. Therefore events that occurred before Borrelli became the Interim Superintendent are not relevant.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

On March 23, 2003, the Defendants moved for summary judgment on all claims asserted by Tilghman and Heard-McKnight. On March 24, 2004, the Honorable Robert N. Chatigny granted the Defendant's motion as to Tilghman in its entirety. As to Heard-McKnight, the Court granted summary judgment on all but one claim against Borrelli, which alleges a violation of the Equal Protection Clause as enforced through 42 U.S.C. § 1983. The Court held that Borrelli had "articulate[d] a legitimate, non-discriminatory reason for [his] decision to oppose Heard-McKnight's reappointment." However, it also found that Heard-McKnight's Affidavit in Opposition to the Defendants' motion created an issue of fact as to whether Borrelli's reasons for his negative comments were false.

The underlying issue at trial is whether Borrelli's evaluation of Heard-McKnight and his decision to recommend the non renewal of her Contract was racially motivated in violation of 42 U.S.C. § 1983. However, Heard-McKnight's Complaint makes several allegations about what she believes were discriminatory hiring practices prior to 1999. As such, Heard-McKnight will likely try to admit these alleged past practices into evidence. Because this is not a failure to hire case, this proposed evidence should not be admissible at trial.

5

III. **ARGUMENT**

A **THE COURT SHOULD EXCLUDE EVIDENCE OF PAST HIRING PRACTICES BECAUSE IT IS NOT RELEVANT TO HEARD-MCKNIGHT'S INDIVIDUAL CLAIM OF DISCRIMINATION.**

1. The past practices were conducted by individuals who were not the decision-makers in Heard McKnight's non-renewal.

The Board's past hiring practices are particularly irrelevant because Borrelli, the person who evaluated Heard-McKnight and decided to recommend the non renewal of her contract, was not involved in those past practices. Borrelli became the Board's Interim Superintendent in February 2000, after Heard-McKnight was hired. The alleged past practices of prior decision-makers are entirely irrelevant to Borrelli's decision to non-renew Heard-McKnight's Contract.

In Schrand v. Federal Pacific Electric Company, 851 F.2d 152, 153-154 (6th Cir. 1988), the plaintiff alleged he was fired because of his age. At trial, the district court allowed two former employees to testify that they too were terminated because of their age. The Sixth Circuit reversed and remanded the case for a new trial, holding:

> The testimony...should have been excluded. First, it was not relevant. Pierce, who made the decision to terminate [the plaintiff], was not involved in the decision to terminate either [witness]. ...Thus, there was no evidence

6

from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate Schrand.

Schrand, supra at 156. (emphasis added)

In Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997), the plaintiff alleged that he was denied a promotion because of his race. During the trial, the court refused to allow two witnesses to testify that they had been denied promotions in the past because of their race. Williams, supra at 1129. In affirming the district court's decision, the Sixth Circuit Court held:

> Moore's testimony regarding his non-hire had no relevance to [plaintiff's] case. Moore applied for a different position, with different qualifications and hiring requirements...and different people at TNN reviewed his application. The rejection of Moore's application, therefore, has no apparent connection to that of [plaintiff's] application.

Moore, supra at 1130. (emphasis added). (See also Callanan v. Runyun, 75 F.3d 1293, 1298 (8th Cir. 1996)(Although an employer's past discriminatory policy may be relevant, the evidence "must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts;" therefore, evidence of past discrimination that did not involve the plaintiff's own supervisors was irrelevant); Wyvill v. United Companies Life Ins. Co., 212 F.3d, 296, 302 (5th Cir. 2000)("This court and others have held that testimony from other employees who had different supervisors than

7

the plaintiff...cannot be probative of whether discrimination was a determinative factor in the plaintiff's discharge"); Freund v. Westlake Import Motors, Inc., 1998 US Dist. LEXIS 2486, *4-5 (N.D. Ill. 1998)(holding that only the decision-maker's motive matters in determining whether an employment action was discriminatory).

Any evidence of the Board's prior practices is nothing more than anecdotal evidence that the plaintiff would elicit to inflame the jury. In Annis v. County of Westchester, 136 F.3d 239, 247 (2d. Cir. 1998), the plaintiff alleged she was sexually harassed from 1990 to 1993. In an attempt to portray her employer as having condoned a hostile working environment for several years, the plaintiff produced substantial testimony regarding events that occurred before her supervisor and alleged harassers began working there. Id. at 247. The Court held:

> *This evidence should never have been admitted.* The testimony described the [employer] as sexist and sexually undisciplined, an environment a reasonable jury would regard as deplorable. The jury would naturally associate these conditions with [defendant] even in the absence of similar goings on during his tenure. The evidence was thus *fiercely prejudicial.* Further, the testimony was minimally probative.[4] (emphasis added).

---

[4] In Annis, the Second Circuit did not reverse the verdict in favor of the plaintiff. However, in doing so, it did not retreat from its finding that the district court improvidently admitted the prior testimony. Instead, the Court found that the plaintiff had produced sufficient evidence to satisfy her burden that she suffered from a hostile working environment from 1990 to 1993. Annis, supra at 247.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

Borrelli was the decision-maker regarding the evaluation of Heard-McKnight. He was not involved in the hiring process referenced in the Report. The past practices of those besides Borrelli have no probative value concerning this case.

2.  Evidence pertaining to past hiring practices is not relevant to Heard-McKnight's claim that she was treated differently because of her race.

This is not a failure to hire case. Heard-McKnight was in fact hired during a period of time in which the CHRO applauded its efforts to recruit minorities. Therefore, any practices that occurred before Heard-McKnight was hired have no bearing on this case. Pursuant to Fed. R. Evid. 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact this is of consequence to the termination of the action more probable or less probable than it would be without the evidence."

Evidence which is not relevant is not admissible. Fed. R. Evid. 402. Even if the court concludes evidence is relevant, it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; Paolitto v. John Brown E&C, Inc., 151 F.3d 60, 65 (2d Cir. 1998).

9

Courts should not permit a plaintiff to elicit evidence related to discrimination claims other than the claim at issue in her particular case. See Robbins v. Camden City Board of Education, 105 F.R.D. 49, 62 (D. NJ 1985). In Robbins, supra, the plaintiff alleged that she was denied tenure because of her race and age. During discovery, she requested information concerning the defendant's recent hiring practices, promotions, transfers and discharges. In denying the plaintiff's motion to compel the defendant to produce this information, the Court held:

> In the context of an individual plaintiff alleging illegal denial of tenure, information concerning defendant's practices in hiring, promotion, transfer, discharge and so on seems one step beyond the parameters of relevance in its broadest sense…Before plaintiff will be permitted to inquire beyond the practices at issue in her case, she must show a more particularized need and relevance.

Robbins, supra at 62.

Magistrate Fitzsimmons recently addressed this issue in Patterson v. The Food Group LLC/Pond House Café, Case No. 3:02cv1137, D. Conn., April 8, 2004[5]. In Patterson, supra, the plaintiff alleged he was terminated because of his race. During discovery, he asked the defendant to identify the race of all employees the defendant had *hired* during the past five years. In denying the plaintiff's motion to compel, Magistrate Fitzsimmons held:

---

[5] A copy of Magistrate Fitzsimmon's Ruling is attached as Exhibit A.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

> The court finds that the information concerning the hiring practices of the Pond House are not relevant to plaintiff's claim that he was terminated on the basis of his race and/or age. Plaintiff's request is DENIED.

Patterson, supra at p.2 (emphasis in original).[6]

Heard-McKnight was hired in 1999. During that time, the CHRO actually applauded the Board's efforts to recruit minorities. Thus, the supposedly improper hiring practices were not used to prevent her from getting a job. Any evidence about past hiring practices has no relevance to Heard-McKnight's claim that she was non-renewed in 2000. It would truly be unfair to prejudice Borrelli with evidence of past practices when the CHRO itself concluded that Heard-McKnight was hired during a time that the Board had eliminated those practices and since Borrelli was not even employed at that time.

3. <u>The prejudicial effect of the evidence outweighs its non-existent probative value.</u>

Since the Board's past practices are not relevant to whether Borrelli non-renewed Heard-McKnight's contract for discriminatory reasons, its admission in any form will have a prejudicial effect on him. If a jury believes that the Board truly engaged in

---

[6] The fact that Robbins and Patterson involve discovery disputes strengthens their applicability to this case. The scope of discovery under Rule 26 is broader than the scope of evidence that can be admitted at trial. Under Rule 26, a plaintiff may discovery information that is reasonably calculated to lead to the discovery of admissible evidence. Since evidence concerning a defendant's hiring practices are not relevant even under Rule 26's liberal standards, that evidence is certainly not relevant at trial.

11

past discriminatory practices, they will be unable to separate those practices from Borrelli's actions, even though they are totally unrelated. Moreover, evidence of past discrimination will likely inflame the jurors, thereby motivating them to penalize Borrelli for other person's alleged transgressions. Borrelli is not on trial for practices that existed before he was hired by the Board. Any evidence of past practices will suggest that he is and will result in an unfair prejudice.

    4.    The admission of evidence regarding past practices will prolong the trial and confuse the jury.

Based on the Rule 403 balancing test, the court should exclude the Report because it will unduly lengthen the trial and confuse the jury. See eg Hairston v. Washington Metropolitan Area Transit Authority, supra at *12 (Holding that "if the [EEOC] letter were to be offered in evidence, it is likely that the plaintiff would have to spend additional time at trial attempting to explain what this letter means as well as its significance to the jury. For these reasons, the Court finds that the low probative value of the letter is substantially outweighed by the danger of unfair prejudice and waste of time.")

The same balancing test in this case tips the scale towards excluding the evidence. If the court admits any evidence of past hiring practices, it will enable the plaintiff to create a series of mini-trials. Borrelli will then have to call a myriad of witnesses to

SHIPMAN & GOODWIN LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

explain why each person who applied for a job was denied. He will have to present evidence to justify each person hired for a seemingly unlimited period of time. The facts and circumstances of each and every resume, interview and selection will be placed at issue. The trial will lose its focus and the jurors will become hopelessly confused by a mountain of evidence unrelated to Heard-McKnight's case.

## IV.  CONCLUSION

Since this is not a failure to hire case, any evidence regarding past hiring practices that did not involve Borrelli are not relevant to this case. Its admission will only create the false inference of a pattern and practice of discrimination by Borrelli, even though he had nothing to do with those past practices. Jurors will be unable to separate those past practices from the issues and feel compelled to punish Borrelli. The Court should therefore exclude this evidence at trial.

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

THE DEFENDANT,
MATTHEW BORRELLI,

BY: _____
Gary S. Starr
Fed. Bar No. ct 06038
Stephen M. Sedor
Fed. Bar No. ct 21117
Shipman and Goodwin, LLP
One American Row
Hartford, CT 06103-2819
Phone:  860-251-5000
Fax:    860-251-5500

### CERTIFICATION

This shall certify that a copy of the Defendant's Third Motion in Limine was mailed, postage prepaid, to the following counsel of record on this 10th day of May, 2004.

John R. Williams
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510

_____
Stephen M. Sedor

370510 v.01 S2

SHIPMAN & GOODWIN® LLP • COUNSELORS AT LAW
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385